Honorable Tana Lin

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE: PACIFIC MARKET INTERNATIONAL, LLC, STANLEY TUMBLER LITIGATION | NO. 2:24-cv-00191-TL |
| | **CONSOLIDATED CLASS ACTION COMPLAINT** |
| | ***CLASS ACTION*** |
| | ***JURY TRIAL DEMANDED*** |

Plaintiffs Mariana Franzetti, Laura Barbu, Robin Krohn, Mackenzie Brown, Meiling Robinson, and Holly Rydman bring, individually and for all similarly situated consumers, this Class Action Complaint against Defendant Pacific Market International, LLC ("PMI") for its practice of failing to disclose the presence of lead in its Stanley cups.[1] The Stanley cups are sold throughout the United States and do not conform to statements made in their packaging, advertising, or warranties, none of which disclose the presence of lead.

---

[1] This Complaint uses the term "Stanley cups" to refer to PMI-made drinkware or related products that include lead as part of their design or manufacture.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Plaintiffs seek injunctive and monetary relief for the proposed Class (as defined in ¶¶ 56–58).[2] For example, Plaintiffs seek refunds of all payments made by the Class for Stanley cups that were sold with undisclosed lead. They also seek an injunction requiring PMI to fully disclose the presence of lead in its advertising, packaging, and at the point of sale wherever its cups are sold.

Plaintiffs allege the following based on their knowledge or on information and belief formed after a reasonable investigation. All contentions have or will have evidentiary support after a reasonable opportunity for further investigation and discovery.

## JURISDICTION, VENUE, AND PARTIES

1.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5 million, and the named Plaintiffs live in different states than PMI.

2.      Venue is proper in the Western District of Washington because that is where PMI is headquartered.

3.      Plaintiff Mariana Franzetti is a Nevada citizen who bought a Stanley cup for personal, family, or household use from Target in Nevada around March 2023 for around $35. She bought the cup to safely store and drink liquids without fear of exposure to toxins. She based her decision to buy the cup on a reasonable assumption that using it could not expose her and her family to lead. Franzetti no longer uses the cup.

4.      Plaintiff Laura Barbu is a New York citizen who bought two Stanley 40 oz. and one 30 Stanley 30 oz. Stainless Steel Adventure Quencher Tumbler cups for personal, family, or household use from Target.com and picked them up from Target retail stores in New York

---

[2]     The term "Class" refers to the Class as a whole and all its subclasses.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

around March 2022 and March 2024. She bought the cups to safely store and drink liquids without fear of exposure to toxins. Before buying the cups, she saw materials describing their characteristics. She based her decision to buy the cups on a reasonable assumption that using them could not expose her and her family to lead. Barbu no longer uses the cups.

5.      Plaintiff Robin Krohn is a California citizen who bought a Stanley cup for personal, family, or household use from Dick's Sporting Goods in California around December 2022. She bought the cup to safely store and drink liquids without fear of exposure to toxins. She based her decision to buy the cup on a reasonable assumption that using it could not expose her and her family to lead. Krohn no longer uses the cup.

6.      Plaintiff Mackenzie Brown is a California citizen who bought a Stanley cup for personal, family, or household use from Dick's Sporting Goods in California as a treat to herself for Mother's Day in 2022. She bought a popular rose-gold Stanley cup after being bombarded with PMI's advertisements. She bought the cup to safely store and drink liquids without fear of exposure to toxins. Before buying the cup, she saw materials describing its characteristics. She based her decision to buy the cup on a reasonable assumption that using it could not expose her and her family to lead. Brown no longer uses the cup.

7.      Plaintiff Meiling Robinson is a California citizen who bought a Stanley cup in California for personal, family, or household use in the first half of 2021 from Backcountry.com. She bought the cup to safely store and drink liquids without fear of exposure to toxins. Robinson no longer uses the Stanley cup.

8.      Plaintiff Holly Rydman is a citizen of Washington who bought a Stanley cup for personal, family, or household use in February 2022 from Dick's Sporting Goods in Washington. She bought the cup to safely store and drink liquids without fear of exposure to toxins. She based her decision to buy the cup on a reasonable assumption that using it could not expose her and her family to lead. Rydman no longer uses the cup.

CONSOLIDATED CLASS ACTION
COMPLAINT - 3
NO. 2:24-cv-00191-TL

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

9.    No Plaintiffs agreed to knowingly use lead-containing drinkware, and none would have bought any Stanley cups had they known they contained lead. Instead, they would have used a lead-free alternative. Plaintiffs also did not expect these cups to contain a toxic metal. These cups are now worthless to them because they contain lead, and all Plaintiffs have stopped using them for fear of lead exposure.

10.    Plaintiffs Franzetti, Barbu, Brown, Robinson, and Rydman would consider repurchasing the cups if they were sold with a revised design that did not include using lead.

11.    Defendant Pacific Market International, LLC dba PMI Worldwide ("PMI") is a Washington limited liability company with its principal place of business in Seattle, Washington. PMI advertises and sells its products throughout the United States directly to consumers and through intermediaries. PMI represents that the cups at issue were "Designed in Seattle."

## COMMON ALLEGATIONS

12.    PMI has marketed its popular Stanley cups as safe, practical drinkware.

13.    But PMI concealed an important fact: that the Stanley cups contained lead — not incidentally, but deliberately, as part of their design.

14.    Until investigators exposed PMI's use of lead in January 2024, PMI never disclosed that it made its cups with lead. Instead, PMI systematically deceived consumers by omitting that fact from its advertisements, displays, and packaging.

CONSOLIDATED CLASS ACTION
COMPLAINT - 4
NO. 2:24-cv-00191-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

15.     PMI warrants that its products, including the Stanley cups, are "free from any defect in workmanship or materials and to be thermally efficient provided used according to the instructions," according to the Care and Use insert packaged with its cups.

**Guarantee:** Stanley® products are warranted to be free from any defect in workmanship or materials and to be thermally efficient provided used according to the instructions. This warranty does not cover component parts or malfunction due to alteration or accident.

*Figure 1: Care and Use insert packaged with PMI's Stanley cups*



Sustainable at heart
The body of every Quencher is made with BPA-free 90% recycled 18/8 stainless steel.

*Figure 2: A PMI advertisement falsely suggesting that Stanley cups are made only of safe materials*

CONSOLIDATED CLASS ACTION
COMPLAINT - 5
NO. 2:24-cv-00191-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

16.     PMI's statements misleadingly represented that the Stanley cups were free of harmful materials. For example, PMI touted using "recycled stainless steel" and advertised its Stanley cups as "BPA-free."[3]

17.     PMI represents that Stanley cups are subject to tests ensuring that its products comply with "strict guidelines, including but not limited to BPA/BPS, PFOS, and phthalate regulatory requirements."[4]

18.     In keeping with its marketing strategy, PMI advertises the Stanley cups as "BPA-free" and made of safe, simple, and eco-friendly materials such as stainless steel.

Stanley assures that its products meet all US regulatory requirements including Prop65. Stanley tests for and validates compliance on all products through FDA accredited 3rd party labs that verify our products follow strict guidelines including but not limited to BPA/BPS, PFOS, and phthalate regulatory requirements.

*Figure 3: A PMI statement assuring customers of Stanley cups' safety.*

19.     Such representations led consumers (including Plaintiffs) to reasonably but mistakenly believe that PMI had disclosed all the materials that the Stanley cups contained. In fact, PMI consistently failed to disclose a key component of its products: lead.

20.     If PMI had told consumers that its Stanley cups contained lead or were BPA-free but also contained a dangerous toxin, its profits would have suffered. It therefore concealed those facts.

21.     PMI's marketing strategy has also included paying social media influencers with

---

[3]  The Quencher H2.0 Flowstate™ Tumbler | 40 Oz, Stanley 1913, www.stanley1913.com/products/adventure-quencher-travel-tumbler-40-oz?variant=4456001001894 (last accessed June 5, 2024).

[4]  *Do Stanley Products Contain Lead?*, Stanley 1913, https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-stanley-products-contain-lead- (last accessed June 5, 2024).

CONSOLIDATED CLASS ACTION
COMPLAINT - 6
NO. 2:24-cv-00191-TL

large followings in PMI's target demographics to promote Stanley cups.[5] With the help of these influencers — whom PMI cultivated because of their ability to reach PMI's core market — the sales of Stanley cups skyrocketed.[6] None of Stanley's social media marketing disclosed the presence of lead in its products.

22.     In 2019, PMI launched a marketing campaign to increase sales of its Adventure Quencher Travel Tumbler. PMI then capitalized on the Adventure Quencher's success by designing other Stanley cups with similar aesthetics and insulation systems.

23.     According to PMI's public statements, its annual sales of Stanley products grew from $70 million in previous years to over $750 million in 2023.[7]

24.     In late January 2024, PMI's use of lead in the Stanley cups was made public when news of third-party investigations went viral on social media. PMI admitted to using lead in the design and manufacturing of Stanley cups and that consumers could be exposed to the lead if a Stanley cup is damaged.[8] Even so, PMI continued to sell the Stanley cups without

---

[5]   AJ Willingham, *The Stanley craze begs the question: Why do we love our special little cups so much?* CNN (January 10, 2024), https://www.cnn.com/2024/01/10/style/stanley-cup-craze-explained-cec/index.html (last accessed June 10, 2024).

[6]   *Id.*

[7]   Nicolas Vega & Lauren Shamo, *How a 40-ounce cup turned Stanley into a $750 million a year business*, CNBC Make It (Dec. 23, 2023), https://www.cnbc.com/2023/12/23/how-a-40-ounce-cup-turned-stanley-into-a-750-million-a-year-business.html (last accessed June 10, 2024). As PMI is a private company, these figures cannot be independently verified without discovery, and they may understate PMI's earnings.

[8]   *See* Daryl Austin, *Do Stanley cups contain lead or pose a risk of lead poisoning? Experts weigh in*, Today (Jan. 24, 2024), https://www.today.com/health/news/stanley-cups-lead-rcna135513 ("Stanley is responding to claims that its products contain lead, clarifying that yes, lead is used in the manufacturing process, but the product needs to become damaged in order to expose the lead, a Stanley spokesperson tells TODAY.com in a statement.") (last accessed June 5, 2024); *Do Stanley products contain lead?* Stanley 1913, https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-stanley-products-contain-lead- (last accessed June 5, 2024).

CONSOLIDATED CLASS ACTION
COMPLAINT - 7
NO. 2:24-cv-00191-TL

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

changing its manufacturing or marketing practices.

25.     PMI spends enormous sums to reach consumers by paying online influencers to advertise Stanley cups as safe, durable products. PMI kept customers in the dark to avoid interfering with its bonanza of influencer-driven sales rather than allowing consumers to decide whether to accept the risks of using lead-containing drinking cups.

26.     Those who bought Stanley cups had a right to decide whether to expose their families to lead-related risks. After all, Stanley cups are expensive, nonessential products with readily available lead-free alternatives manufactured by competitors.

27.     Stanley cups are designed to store and transport beverages. When used as intended, they touch people's mouths and deliver liquids into their bodies. Any comparison to lead-containing products unrelated to eating and drinking is therefore inapt.

28.     Despite PMI's assurances that the lead in the Stanley cups is inaccessible to consumers, PMI recently admitted that consumers can be exposed to lead if a cup is damaged.[9]

29.     Lead is a toxin that is unsafe in any amount and can cause lifelong harm. Particularly when it is touched, swallowed, or inhaled, lead can cause severe developmental problems in children that lead to lifelong adverse health effects. These effects can include reproductive toxicity, cardiovascular disease, and nervous system damage. Lead is also unsafe for adults. It can cause high blood pressure, cardiovascular problems, and kidney damage.

30.     Like each Plaintiff, each Class member:

•     Bought Stanley cups but was not told they contained lead;

---

[9]  *Do Stanley Products Contain Lead?*, Stanley 1913, https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-stanley-products-contain-lead- (last accessed June 5, 2024); *see also* supra n.4, ("[T]he product needs to become damaged in order to expose the lead, a Stanley spokesperson tells TODAY.com in a statement") (last accessed June 5, 2024).

CONSOLIDATED CLASS ACTION
COMPLAINT - 8
NO. 2:24-cv-00191-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

- Was unaware that the Stanley cups contained lead; and

- Reasonably responded to PMI's omissions made in advertisements, point-of-sale displays, packaging, and warranties (none of which disclosed the lead).

31.     PMI knew that disclosing the presence of lead in its drinkware would have hurt its bottom line. PMI thus misled the public by failing to disclose a fact that reasonable consumers, including Plaintiffs, would find material and want to know before buying such products. This omission was crucial to maintaining PMI's market position because competing products that do not use lead or pose lead-related risks are readily available.

32.     When PMI admitted in January 2024 that reports of Stanley cups containing lead were true, it offered the explanation below. PMI admits it deliberately used lead in the Stanley

## Do Stanley products contain lead?

At Stanley, one of the key features of our products is our vacuum insulation technology, which provides consumers with drinkware that keeps beverages at the ideal temperature. Our manufacturing process currently employs the use of an industry standard pellet to seal the vacuum insulation at the base of our products; the sealing material includes some lead. Once sealed, this area is covered with a durable stainless steel layer, making it inaccessible to consumers. Rest assured that no lead is present on the surface of any Stanley product that comes into contact with the consumer nor the contents of the product. In the rare occurrence the base cap of a product comes off due to ordinary use and exposes this seal, it is eligible for our Lifetime Warranty, available here: **https://www.stanley1913.com/pages/contact-warranty**

*Figure 4: A PMI statement admitting its previously undisclosed use of lead (see supra n.3)*

cups. It also admitted that the cups could be damaged even through ordinary use, potentially exposing consumers to the deadly toxin.[10]

33.     Even after PMI's use of lead was exposed in January 2024, PMI launched a public relations campaign telling consumers not to worry about the lead in their Stanley cups.

34.     PMI continues to advertise the Stanley cups without mentioning they contain

---

[10]     *See supra* n.3; https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-stanley-products-contain-lead- (emphasis added) (last accessed June 5, 2024).

CONSOLIDATED CLASS ACTION
COMPLAINT - 9
NO. 2:24-cv-00191-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

lead and to omit any mention of lead from its point-of-sale displays and packaging.

35.      PMI also never told consumers that a damaged Stanley cup may expose people to lead, even though traveling with a cup and using it in rugged outdoor settings (as PMI's advertisements encourage) increases the risk of damage.

36.      As this is a safety and health-related concern, PMI had a duty to disclose its use of lead and the risk of lead exposure before enticing millions of buyers to unwittingly buy its Stanley cups. It also had a duty to avoid misleading consumers by advertising that the Stanley cups were made only with stainless steel and other harmless materials.

37.      In January 2024, social media posts by independent consumer investigators broke the news that Stanley cups contained lead.[11] The response to these disclosures showed that consumers felt blindsided by the disclosures and saw PMI's failure to disclose the lead as a material omission.



*Figure 5: An email sent by Babylist included a link to a PMI-promoted article telling parents not to worry about lead.*

_____

[11]   Madeline Holocombe & Sandy LaMotte, *Stanley and other drink cups contain lead. Should you be worried?* CNN (Jan. 26, 2024),  https://www.cnn.com/2024/01/26/health/stanley-cups-lead-wellness/index.html (last accessed June 10, 2024).

CONSOLIDATED CLASS ACTION
COMPLAINT - 10
NO. 2:24-cv-00191-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

38.     PMI admitted the reports were true:[12] Stanley cups include the use of lead to "seal the vacuum installation at the base."[13] This seal is then covered with a layer of steel, which PMI admits may come off — even "due to ordinary use"[14] — and expose users to lead.

39.     Several experts have said that PMI's use of lead in Stanley cups is alarming and unnecessary. One research director stated, "[I]f that bottom seal comes off, all bets are off…. Lead is so toxic you just can't take chances with it."[15] A "broken seal may not always be obvious,"[16] and a child who fidgets with a broken cup faces "a very possible and likely transference of microparticulate lead via normal hand-to-mouth behavior in young children."[17]

40.     PMI has claimed that using lead to seal insulation is the "industry standard."[18] But other manufacturers, including Hydro Flask, Owala, and Klean Kanteen, use different manufacturing processes that do not require using lead or other toxins in their drinkware.[19]

---

[12]  *Do Stanley products contain lead?*, Stanley 1913, https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-stanley-products-contain-lead (last accessed June 5, 2024).

[13]  *Id.*

[14]  *Id.*

[15]  Holocombe & LaMotte, *supra* n.10 (quoting Jane Houlihan).

[16]  Julia Ries, *Stanley cups contain lead – and so do other reusable cups. Here's the truth about their safety*, HuffPost (Jan. 20, 2024) (quoting Maryann Amirshahi, co-medical director of the National Capital Poison Center), https://www.huffpost.com/entry/stanley-reusable-water-cup-lead_l_65b925abe4b01c5c3a383bfb (last accessed June 10, 2024).

[17]  Daryl Austin, *Do Stanley cups contain lead or pose a risk of lead poisoning? Experts weigh in*, TODAY (Jan. 24, 2024), https://www.today.com/health/news/stanley-cups-lead-rcna135513 (last accessed June 10, 2024).

[18]  *Do Stanley products contain lead?*, *supra* note 4.

[19]  PMI's competitor Hydro Flask, for example, has been using a lead-free sealing process for the last decade. *Does Hydro Flask use lead for sealing its bottles and tumblers?* Hydro Flask (Jan. 29, 2024), https://faq.hydroflask.com/en_us/does-hydro-flask-use-lead-for-sealing-bottles-and-tumblers-HkQrgJLq6 (last accessed June 10, 2024).

Hydro Flask has used lead-free manufacturing for its drinkware for over a decade.[20]

41.     Rather than joining its competitors in choosing a safer design, PMI prioritized profits and deliberately concealed its use of lead from the public, depriving consumers of the knowledge they needed to make an informed decision about which drinkware (if any) to buy.

42.     PMI markets its products as safe, fashionable choices for conscientious consumers.

43.     Yet PMI knew or reasonably should have known that lead exposure could occur if the products were damaged even through ordinary use.

44.     PMI also routinely promotes images of families holding Stanley cups on its social media pages and advertisements.[21]

45.     As the manufacturer and seller of Stanley cups and the architect of the Stanley marketing campaign, PMI knew it used lead. Meanwhile, Plaintiffs — who knew nothing about PMI's manufacturing process or cup design besides what PMI told them — had no reason to suspect that these cups were designed and manufactured with a toxin. PMI alone knew that it had designed and manufactured these cups with a dangerous toxin and that damage to the cup could expose consumers to that toxin.

46.     Since substitute drinkware is readily available, Plaintiffs and the Class would have no reason to accept any risk by carrying around and drinking from cups made with lead. That is likely why PMI did not disclose the lead until it was forced to do so: PMI either knew or reasonably would have known that sales would not occur at the levels they did if they told consumers the truth.

---

[20]   *Id.*

[21]   *See* @stanley_brand, Instagram, https://www.instagram.com/stanley_brand/ (last accessed June 10, 2024).

CONSOLIDATED CLASS ACTION
COMPLAINT - 12
NO. 2:24-cv-00191-TL

47.     Consumers had a right to make an informed decision between buying a Stanley cup or a lead-free alternative and not to be misled into assuming the Stanley cups were safe and free of toxins.

48.     PMI's product inserts, promotional articles, and advertisements downplaying the risks of exposure to lead in Stanley cups remain misleading and pose an ongoing risk to consumers because they do not disclose that the lead in the cups can be exposed if the cups are damaged or even, according to PMI, through ordinary wear and tear.

49.     PMI has yet to contact purchasers to tell them the Stanley cups contain undisclosed lead and, if damaged, could expose consumers and their families to lead. Thus, most consumers remain unaware of that risk. PMI also has neither withdrawn nor revised its misleading advertisements. Nor has it offered refunds or other compensation to consumers who, aware of the expert consensus that lead is dangerous even in trace amounts, do not wish to subject themselves to any risk of lead exposure in their drinkware.

50.     PMI thus continues to advertise its cups in the same misleading ways, making remedies at law inadequate to protect Class members and future consumers. Without injunctive relief, PMI will continue to advertise and sell Stanley cups to consumers who do not know that the cups contain lead.

51.     Plaintiffs and the Class seek all available relief, including (without limitation):

- A permanent injunction requiring PMI to disclose (at the point of sale, on products' packaging, and in advertisements) any lead or other toxins present in the Stanley cups; to perform a corrective advertising campaign telling consumers that the cups contain lead; and to warn consumers to stop using the cups if they are damaged;

- A permanent injunction requiring PMI to stop using a cup design that includes lead;

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

- Compensatory and statutory damages refunding consumers for all amounts paid for Stanley cups; and

- Punitive damages for PMI's deliberate concealment of its use of lead in Stanley cups and of the chance that a damaged cup could expose consumers to lead.

## CLASS ACTION ALLEGATIONS

52. Plaintiffs sue for themselves and the following classes:

- **Nationwide Class**: All persons who are citizens of the United States and bought (other than for resale or redistribution) a PMI-made cup between June 1, 2016 and June 1, 2024.[22]

- **Washington Subclass**: Plaintiff Rydman brings this action individually and for the following Washington Subclass: All persons who are citizens of Washington who bought (other than for resale or distribution) a Stanley cup during the Class Period ("Washington Subclass").

- **Nevada Subclass**: Plaintiff Franzetti brings this action individually and for the following Nevada Subclass: All persons who are citizens of Nevada who bought (other than for resale or distribution) a Stanley cup during the Class Period ("Nevada Subclass").

- **New York Subclass**: Plaintiff Barbu brings this action individually and for the following New York Subclass: All persons who are citizens of New York who bought (other than for resale or distribution) a Stanley cup during the Class Period ("New York Subclass").

- **California Subclass**: Plaintiffs Krohn, Brown, and Robinson sue individually and for the following California Subclass: All persons who are citizens of

---

[22]   This timespan will be referred to as the "Class Period."

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

California who bought (other than for resale or distribution) a Stanley cup during the Class Period ("California Subclass").

53.     The Washington, Nevada, New York, and California Subclasses are called the "State Subclasses." The term "Class" refers to the Class as a whole and all its subclasses.

54.     The Class excludes PMI; its parents, subsidiaries, and other affiliates; its officers, directors, legal representatives, and employees; governmental entities; and any judicial officer presiding over this case.

55.     The Class is numerous — consisting of hundreds of thousands, if not millions, of persons — making joinder impracticable.

56.     Plaintiffs' claims are typical of those of the Class because of their similar experiences and harms; in particular, all Plaintiffs and the Class bought PMI-made drinkware without knowing or having reason to know that the drinkware contained lead.

57.     Plaintiffs will fairly and adequately represent Class members' interests and have no interests materially antagonistic to or in conflict with those of unnamed Class members. Plaintiffs are represented by a team of experienced attorneys whose firms have collectively represented class members in hundreds of actions nationwide, helping to promote fair and transparent business practices.

58.     There is no adequate remedy for affected consumers other than through this class action because of the modest damage each Class member suffered. Stanley cups range in price from $20 to $60, with an average price of around $45. In 2023 alone, it is estimated that PMI made over $750 million in sales from the cups, up from $75 million the year before.

59.     Consistent with Fed. R. Civ. Proc. 23(b)(1) and (2), the pursuit of individual remedies by Class members would tend to establish inconsistent standards of conduct for PMI. Adjudicating individual class members' claims would affect the interests of other class

members not participating in those cases, substantially impairing their ability to protect their interests. PMI has also acted or refused to act on grounds that apply generally to the Class, such that final injunctive or declaratory relief is appropriate.

60.     Questions of law and fact common to Plaintiffs and the Class include (without limitation) the following:

- Whether Class members bought Stanley cups without knowing or being told that they contained lead;

- Whether PMI knew (or should have known) that the Stanley cups contained lead;

- Whether PMI wrongfully represented (and continues to represent) that its Stanley cups are safe, durable, and suitable for ordinary use;

- Whether PMI wrongfully represented (and continues to represent) that the Stanley cups are manufactured in accordance with rigorous standards, following strict guidelines such as regulatory requirements relating to BPA/BPS, PFOS, and phthalate;

- Whether PMI's advertisements, point-of-sale displays, and packaging failed to disclose that the Stanley cups contained lead;

- Whether PMI's nondisclosure of lead in its drinkware was a material omission that reasonable consumers, especially those in PMI's target markets, would want to know before buying the cups and before choosing between Stanley cups and lead-free alternatives;

- Whether PMI wrongfully failed to disclose that the Stanley cups contained or may contain lead;

- Whether PMI's omissions in advertisements, warranties, packaging, and labeling were (and remain) misleading;

- Whether those omissions are likely to deceive a reasonable consumer;

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

- Whether a reasonable consumer would consider the presence of lead a material fact in buying a Stanley cup;
- Whether PMI knew its omissions were misleading;
- Whether PMI continues to disseminate materials containing omissions despite knowing they are misleading;
- Whether PMI's labeling and packaging of the Stanley cups is likely to mislead reasonable consumers;
- Whether each Class member's damages or equitable restitutionary relief can be established by a standard formula based on the amount they spent on Stanley cups;
- Whether PMI violated Washington law;
- Whether PMI violated California laws (for members of the alternative California Subclass);
- Whether PMI violated New York law (for members of the alternative New York Subclass);
- Whether PMI violated Nevada law (for members of the alternative Nevada Subclass);
- Whether PMI breached its express warranties;
- Whether PMI breached its implied warranties;
- Whether PMI engaged in unfair trade practices;
- Whether PMI engaged in deceptive trade practices;
- Whether PMI engaged in unlawful trade practices;
- Whether PMI engaged in false advertising;
- Whether PMI negligently or fraudulently omitted material facts;
- Whether Plaintiffs and the Class are entitled to actual, statutory, and punitive damages; and

CONSOLIDATED CLASS ACTION
COMPLAINT - 17
NO. 2:24-cv-00191-TL

- Whether Plaintiffs and the Class are entitled to declaratory and injunctive relief.

61.     These questions of law and fact predominate over any questions that affect only individual Class members.

62.     Requiring consumers to pursue individual actions would contravene the public interest and waste judicial resources. A class action is the best way to fairly and efficiently adjudicate the controversy. The Class members would have little incentive to pursue separate actions based on the amounts at issue. Further, PMI's assertions, the orders of other courts and this Court, and agreements between the parties have resulted in the litigation being concentrated in this District, and there will be few difficulties in managing this action based on how similar types of claims have been either litigated through or resolved before trial. The disposition of Class members' claims in this action will benefit the parties and the Court while serving the public interest in promoting truthful advertising and the disclosure of latent safety risks in consumer products.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION: VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT (WASH. REV. CODE § 19.86.010 ET SEQ.)

63.     Plaintiffs incorporate by reference every paragraph above. This Cause of Action is asserted for all members of the Nationwide Class or (alternatively) Plaintiff Rydman and the Washington Subclass.

64.     The Washington Consumer Protection Act ("WCPA") makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce."[23]

65.     PMI, Plaintiffs, and the Class are all "persons" within the meaning of the WCPA.

---

[23]   Wash. Rev. Code Ann. § 19.86.020.

CONSOLIDATED CLASS ACTION
COMPLAINT - 18
NO. 2:24-cv-00191-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

66.     PMI is a "person" as described in the Washington Consumer Protection Act. RCW 19.86.010(1).

67.     PMI engaged in "trade and commerce" within the meaning of the WCPA in the course of marketing, offering for sale, and selling Stanley cups in Washington and throughout the United States.

68.     PMI is headquartered in Washington, and its strategies, decision-making, and commercial transactions originate in Washington; most of its critical operations occur in Washington; and many of its employees live, work, and make company decisions in Washington.

69.     PMI holds out its Stanley cups as being "Designed In Seattle," suggesting that PMI's decisions to use lead in its cup design, and to conceal that fact from consumers, would have been made in Washington.

70.     The Washington Consumer Protection Act prohibits deceptive and unfair acts or practices in the conduct of any business, trade, or commerce, or in the provision of commerce. RCW 19.86.020.

71.     PMI's failure to disclose that its products contain lead constitutes an unfair or deceptive act or practice. A practice is considered unfair or deceptive under the WCPA, where it is likely to mislead a reasonable or ordinary consumer. PMI violated the WCPA through the unfair and deceptive acts and practices described throughout this Complaint. PMI's unfair and deceptive acts included:

- Failing to disclose the material fact that the cups contained lead; and
- Failing to disclose to consumers that the cups could expose them to lead if damaged.

CONSOLIDATED CLASS ACTION
COMPLAINT - 19
NO. 2:24-cv-00191-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

72.     PMI's failure to disclose that its products contain lead could deceive a substantial part of the public. A practice is considered unfair or deceptive under the WCPA if it is likely to mislead a reasonable or ordinary consumer.

73.     PMI's failure to disclose that its products contain lead harmed the public interest. The factors relevant to whether a deceptive act sufficiently affected a public interest are:

- Were the alleged acts committed in the course of PMI's business? (They were.)
- Are the acts part of a pattern or generalized course of conduct? (They were.)
- Were repeated acts committed before Plaintiffs and the Class were affected by these acts? (They were: PMI did not change its manufacturing process to stop using lead or change its advertisements and packaging to begin disclosing its use of lead during the Class Period.)
- Is there a real and substantial potential for repetition of PMI's conduct? (There is: PMI has yet to change its practices.)

74.     The damages, ascertainable losses, and injuries, including to their money or property, suffered by Plaintiffs and the Class are a direct and proximate result of PMI's unfair and deceptive acts and practices because they bought products they would not have if PMI had disclosed its lead use.

75.     PMI's unfair and deceptive practices injured (and continue to injure) the public interest by misleading consumers into buying products they would not have bought. These injuries greatly outweigh any potential countervailing benefit to consumers or competition. PMI has no legally cognizable interest in misleading consumers by failing to disclose a fact that would influence reasonable consumers' purchasing decisions.

76.     Plaintiffs seek to recover all available legal remedies for themselves and the Class, including (without limitation) compensatory and treble damages along with attorney's

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1    fees and costs. Given PMI's continuing conduct, Plaintiffs also ask the Court for prospective

2    injunctive relief.

3
               **SECOND CAUSE OF ACTION: DESIGN DEFECT (VIOLATION OF**
4                        **WASHINGTON PRODUCT LIABILITY ACT)**

5        77.    Plaintiffs incorporate by reference every paragraph above. This Cause of Action

6    is asserted for all members of the Nationwide Class or (alternatively) Plaintiff Rydman and the

7    Washington Subclass.

8        78.    PMI designed, manufactured, tested, marketed, sold, and distributed the Stanley
9
     cups used by Plaintiffs and the Class.
10

11       79.    The Stanley cups used by Plaintiffs and the Class reached them without a

12   substantial change in their anticipated or expected condition as manufactured, handled,

13   distributed, and sold by PMI.

14       80.    The Stanley cups used by Plaintiffs and the Class were shipped and stored in

15   compliance with PMI's express written instructions.

16
         81.    The Stanley cups used by Plaintiffs and the Class were used in a way that was
17
     foreseeable and intended by PMI.
18

19       82.    The Stanley cups used by Plaintiffs and the Class were not reasonably safe for

20   their intended use and were defective regarding their manufacture and design, as described

21   here, in that the design and manufacture of these cups posed an unreasonable risk of harm

22   (exposure to lead) to Plaintiffs and the Class.

23       83.    PMI's Stanley cups are inherently dangerous and defective, unfit, and unsafe for

24   their intended and reasonably foreseeable uses, and accordingly do not meet or perform to the

25   expectations of ordinary consumers.

26

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

84.     The Stanley cups create health and safety risks to consumers that far outweigh the cost to PMI of using a lead-free seal.

85.     PMI's manufacturing and design defects for the Stanley cups include (without limitation) its failure to use a lead-free plug to create its vacuum-insulated vessels.

86.     Through such defective design and manufacture, the Stanley cups materially deviated from the standards PMI advertised.

87.     The manufacturing and design defects in PMI's Stanley cups were substantial factors that caused Plaintiffs' and the Class members' injuries.

88.     As a direct and proximate result of PMI's conduct, Plaintiffs have been injured because they bought a defective product they otherwise would not have bought. They did not benefit from their purchase; instead, they suffered out-of-pocket losses.

**THIRD CAUSE OF ACTION:**
**BREACH OF EXPRESS WARRANTY**

89.     Plaintiffs incorporate by reference every paragraph above. This Cause of Action is asserted for all members of the Nationwide Class under Washington law.

90.     PMI marketed and sold the Stanley cups into the commerce with the intent that Plaintiffs and the Class would buy them.

91.     PMI expressly warranted, advertised, and represented to Plaintiffs and the members of the Class that the Stanley cups are safe and durable.

92.     PMI made these express warranties regarding the Stanley cups' quality in writing through its website, advertisements, marketing materials, and the express warranty included in the cup package. These warranties became part of the bargain that Plaintiffs and the Class received when buying the Stanley cups.

CONSOLIDATED CLASS ACTION
COMPLAINT - 22
NO. 2:24-cv-00191-TL

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

93.     For example, PMI warrants that its products, including the Stanley cups, are "free from any defect in workmanship or materials and to be thermally efficient provided used according to the instructions."

94.     The Stanley cups do not conform to PMI's warranties because they are unsafe for consumption and contain lead. Experts agree that even trace amounts of lead are highly dangerous, and Stanley has admitted (but never told consumers) that its cups, if damaged even through ordinary use, can expose consumers and their families to lead.

95.     PMI was on notice of this breach as it was aware of the lead in the Stanley cups.

96.     To the extent privity is required, privity exists because PMI expressly warranted to Plaintiffs and the Class through its warranty and advertising, marketing, and labeling that the Stanley cups were safe and suitable for household use. Any retail sellers were pass-through entities not intended to be the ultimate beneficiaries of PMI's warranties. Rather, Plaintiffs and the Class were the intended beneficiaries.

97.     As a direct and proximate result of PMI's conduct, Plaintiffs and the Class have suffered actual damages because they bought Stanley cups and would not have bought them had they known they contained lead.

98.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorney's fees, costs, and any other relief available for PMI's failure to deliver goods conforming to their express warranties and resulting breach.

**FOURTH CAUSE OF ACTION:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

99.     Plaintiffs incorporate by reference every paragraph above. This Cause of Action is asserted for all members of the Nationwide Class under Washington law.

100.     PMI is a merchant selling goods directly or indirectly to Plaintiffs and the Class.

CONSOLIDATED CLASS ACTION
COMPLAINT - 23
NO. 2:24-cv-00191-TL

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

101.     PMI manufactured, designed, distributed, and sold the Stanley cups. In doing so, PMI implicitly warranted that they were of merchantable quality, were fit for their ordinary use, and conformed to the promises made on PMI's websites and in its advertisements.

102.     The Stanley cups were not fit for their ordinary use (drinking liquids) and did not conform to PMI's representations because they contained lead, a toxin, and failed to conform to their packaging and labeling. Also, since PMI's competitors have offered lead-free alternative drinkware for years, PMI's continued use of lead is below the industry standard.

103.     The Stanley cups did not conform to PMI's representations and warranties because they contained lead.

104.     PMI breached these implied warranties by selling Stanley cups that failed to conform to the promises or affirmations of fact made on the container or labels because each product contained lead. This material fact was not stated on the packaging or labeling of the product.

105.     PMI was on notice of this breach because it was aware of the lead in the Stanley cups.

106.     To the extent privity is required, it exists because PMI warranted to Plaintiffs and the Class that the Stanley cups were safe and suitable for household use. Any retail sellers were mere pass-through entities; they would not be the ultimate intended beneficiaries of any such warranties, and Plaintiffs and the Class would be the intended beneficiaries.

107.     As a direct and proximate result of PMI's conduct, Plaintiffs and the Class have suffered actual damages in that they have bought Stanley cups that are either worth less than the price they paid or worthless altogether, and they would not have bought these cups had they known they contained lead.

CONSOLIDATED CLASS ACTION
COMPLAINT - 24
NO. 2:24-cv-00191-TL

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

108.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorney's fees, costs, and any other just relief available for PMI's failure to deliver goods conforming to its implied warranties and resulting breach.

**FIFTH CAUSE OF ACTION:**
**VIOLATION OF MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. § 2301 ET SEQ.)**

109.    Plaintiffs incorporate by reference every paragraph above. This Cause of Action is asserted for Plaintiffs and all members of the Nationwide Class under Washington law.

110.    The Stanley cups at issue are a "consumer product" as defined in 15 U.S.C. § 2301(1).

111.    Plaintiffs, as buyers of these consumer products, are "consumers" under 15 U.S.C. § 2301(3).

112.    PMI is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4)–(5).

113.    In connection with the sale of the products at issue, PMI issued written warranties as defined in 15 U.S.C. § 2301(6) by making the express warranties described above.

114.    The products at issue do not conform to these express warranties for the reasons detailed above.

115.    For example, PMI warrants that its products, including the Stanley cups, are "free from any defect in workmanship or materials and to be thermally efficient provided used according to the instructions."

116.    PMI also violated the Magnuson-Moss Warranty Act by breaching the applicable implied warranty of merchantability, as alleged above.

CONSOLIDATED CLASS ACTION
COMPLAINT - 25
NO. 2:24-cv-00191-TL

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

117.    Plaintiffs and the Class were injured as a direct and proximate result of PMI's breach of these express and implied warranties because the Stanley cups they received did not conform with what they were promised and expected. Plaintiffs did not benefit from their purchases, as the products are worthless to them.

118.    As a result of PMI's breaches of warranty, PMI violated the statutory rights of Plaintiffs and the Class under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. Plaintiffs and the Class are entitled to all relief available under this statute. This includes recovery of direct, proximate, incidental, and consequential damages; the right of refund, repair, or replacement at no extra cost to make these goods conform to PMI's representations and promises; attorney's fees and costs; prejudgment interest; and all other relief available under the Magnuson-Moss Warranty Act.

### SIXTH CAUSE OF ACTION: VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200 ET SEQ.)

*Pleaded in the alternative by Plaintiffs Krohn, Brown, and Robinson and the California Subclass*

119.    Plaintiffs Krohn, Brown, and Robinson incorporate by reference every paragraph above. This Cause of Action is pleaded in the alternative for Plaintiffs Krohn, Brown, and Robinson and members of the California Subclass.

120.    California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL"), prohibits acts of "unfair competition," which it defines as including "any unlawful, unfair or fraudulent business act or practice."[24]

121.    The allegations above describe several "unlawful" business practices that violate the UCL, including PMI's advertising of the Stanley cups that failed to disclose the lead, in

---

[24]   Cal. Bus. & Prof. Code § 17200.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

violation of at least the CLRA (Cal. Bus. & Prof. Code § 1750 et seq.) and False Advertising Law (Cal. Bus. & Prof. Code § 17500 et seq.).

122.     PMI engaged in "fraudulent" business practices by omitting its use of lead, and making misleading statements (such as that Stanley cups are BPA-free, meet all U.S. regulatory requirements, and are safe for use by consumers), in its advertisements and packaging. Such representations and omissions are likely to deceive reasonable consumers.

123.     PMI has engaged in "unfair" business practices, as its conduct in labeling, packaging, and marketing Stanley cups was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct (if any) does not outweigh the gravity of the harm to its victims. PMI's conduct does not benefit consumers or market competition but substantially harms them.

124.     The allegations above also describe many false and misleading advertisements that violate California's False Advertising Law (Cal. Bus. & Prof. Code § 17500 et seq.). That law prohibits making untrue or misleading statements about products or services offered for sale. It prohibits not only advertising that is false but also advertising that, although true, is misleading or capable of deceiving or confusing the public. Plaintiffs allege above how the advertising for the Stanley cups was misleading. A violation of the False Advertising Law constitutes an unlawful business practice under the UCL.

125.     A violation of the UCL may be alleged by "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." The above Plaintiffs have the required standing to assert such claims.

126.     These Plaintiffs and the members of the California Subclass have paid PMI hundreds of millions of dollars in product sales, and they seek restitution of these amounts. Plaintiffs also seek restitutionary disgorgement, prejudgment interest, costs, and attorney's fees. Given PMI's continuing conduct, Plaintiffs also ask the Court for prospective injunctive relief.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

**SEVENTH CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
**(CAL. CIV. CODE § 1750 ET SEQ.)**

*Pleaded in the alternative by Plaintiffs Krohn, Brown, and Robinson and the California*
*Subclass*

127.    Plaintiffs Krohn, Brown, and Robinson incorporate by reference every paragraph above. This Cause of Action is pleaded in the alternative for Plaintiffs Krohn, Brown, and Robinson and members of the California Subclass.

128.    PMI's misrepresentations and failures to disclose that the Stanley cups contain lead violates California's Consumers Legal Remedies Act (Cal. Civ. Code § 1750 et seq.) ("CLRA"), which prohibits "unfair methods of competition and unfair or deceptive acts or practices."

129.    The above Plaintiffs and the California Subclass members are "consumers" under Cal. Civ. Code § 1761(d).

130.    Each sale of the products at issue in California made or labeled by PMI that contained undisclosed lead was a "transaction" under Cal. Civ. Code § 1761(e).

131.    The Stanley cups are "goods" under Cal. Civ. Code § 1761(e).

132.    Under Cal. Civ. Code § 1770(a), unfair or deceptive practices in connection with the sale of goods to a consumer include the following:

- Representing that goods or services have characteristics, ingredients, uses, or benefits that they do not have.

- Representing that goods are of a particular standard, quality, or grade, if they are of another.

133.    PMI's labeling and advertising of its products — including its omission of the facts that the Stanley cups were manufactured using lead, contained lead by design, and could

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

expose purchasers and others to lead if the cups were damaged — were a material factor in Plaintiffs' and California Subclass members' decisions to buy these cups. These Plaintiffs and California Subclass members suffered damages by buying products not of the quality or grade represented or suitable for the purpose for which they bought them.

134.    Plaintiff Krohn sent notice and a written demand to PMI by certified letter dated March 20, 2024, for relief under the CLRA, which has been ignored.

135.    These Plaintiffs seek all available legal remedies for themselves and the California Subclass, including restitution of property, compensatory and punitive damages, and attorney's fees and costs.

136.    Given PMI's continuing conduct, Plaintiffs also ask the Court for a permanent injunction barring PMI from continuing its deceptive advertisements and nondisclosures.

## EIGHTH CAUSE OF ACTION:
### VIOLATION OF NEW YORK DECEPTIVE ACTS AND PRACTICES LAW
### (N.Y. GEN. BUS. LAW § 349)
*Pleaded in the alternative by Plaintiff Barbu and the New York Subclass*

137.    Plaintiff Barbu incorporates here by reference every paragraph above. This Cause of Action is pleaded in the alternative for Plaintiff Barbu and members of the New York Subclass.

138.    New York General Business Law ("GBL") § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

139.    PMI's conduct was a business and trade under GBL section 349 because PMI advertised and sold goods throughout New York.

140.    PMI violated GBL section 349 by deceptively failing to disclose that the Stanley cups contained lead.

CONSOLIDATED CLASS ACTION
COMPLAINT - 29
NO. 2:24-cv-00191-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

141.     PMI's omissions, concealment, and other deceptive conduct intentionally marketed Stanley cups as having a particular standard, grade, or quality when, in fact, they contained lead, a dangerous toxin.

142.     PMI's statements misleadingly represented that the Stanley cups were free of harmful materials. For example, PMI touted using "recycled stainless steel" and that its Stanley cups were "BPA-free."

143.     PMI also represented that the Stanley cups are subject to tests that validate compliance of its products with the "strict guidelines" of various regulatory requirements.

144.     The omissions, concealments, and other deceptive acts described here were directed at public consumers and could deceive a substantial number of these consumers.

145.     The facts concealed or not disclosed by PMI were material because Plaintiff Barbu and New York Subclass members would have considered them in deciding whether to buy the Stanley cups. Had they known the Stanley cups did not have the quality and standards as advertised by PMI and instead contained lead, they would not have bought them or paid a premium price for them.

146.     PMI alone possessed the information material to Plaintiff Barbu and New York Subclass members but failed to disclose such material information to consumers.

147.     PMI has engaged and continues to engage in deceptive conduct that violates GBL section 349.

148.     PMI's omissions and other deceptive conduct caused Plaintiff Barbu and the New York Subclass members to suffer injury in the form of actual damages because they bought Stanley cups worth less than the price paid, and they would not have bought them had they known that they contained lead.

CONSOLIDATED CLASS ACTION
COMPLAINT - 30
NO. 2:24-cv-00191-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

149.     PMI intended for Plaintiff Barbu and the New York Subclass members to stay unaware of material facts related to its products' manufacture, instead buying them in reliance on its deceptive omissions about the products' quality and standards.

150.     Plaintiff Barbu and the New York Subclass members have been harmed as a direct and proximate result of these violations. That harm will continue unless PMI is enjoined from further omitting the true quality and standards of the Stanley cups.

151.     Under GBL sections 349(h) and 350-D, Plaintiff Barbu and New York Subclass members seek injunctive relief and declaratory relief, full refunds, compensatory and punitive damages, actual damages or $50 (whichever is greater), statutory and treble damages, and attorney's fees.

**NINTH CAUSE OF ACTION: VIOLATION OF NEW YORK FALSE ADVERTISING LAW**
**(N.Y. GEN. BUS. LAW § 350)**

*Pleaded in the alternative by Plaintiff Barbu and the New York Subclass*

152.     Plaintiff Barbu incorporates here by reference every paragraph above. This Cause of Action is Pleaded in the alternative for Plaintiff Barbu and members of the New York Subclass.

153.     New York General Business Law ("GBL") § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

154.     Under GBL section 350, false advertising is defined as "advertising, including labeling, or a commodity… if such advertising is misleading in a material respect … [considering] representations made by statement, word [or] design [and] the extent to which the advertising fails to reveal facts material in the light of such representations."

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

155.    PMI's statements misleadingly represented that the Stanley cups were free of harmful materials. For example, PMI touted its use of "recycled stainless steel" and that its Stanley cups were "BPA-free."

156.    PMI also represented that the Stanley cups are subject to tests that validate compliance of its products with the "strict guidelines" of various regulatory requirements.

157.    PMI knew or should have known that the Stanley cups did not have the quality and standards described above because they contained an undisclosed amount of lead.

158.    PMI concealed material facts about its use of lead to consumers.

159.    The facts concealed or not disclosed by PMI were material in that Plaintiff Barbu and New York Subclass members would have considered them when deciding whether to buy the Stanley cups. Had Plaintiff Barbu and New York Subclass members known the Stanley cups did not meet the quality and standards advertised by PMI and instead contained lead, they would not have bought them.

160.    PMI's conduct caused Plaintiff Barbu and New York Subclass members to suffer actual damages when they bought the Stanley cups because the cups were worth less than the price they paid and because they would not have bought them at all had they known they contained lead.

161.    Plaintiff Barbu and New York Subclass members have been injured as a direct and proximate result of PMI's violation of GBL section 350. That harm will continue unless PMI is enjoined from further omitting its Stanley cups' true quality and standards, including their use of lead. Under GBL section 350-D, Plaintiff Barbu and New York Subclass members seek injunctive relief and declaratory relief, full refund, actual and punitive damages or $500 (whichever is greater), statutory damages of three times the actual damages (up to $10,000), and attorney's fees.

CONSOLIDATED CLASS ACTION
COMPLAINT - 32
NO. 2:24-cv-00191-TL

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

**TENTH CAUSE OF ACTION:**
**VIOLATION OF NEVADA DECEPTIVE TRADE PRACTICES ACT**
**(NRS § 598.0901 ET SEQ.)**

*Pleaded in the alternative by Plaintiff Franzetti and the Nevada Subclass*

162.    Plaintiff Franzetti incorporates here by reference every paragraph above. This Cause of Action is pleaded in the alternative for Plaintiff Franzetti and members of the Nevada Subclass.

163.    NRS  § 598.0915 provides (as relevant here) that a person engages in a "deceptive trade practice" if, in the course of their business or occupation, they:

- Knowingly make a false representation about the certification of goods for sale;
- Knowingly make a false representation about the characteristics, ingredients, uses, or benefits of goods for sale; or
- Represent that goods for sale are of a particular standard, quality, or grade if they know or should know that they are of another standard, quality, or grade.

164.    PMI violated those provisions through the actions described in the paragraphs incorporated by reference above. Each violation constitutes a deceptive trade practice under the Nevada Deceptive Trade Practices Act (NRS 598.0903 to 598.0999).

165.    PMI's statements misleadingly represented that the Stanley cups were free of harmful materials. For example, PMI touted using "recycled stainless steel" and that its Stanley cups were "BPA-free."

166.    PMI also represented that the Stanley cups are subject to tests that validate compliance of its products with the "strict guidelines" of various regulatory requirements.

167.    The Stanley cups contained lead as part of their manufacturing and design.

168.    Plaintiff Franzetti and members of the Nevada Subclass are entitled to an award of damages based on all profits derived from PMI's knowing and willful engagement in a

deceptive trade practice and treble damages on all damages suffered because of these deceptive trade practices, in an amount to be determined at trial. The Court should also impose civil penalties on PMI as permitted under NRS 598.09735.

169.     The Court should also make such additional orders or judgments as may be necessary to restore to any such person in interest any money or property, real or personal, which may have been acquired by any deceptive trade practice under NRS 598.0993, as well as issue appropriate injunctive relief.

170.     Plaintiff Franzetti and other Nevada Subclass members also have a right to recover reasonable costs and attorney's fees under Nevada law, including NRS 598.0999.

### ELEVENTH CAUSE OF ACTION:
### UNJUST ENRICHMENT

171.     Plaintiffs incorporate by reference every paragraph above. This Cause of Action is pleaded in the alternative to all the Causes of Action set forth above under Washington law or the laws of Plaintiffs' respective states of residence for members of the respective State Subclasses.

172.     PMI has been unjustly enriched by selling Plaintiffs and the Class lead-containing drinkware without their knowledge.

173.     Along with failing to disclose the lead, PMI misled Plaintiffs and the Class into believing that the Stanley cups were made exclusively of stainless steel and other nontoxic materials. PMI was thus unjustly enriched because it induced consumers to buy its lead-containing cups through deceitful marketing.

174.     Plaintiffs seek restitution (and restitutionary damages) consisting of all amounts they have paid to PMI for lead-containing drinkware and disgorgement of any profits PMI made by selling that drinkware to consumers unaware that it contained lead. Plaintiffs also seek prejudgment interest.

CONSOLIDATED CLASS ACTION
COMPLAINT - 34
NO. 2:24-cv-00191-TL

1

**TWELFTH CAUSE OF ACTION:**
**FRAUD BY OMISSION**

2

3

175.    Plaintiffs incorporate by reference every paragraph above. This Cause of Action

4

is asserted for all members of the Nationwide Class under Washington law.

5

176.    PMI committed acts of fraud through statements (both express and implied) that

6

were misleading because of PMI's deliberate nondisclosure of its use of lead in the manufacture

7

and design of Stanley cups.

8

177.    PMI also chose to speak on the hazards of toxins by disclosing some facts about

9

Stanley cups, such as that they were "BPA-free" or made from recycled stainless steel, while

10

not disclosing that the Stanley cups also contain lead, advising consumers how to handle the

11

product to minimize the risk of lead exposure, or informing consumers how to safely dispose of

12

a damaged cup. Having spoken about this issue, PMI needed to disclose all the relevant facts

13

related to the lead in these products.

14

178.    PMI also deliberately concealed its use of lead in designing and manufacturing

15

Stanley cups. Fraud by omission occurs when a defendant has a duty to disclose facts within its

16

knowledge but fails to do so. PMI had a duty to disclose the presence of lead in the Stanley

17

cups but failed to do so. PMI actively concealed its use of lead to maximize its profits from

18

unsuspecting consumers. PMI deliberately chose not to reveal the design and manufacturing

19

use of lead in the Stanley cups to consumers. As PMI knew or was likely aware of the concerns

20

about the lead to be true for many of its safety-conscious core customers, it took care not to

21

reveal its practice of using lead in designing and manufacturing these cups. Instead, it

22

continued to market its products as safe.

23

24

179.    PMI acted with intent to induce Plaintiffs and the Class to buy its product by

25

concealing from these consumers the presence of a toxin in supposedly premium drinking cups.

26

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

180.    PMI's use of lead in Stanley cups is a fact that would be material to the purchase decisions of Plaintiffs and the Class.

181.    Reasonable consumers are especially likely to be alert to potential safety concerns such as using lead in a drinking cup.

182.    Plaintiffs and the Class bought Stanley cups without knowing they contained lead. They reasonably relied on PMI's misleading representations and nondisclosures of material facts.

183.    Plaintiffs had a right to know and should have been told at the point of sale that the Stanley cups contained lead. Had PMI disclosed the lead in these cups, Plaintiffs would not have bought them.

184.    Plaintiffs seek compensatory damages for PMI's fraudulent concealment based on a full refund of the amounts they paid for PMI products that contained lead, punitive damages, and a permanent injunction, together with prejudgment interest and costs.

**REQUESTED RELIEF**

185.    Plaintiffs seek the following relief:

- An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class, and requiring PMI to bear the costs of class notice;

- A permanent injunction ordering PMI to engage in a corrective advertising campaign, including disclosures on its website, in its advertisements of the lead-containing Stanley cups, in the Stanley cups' packaging, and at the point of sale that PMI: (1) uses lead in its manufacturing process; (2) includes lead in its finished cups; and (3) that, if damaged, the consumer or others may be exposed to lead, a harmful toxin;

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1

- An order enjoining PMI from selling the Stanley cups until PMI changes its

2

   manufacturing and design practices to no longer use contaminants such as lead;

3

- Injunctive relief enjoining PMI from continuing the unlawful practices alleged

4

   and reducing the harm caused by PMI's conduct;

5

- Compensatory, statutory, and treble damages in an amount to be proved at trial,

6

   including refunding all amounts paid by Plaintiffs and the Class for Stanley cups

7

   containing lead;

8

- Punitive damages to hold PMI accountable for its deliberate concealment of its

9

   use of lead and to deter similar misconduct;

10

- Pre- and post-judgment interest;

11

- Attorney's fees and costs of suit;

12

- Any other relief the Court finds appropriate.

13

**JURY DEMAND**

14

Plaintiffs demand a jury trial on all issues that are so triable.

15

16

   DATED this 18th day of June, 2024.

17

**TOUSLEY BRAIN STEPHENS PLLC**

18

By: *s/Jason T. Dennett*
   Jason T. Dennett

19

   1200 Fifth Avenue, Suite 1700
   Seattle, WA 98101-3147

20

   Tel: (206) 621-1158/Fax: (206) 682-2992
   jdennett@tousley.com

21

**BRESKIN JOHNSON & TOWNSEND**

22

**PLLC**
   Brendan Donckers (WSBA # 39406)

23

   1000 Second Avenue, Suite 3670
   Seattle, WA 98104

24

   Telephone: (206) 652-8660
   Fax: (206) 652-8290

25

   Email: bdonckers@bjtlegal.com

26

   *Interim Plaintiffs' Liaison Counsel*

CONSOLIDATED CLASS ACTION
COMPLAINT - 37
NO. 2:24-cv-00191-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

**WHATLEY KALLAS, LLP**
Alan M. Mansfield (admitted *pro hac vice*)
16870 W. Bernardo Drive, Suite 400
San Diego, CA 92127
Tele: (619) 308-5034
amansfield@whatleykallas.com

**RUSHING MCCARL LLP**
Ryan McCarl (admitted *pro hac vice*)
2219 Main St. No.144
Santa Monica, CA 90405
Tele: (310) 896-582
info@rushingmccarl.com

**LOCKRIDGE GRINDAL NAUEN PLLP**
Rebecca A. Peterson (admitted *pro hac vice*)
Robert K. Shelquist (admitted *pro hac vice*)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tele: (612) 339-6900
rapeterson@locklaw.com
rkshelquist@locklaw.com

*Interim Plaintiffs' Lead Counsel*

**DOYLE APC**
William J. Doyle *(*admitted *pro hac vice)*
Chris W. Cantrell *
550 West B St, 4th Floor
San Diego, CA 92101
Tele: (619) 736-0000/ Fax: (619) 736-1111
bill@doyleapc.com
chris@doyleapc.com

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson (admitted *pro hac vice*)
David A. Goodwin (admitted *pro hac vice*)
Mary M. Nikolai (admitted *pro hac vice*)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tele: (612) 333-8844
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
mnikolai@gustafsongluek.com

CONSOLIDATED CLASS ACTION
COMPLAINT - 38
NO. 2:24-cv-00191-TL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman (WSBA #29096)
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9320
Fax: (888) 421-4173
lfeldman@4-justice.com
eservice@4-justice.com

*Interim Plaintiffs' Executive Committee*