1

2

3

4

5

6

7

8

THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

IN RE: PACIFIC MARKET
INTERNATIONAL, LLC, STANLEY
TUMBLER LITIGATION


This Document Relates to:  All Actions

Master File No. 2:24-cv-00191-TL

**DEFENDANT PACIFIC MARKET
INTERNATIONAL, LLC'S MOTION
TO DISMISS**

NOTE ON MOTION CALENDAR:
SEPTEMBER 20, 2024

**ORAL ARGUMENT REQUESTED**

16

17

18

19

20

21

22

23

24

25

26

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 4

    A.    The Allegations That Appear In The Complaint ......................................5

    B.    The Allegations That Do Not Appear In The Complaint ........................6

    C.    Lead..........................................................................................................9

    D.    The Claims Asserted And The Relief Sought........................................10

ARGUMENT ..................................................................................................... 11

I.     The Rule 12(b)(6) Standard .......................................................................... 11

II.    The Complaint Fails To State Any Claim Upon Which Relief May Be Granted............. 12

    A.    The Complaint Fails To State A Claim For Violation Of The Washington Consumer Protection Act (Count 1) ....................................12

    B.    The Complaint Fails To State A Claim Under The Washington Product Liability Act (Count 2)..........................................................................15

    C.    The Complaint Fails To State A Claim For Breach Of Express Warranty Under Washington Law (Count 3)............................................................16

    D.    The Complaint Fails To State A Claim For Breach of the Implied Warranty Of Merchantability Under Washington Law (Count 4).........................18

    E.    The Complaint Fails To State A Claim Under The Magnuson-Moss Warranty Act (Count 5) ...........................................................................20

    F.    The Complaint Fails To State A Claim Under California's Unfair Competition Law (Count 6)........................................................................21

        1.    Plaintiffs Have No Claim Under Any UCL Prong For Any Affirmative Statements ............................................................... 21

        2.    Plaintiffs Have No Claim Under Any UCL Prong For Alleged Nondisclosure ................................................................. 22

    G.    The Complaint Fails To State A Claim Under California's Consumer Legal Remedies Act (Count 7) ...............................................................25

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - i

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

H.    The Complaint Fails To State A Claim Under New York's Consumer Protection Statutes (Counts 8 and 9) ........................................................26

I.     The Complaint Fails To State A Claim Under Nevada's Consumer Protection Statute (Count 10) ...........................................................................27

J.     The Complaint Fails To State A Claim For Unjust Enrichment (Count 11) .........28

K.    The Complaint Fails To State A Claim For Fraudulent Omission (Count 12) ..............................................................................................29

CONCLUSION ..............................................................................................30

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - ii

**K&L GATES LLP**
**925 FOURTH AVENUE, SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Anderson v. Apple Inc.*,
5     500 F. Supp. 3d 993 (N.D. Cal. 2020) ...................................................................................25

6   *Balistreri v. McCormick & Co.*,
      2023 WL 5988600 (N.D. Cal. Sept. 13, 2023) ...................................................15, 19, 20, 28
7

8   *Baughn v. Honda Motor Co., Ltd.*,
      727 P.2d 655 (Wash. 1986).............................................................................................16

9   *Bockrath v. Aldrich Chem. Co.*,
10    980 P.2d 398 (Cal. 1999) .................................................................................................7

11  *Borenkoff v. Buff. Wild Wings, Inc.*,
      2018 WL 502680 (S.D.N.Y. Jan. 19, 2018) ...............................................................27
12

13  *Clemens v. DaimlerChrysler Corp.*,
      534 F.3d 1017 (9th Cir. 2008) ........................................................................................20

14  *Coe v. Philips Oral Healthcare Inc.*,
15    2014 WL 722501 (W.D. Wash. Feb. 24, 2014) .........................................................20

16  *Colella v. Atkins Nutritionals, Inc.*,
      348 F. Supp. 3d 120 (E.D.N.Y. 2018) ...........................................................................27
17

18  *Corsello v. Verizon N.Y., Inc.*,
      967 N.E.2d 1177 (N.Y. 2012).........................................................................................29

19  *Davidson v. Sprout Foods, Inc.*,
20    106 F.4th 842 (9th Cir. 2024) .................................................................12, 14, 15, 21

21  *Dwyer v. Allbirds, Inc.*,
      598 F. Supp. 3d 137 (S.D.N.Y. 2022)...........................................................................26
22

23  *Ethyl Corp. v. EPA*,
      541 F.2d 1 (D.C. Cir. 1976)............................................................................................9

24  *Floyd v. Am. Honda Motor Co.*,
25    966 F.3d 1027 (9th Cir. 2020) ........................................................................................20

26

*In re Fruit Juice Prods. Mktg. & Sales Pracs. Litig.*,
    831 F. Supp. 2d 507 (D. Mass. 2011) ...............................................................9, 13

*Gordon v. Target Corp.*,
    2022 WL 836773 (S.D.N.Y. Mar. 18, 2022) ..............................................................5

*Gray v. Toyota Motor Sales, U.S.A.*,
    2012 WL 313703 (C.D. Cal. Jan. 23, 2012),
    *aff'd*, 554 F. App'x 608 (9th Cir. Feb. 5, 2014).......................................................24

*Guerra v. Dematic Corp.*,
    2020 WL 5995496 (D. Nev. Oct. 8, 2020) ...............................................................28

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..............................................................22, 23

*Hayden v. Bob's Red Mill Nat. Foods, Inc.*,
    2024 WL 1643696 (N.D. Cal. Apr. 16, 2024) ..........................................................23

*Herceg v. Chobani, LLC*,
    2023 WL 6162939 (S.D.N.Y. Sept. 21, 2023) .........................................................26

*Herrington v. Johnson & Johnson Consumer Cos.*,
    2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ..........................................................21

*Herron v. Best Buy Co.*,
    924 F. Supp. 2d 1161 (E.D. Cal. 2013)...................................................................24

*Housey v. Procter & Gamble Co.*,
    2022 WL 17844403 (2d Cir. Dec. 22, 2022) ...........................................................26

*J.C. v. Soc'y of Jesus*,
    457 F. Supp. 2d 1201 (W.D. Wash. 2006)...............................................................29

*Jet Boats, Inc. v. Puget Sound Nat'l Bank*,
    721 P.2d 18 (Wash. Ct. App. 1986)........................................................................19

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000)...................................................................................29

*Keodalah v. Allstate Ins. Co.*,
    449 P.3d 1040 (Wash. 2019)..................................................................................12

*Kingston v. FCA US LLC*,
    2019 WL 7753446 (C.D. Cal. Dec. 10, 2019) .........................................................24

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - iv

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*Koronthaly v. L'Oreal USA, Inc.*,
   374 F. App'x 257 (3d Cir. 2010) ............................................................9

*Krakauer v. Recreational Equip., Inc.*,
   2024 WL 1494489 (W.D. Wash. Mar. 29, 2024) ..................................29

*Kwan v. SanMedica Int'l*,
   854 F.3d 1088 (9th Cir. 2017) ...............................................................11

*Kwikset Corp. v. Superior Ct.*,
   246 P.3d 877 (Cal. 2011) ........................................................................21

*Landers v. Quality Commc'ns, Inc.*,
   771 F.3d 638 (9th Cir. 2014) .................................................................11

*Leppert v. Champion Petfoods USA Inc.*,
   2019 WL 216616 (N.D. Ill. Jan. 16, 2019) ...........................................15

*Lohr v. Nissan N. Am., Inc.*,
   2017 WL 1037555 (W.D. Wash. Mar. 17, 2017) ..................................19

*Lohr v. Nissan N. Am., Inc.*,
   2022 WL 1449680 (W.D. Wash. May 9, 2022)......................................12

*Mesecher v. Lowes Cos.*,
   2018 WL 793613 (E.D. Wash. Feb. 8, 2018) ........................................16

*Michelo v. Nat'l Collegiate Student Loan Tr.*
   *2007-2*, 419 F. Supp. 3d 668 (S.D.N.Y. 2019) ....................................26

*Milman v. FCA U.S., LLC*,
   2019 WL 3334612 (C.D. Cal. Apr. 15, 2019) .......................................24

*Motogolf.com, LLC v. Top Shelf Golf, LLC*,
   528 F. Supp. 3d 1168 (D. Nev. Mar. 25, 2021) ....................................28

*Paradowski v. Champion Petfoods USA, Inc.*,
   2023 WL 3829559 (2d Cir. June 6, 2023) ...............................................9

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
   2005 WL 2207037 (W.D. Wash. Aug. 29, 2005).................................29

*In re Plum Baby Food Litig.*,
   2024 WL 1354447 (N.D. Cal. Mar. 28, 2024)................................23, 25

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - v

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*Quinn v. Anvil Corp.*,
    620 F.3d 1005 (9th Cir. 2010) ...................................................................................12

*Rasmussen v. Apple Inc.*,
    27 F. Supp. 3d 1027 (N.D. Cal. 2014) .....................................................................23

*Rubenstein v. Gap, Inc.*,
    222 Cal. Rptr. 3d 397 (Cal. Ct. App. 2017).............................................................22

*Rydman v. Champion Petfoods USA, Inc.*,
    2023 WL 3506133 (W.D. Wash. May 17, 2023).......................................................17

*Sherwin-Williams Co. v. Gaines ex rel. Pollard*,
    75 So. 3d 41 (Miss. 2011)...........................................................................................7

*Staub v. Zimmer, Inc.*,
    2017 WL 2506166 (W.D. Wash. June 9, 2017)..........................................................15

*Stroble v. Walmart*,
    2024 WL 1612240 (9th Cir. Apr. 15, 2024) ..............................................................15

*Sunrise Hosp. & Med. Ctr., LLC v. Ariz. Physicians IPA, Inc.*,
    2018 WL 3419250 (D. Nev. July 13, 2018) ...............................................................29

*Tex Enters., Inc. v. Brockway Standard, Inc.*,
    66 P.3d 625 (Wash. 2003)..........................................................................................18

*Thompson v. E. Pac. Enters., Inc.*,
    2003 WL 352914 (Wash. Ct. App. 2003)...................................................................19

*Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc.*,
    831 P.2d 724 (Wash. 1992)........................................................................................16

*UFCW Loc. 1500 Pension Fund v. Mayer*,
    2016 WL 6122458 (N.D. Cal. Oct. 19, 2016), *aff'd*, 895 F.3d 695 (9th Cir. 2018)...............29

*Velicer v. Falconhead Cap., LLC*,
    2020 WL 1182962 (W.D. Wash. Mar. 11, 2020) .......................................................30

*Voelker v. Porsche Cars N. Am., Inc.*,
    353 F.3d 516 (7th Cir. 2003) .....................................................................................20

*Wash. Water Power Co. v. Graybar Elec. Co.*,
    774 P.2d 1199 (Wash. 1989)......................................................................................16

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - vi

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*Water & Sanitation Health, Inc. v. Chiquita Brands Int'l, Inc.*,
  2014 WL 2154381 (W.D. Wash. May 22, 2014)...................................................................28

*Weaver v. Champion Petfoods USA Inc.*,
  2019 WL 2774139 (E.D. Wis. July 1, 2019) ....................................................................9, 14

*Wessa v. Watermark Paddlesports, Inc.*,
  2006 WL 1418906 (W.D. Wash. May 22, 2006)................................................................30

*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017) .........................................................................................23

*Wilson v. ColourPop Cosmetics, LLC*,
  2023 WL 6787986 (N.D. Cal. Sept. 7, 2023) ...................................................................13

*Young v. Young*,
  191 P.3d 1258 (Wash. 2008)............................................................................................28

**Statutes**

15 U.S.C. § 2310(d)(3) ...........................................................................................................20

Cal. Bus. Code § 17204 ...........................................................................................................21

NRS 598.0901 ...........................................................................................................................27

RCW 7.72.010(4)......................................................................................................................16

RCW 7.72.010(6)......................................................................................................................16

**Other Authorities**

Daryl Austin, *Do Stanley Cups Contain Lead or Pose a Risk of Lead Poisoning?*
  *Experts Weigh in*, TODAY (Jan. 24, 2024),
  https://www.today.com/health/news/stanley-cups-lead-rcna135513 .......................................7

Fed. R. Civ. P. 12(b)(6)........................................................................................................1, 11

Fed. R. Civ. P. 8 .......................................................................................................................11

Fed. R. Civ. P. 9(b) ......................................................................................................... *passim*

1    Defendant Pacific Market International, LLC ("PMI") respectfully submits this motion to

2    dismiss the Consolidated Class Action Complaint ("Complaint") under Federal Rule of Civil

3    Procedure 12(b)(6).[1]

**INTRODUCTION**

5    This lawsuit is based on the contention that Defendant failed to disclose that its product

6    contains a supposedly harmful component. Yet the Complaint alleges no facts showing that the

7    product causes harm. This fatal flaw requires dismissal of the entire Complaint.

8    In this consolidated action, six Plaintiffs who bought Defendant's Stanley cups allege that

9    Defendant did not disclose to them that the cups contain lead in an area that never comes into

10   contact with any liquid in the cup or the consumer. They allege that Defendant uses a certain

11   amount of lead (which Plaintiffs do not specify) to seal the vacuum insulation at the base of the

12   cup, and that seal is then covered with a layer of stainless steel. Plaintiffs allege that, *if* a cup is

13   damaged (in a way Plaintiffs do not specify), the seal containing the lead *may* be "exposed."

14   Plaintiffs claim this presents a "safety and health-related concern," and that they would not have

15   bought Stanley cups had they known they contained lead.

16   On the basis of these allegations, Plaintiffs assert claims for violation of consumer

17   protection statutes, breach of warranty, fraudulent omission, unjust enrichment, and product

18   liability. They purport to assert their claims on behalf of a nationwide class of Stanley cup

19   consumers as well as subclasses of Washington, California, Nevada and New York consumers of

20   Stanley cups. They claim no personal injury and seek purely economic damages amounting to

21   hundreds of millions of dollars.

22

23   ---
[1] Plaintiffs have sued Pacific Market International, LLC ("PMI"). However, a separate company, PMI WW Brands,

24   LLC, owns the Stanley brand and is responsible for marketing and distributing Stanley-brand drinkware. Plaintiffs have not sued PMI WW Brands, LLC . Although Plaintiffs state that PMI is a "dba" for "PMI Worldwide" (Dkt. No.

25   48 ¶ 11), that is incorrect. As Defendant has repeatedly informed Plaintiffs, they have not sued the correct company. Dkt. No. 15; Dkt. No. 29; *Krohn v. Pac. Mkt. Int'l LLC*, No. 2:24-cv-00200-TL (W.D. Wash. Feb. 14, 2014), Dkt. No. 25; *Krohn*, Dkt. No. 33; *Barbu v. Pac. Mkt. Int'l LLC*, No. 2:24-cv-00258-TL (W.D. Wash. Feb. 24, 2024), Dkt. No.

26   22; *Barbu*, Dkt. No. 23.

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 1

What Plaintiffs' Complaint does *not* allege is far more revealing about the merit of their lawsuit than what it *does* allege. The Complaint does not allege any facts showing that:

- Simply being in the presence of unexposed lead causes harm;
- Simply being in the presence of exposed lead causes harm;
- Any individual can be harmed by drinking from a Stanley cup;
- Any individual has ever been harmed by lead in a Stanley cup; or
- Any individual may in the future be harmed by lead in a Stanley cup.

The Complaint accordingly provides no basis for the Court to conclude, assuming the truth of the factual allegations, that lead in Stanley cups poses any risk of harm, much less a material or unreasonable risk. To the contrary, the Complaint cites with approval a news article that quotes a professor of medical toxicology as saying that "*the risk of these cups is infinitesimally small.*"

Simply put, the Complaint does not allege that lead in Stanley cups causes harm. Since Plaintiffs' lawsuit seeks to impose massive liability for nondisclosure of lead in Stanley cups because that lead purportedly poses a "safety and health-related concern," the absence of any such factual allegations is the overarching, fundamental defect in the Complaint.

The absence of such allegations means that:

1.   *Plaintiffs' consumer protection and fraudulent omission claims (Counts 1, 6-10, and 12) fail*. These claims require the pleading of facts showing that the nondisclosure of lead in the cups was *material*—that is, important to reasonable consumer in their buying decisions. But without any factual allegations showing that any lead in the cups causes harm, Plaintiffs have proffered no basis for the Court to conclude that reasonable consumers would consider this nondisclosure important in their decision whether to buy a Stanley cup.

2.   *Plaintiffs' warranty claims (Counts 3-5) fail*. These claims are all based on the proposition that it is unsafe to consume liquids from Stanley cups. Because the Complaint is devoid of any factual allegations showing this proposition to be true, the warranty claims fail.

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 2

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

3.      *Plaintiffs' design defect claim (Count 2) fails*. This claim is based on the proposition that the cups present an unreasonable risk of harm to consumers. But once again, without any factual allegations to back up the conclusory allegation that the cups pose an unreasonable risk of harm, the claim fails.

4.      *Plaintiffs' unjust enrichment claim (Count 11) fails*. This claim fails for the same reasons the other claims fail. Without any factual allegations showing that the lead in Stanley cups causes harm, the Complaint lacks any factual allegation showing that Defendant engaged in any inequitable conduct that could give rise to an unjust enrichment claim.

The claims in the Complaint also fail for additional and independent reasons, including:

- The design defect claim (Count 2) fails because a claim under the Washington Product Liability Act requires pleading and proof that plaintiffs incurred non-economic harm, and Plaintiffs allege no such harm.

- The express warranty claim (Count 3) fails because this claim requires a showing that the plaintiffs were aware of the alleged warranty, and the Complaint contains no such allegations.

- The implied warranty claim (Count 4) fails because this claim requires contractual privity, and Plaintiffs allege no facts showing they were in contractual privity with Defendant.

- The Magnuson-Moss Warranty Act claim (Count 5) fails because a purported class action brought under the Act must include at least 100 named plaintiffs, and only six Plaintiffs filed the Complaint.

- The California consumer protection claims (Counts 6 and 7) fail because a plaintiff who bases a claim on an alleged nondisclosure must plead facts showing that the defendant had a duty to disclose the undisclosed information, and the Complaint pleads no such facts.

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 3

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

- The New York consumer protection claims (Counts 8 and 9) fail because these claims require the pleading of facts showing that the Plaintiffs were economically damaged, and the Complaint pleads no such facts.

- The Nevada consumer protection claim (Count 10) fails because it is based exclusively on purported deceptive statements rather than any nondisclosure, yet there are no factual allegations showing that Plaintiffs relied on any affirmative statement in buying a Stanley cup.

- The unjust enrichment claim (Count 11) fails because under Washington law plaintiffs must allege facts showing defendant's appreciation or knowledge by the defendant of the benefit conferred by the plaintiff, and the Complaint alleges no such facts.

In a lawsuit centered on the alleged failure to disclose a purportedly harmful component of the product, the Complaint is striking for its lack of any factual allegations showing that the product causes harm or otherwise poses a "safety and health-related concern." That glaring omission cannot be an oversight. It reflects the fundamental weakness of Plaintiffs' case. Defendant respectfully requests that the Court dismiss the entire Complaint with prejudice.

## BACKGROUND

This action is a consolidation of four lawsuits filed by six individual Plaintiffs. Each of the original lawsuits were filed on behalf of a purported class, and each asserted claims under consumer protection statutes and other laws based on Defendant's alleged failure to disclose the presence of lead in its Stanley cups. On April 26, 2024, the Court granted Plaintiffs' consolidation motion and ordered Plaintiffs to file a consolidated class action complaint (the "Complaint"). Plaintiffs, represented by eight different law firms, did so on June 18, 2024. Dkt. No. 48.

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 4

## A.    The Allegations That Appear In The Complaint

There are six named Plaintiffs. Only one of them (Holly Rydman) is a citizen of Washington, where Defendant resides.[2] The rest are citizens of either California, Nevada, or New York. Plaintiffs brought this suit against Defendant "for its practice of failing to disclose the presence of lead in its Stanley cups." Compl. at 1. Each Plaintiff alleges that she bought a Stanley cup, and would not have bought the cup had she known it contained lead. *Id.* ¶¶ 3-9.[3]

The Complaint alleges that in January 2024, Defendant "admitted to using lead in the design and manufacturing of Stanley cups and that consumers could be exposed to the lead if a Stanley cup is damaged." *Id.* ¶ 24. The assertion that the lead in the Stanley cup may be "exposed" if the cup is damaged in a certain way is the Complaint's constantly recurring refrain. *E.g., id.* ¶¶ 3-9, 24, 26, 28, 32, 35, 36, 38, 39, 43, 45, 48, 49, 71, 82, 133.  As support for this allegation, the Complaint contains a screenshot of a page from Stanley's website. That screenshot states, without any contradiction from Plaintiffs, that Stanley's manufacturing process

> employs the use of an industry standard pellet to seal the vacuum insulation at the base of our products; the sealing material includes some lead. Once sealed, this area is covered with a durable stainless steel layer, making it inaccessible to consumers. Rest assured that no lead is present on the surface of any Stanley product that comes into contact with the consumer nor the contents of the product. In the rare occurrence the base cap of a product comes off due to ordinary use and exposes this seal, it is eligible for our Lifetime Warranty.

*Id.* ¶ 32.

Why does the alleged nondisclosure of lead in Stanley cups matter to Plaintiffs? The only reason, according to Plaintiffs, is that the lead in Stanley cups supposedly presents a "*safety* and

---

[2] Ms. Rydman has also appeared as a named plaintiff in other heavy metals litigation unsuccessfully brought by Plaintiffs' counsel. *See Rydman v. Champion Petfoods*, No. 2:18-cv-01578-JHC (W.D. Wash.).

[3] Laura Barbu, the sole New York Plaintiff, alleges that she bought a Stanley cup in March 2024—which is *after* she filed her original complaint in February 2024 alleging that lead is in Stanley cups. Compl. ¶ 4; *Barbu v. Pac. Mkt. Int'l LLC*, No. 2:24-cv-00258-TL (W.D. Wash. Feb. 24, 2024), Dkt. No. 1. This belies her allegation that she would not have bought the cup had she known it contained lead, and, because an individual who is aware of the allegedly undisclosed fact cannot sue for failure to disclose that alleged fact, provides an additional basis for dismissal from the Complaint of Ms. Barbu and the claims asserted under New York law. *See, e.g., Gordon v. Target Corp.*, 2022 WL 836773 (S.D.N.Y. Mar. 18, 2022).

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*health*-related concern." *Id.* ¶ 36 (emphasis added). They allege that lead—*in general*—is a "toxin that is unsafe in any amount and *can* cause lifelong harm. Particularly when it is touched, swallowed or inhaled, lead *can* cause severe developmental problems in children that lead to lifelong adverse health effects. . . . Lead is also unsafe for adults. It *can* cause high blood pressure, cardiovascular problems, and kidney damage." *Id.* ¶ 29 (emphasis added). Plaintiffs further claim, relying solely on a quoted news article, that "a child who fidgets with a broken cup faces 'a very possible and likely transference of microparticulate lead via normal hand-to-mouth behavior in young children." *Id.* ¶ 39.

In addition to the alleged nondisclosure about lead, the Complaint also alleges that Defendant made three affirmative statements about the Stanley cups: that Defendant (1) "touted using 'recycled stainless steel,'" (2) advertised its Stanley cups as "'BPA-free,'" *id.* ¶ 16; and (3) represented that its products "comply with 'strict guidelines, including but not limited to BPA/BPS, PFOS, and phthalate regulatory requirements.'" *Id.* ¶ 17. Puzzlingly, the Complaint asserts that "[s]uch representations led consumers (including Plaintiffs) to reasonably but mistakenly believe that PMI had disclosed all the materials that the Stanley cups contained." *Id.* ¶ 19.

**B.    The Allegations That Do Not Appear In The Complaint**

The allegations that are absent from the Complaint are striking and highly revealing. Most significantly, the Complaint contains *no factual allegations* showing that any Plaintiff or any other individual has *ever* been injured by lead in a Stanley cup, is *likely* to be injured by lead in a Stanley cup, or even that anyone *may* be injured by lead in a Stanley cup. Nor do Plaintiffs allege that any Plaintiff or any other individual has ever "touched, swallowed, or inhaled," *id.* ¶ 29, lead from a Stanley cup, is likely to "touch, swallow, or inhale" lead from a Stanley cup, or even that anyone may "touch, swallow, or inhale" lead from a Stanley cup. As detailed above, the Complaint does not even contain a single factual allegation that lead in Stanley cups causes any harm.

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 6

1    Nor does the Complaint contain any factual allegations showing that the mere fact that lead

2    in a Stanley cup may be "exposed" if the cup is damaged creates any risk of injury whatsoever.

3    This is not surprising, because, as Plaintiffs cannot dispute, "'[e]xposure' to lead—or just being

4    around it—is not dangerous. It must be ingested to poison a person." *Sherwin-Williams Co. v.*

5    *Gaines ex rel. Pollard*, 75 So. 3d 41, 43 (Miss. 2011); *see Bockrath v. Aldrich Chem. Co.*, 980

6    P.2d 398, 404 (Cal. 1999) (for a toxin to cause physical injury, it must have "entered [the] body"

7    and caused a "specific illness").

8        The Complaint also does not contain any allegations on the likelihood that the cup may be

9    damaged in a way that "exposes" the lead—although it does cite to a news article in which a

10   professor of medical toxicology stated that the cup "would have to be incredibly damaged" to

11   expose any lead, and that "this doesn't represent a realistic possibility." Compl. ¶ 39. Moreover,

12   none of the "experts" Plaintiffs cite even claim that Stanley cups present any meaningful risk to

13   consumers. To the contrary, a professor quoted in a news article referenced in the Complaint

14   assured consumers that "the risk of these cups is infinitesimally small."[4]

15       The Complaint also does not contain any allegation that the hypothetical "transference of

16   microparticulate lead" has ever occurred or is likely to ever occur, or that such "transference" of

17   an unspecified level of "microparticulate lead" is likely to cause physical harm or create a material

18   risk of physical harm. *Id.* (quotation marks omitted). It also does not disclose that the individual

19   quoted in the Complaint concerning this supposed "transference" is neither a physician nor a

20   professor with expertise in lead, and operates a website funded in part by Defendant's

21   competitors.[5]

22

23   [4] Compl. ¶ 39 (citing Julia Ries, *Stanley Cups Contain Lead – And So Do Other Reusable Cups. Here's the Truth
     About Their Safety*, HuffPost (Jan. 20, 2024) (quoting Dr. Andrew Monte, a professor of emergency medicine and

24   medical     toxicology    with    the    University    of    Colorado    Anschutz    Medical    Center),
     https://www.huffpost.com/entry/stanley-reusable-water-cup-lead_l_65b925abe4b01c5c3a383bfb).

25   [5] Daryl Austin, *Do Stanley Cups Contain Lead or Pose a Risk of Lead Poisoning? Experts Weigh in*, TODAY (Jan.

26   24,    2024),    https://www.today.com/health/news/stanley-cups-lead-rcna135513    ("Lead    poisoning    activist Tamara
     Rubin, aka Lead Safe Mama, first brought attention to the presence of lead in Stanley tumblers in March 2023. Rubin

1  The Complaint also does not allege that lead can come into contact with any liquid in the

2  cups, nor any drinking surface, and accordingly does not allege that any consumer risks harm by

3  drinking from the cup. Thus, the allegation that "[w]hen used as intended, [Stanley cups] touch

4  people's mouths and deliver liquid into their bodies," *id.* ¶ 27, is a red herring.

5  It is telling that although the Complaint lists no fewer than 27 "[q]uestions of law and fact

6  common to Plaintiffs and the Class," not a single one of those questions relates to whether or to

7  what extent the Stanley cups in fact pose "safety and health-related" risks to consumers. *Id.* ¶ 60.

8  Apparently, this is a topic that Plaintiffs would like to avoid, notwithstanding its centrality to their

9  lawsuit.

10  With respect to the alleged misleading statements, the Complaint contains no allegation

11  that any of Defendant's statements were in fact false. Thus, the Complaint does not allege that the

12  representation that Stanley cups are made with "recycled stainless steel" is false. *Id.* ¶ 16. It does

13  not allege that the representation that Stanley cups are "BPA-free" is false. *Id.* And it does not

14  allege that the representation that Stanley cups "comply with 'strict guidelines, including but not

15  limited to BPA/BPS, PFOS, and phthalate regulatory requirements'" is false. *Id.* ¶ 17. Nor does

16  the Complaint contain any allegations showing how these indisputably accurate statements could

17  be likely to deceive a reasonable consumer into thinking that "PMI had disclosed all the materials

18  that the Stanley cups contained." *Id.* ¶ 19.

19  With respect to the Plaintiffs, the absence of information is nearly total. There is no

20  allegation that any Plaintiff read any allegedly deceptive statement. There is no allegation that any

21  Plaintiff relied on any allegedly misleading statement in buying the product. Nor is there any

22  allegation that any Plaintiff read, or was even aware of, any warranty, much less that any warranty

23  formed any part of the basis of any Plaintiff's bargain. There is also no factual allegation that any

24  Plaintiff was in contractual privity with Defendant.

25

26  earns a commission on the products she recommends that are purchased through her website. Some of her
recommendations include competitors to Stanley.").

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 8

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

## C. Lead

Countless court decisions discuss lead. They make clear that lead "is an ubiquitous element. It is found in the land, in the sea, in plants, in animals, and, ultimately, in humans. Traces of lead ranging from 10 to 40 micrograms per 100 grams of blood (10-40 ug/100g) are found in everyone . . . ." *Ethyl Corp. v. EPA*, 541 F.2d 1, 8 (D.C. Cir. 1976) (footnote omitted). Moreover, "[*a*]*ll* . . . foods contain at least some tiny amount of heavy metals," including lead. *Weaver v. Champion Petfoods USA Inc.*, 2019 WL 2774139, at *3 (E.D. Wis. July 1, 2019) (emphasis in original). As stated in *Environmental Law Foundation v. Beech-Nut Nutrition Corp.*, "[a]ccording to the United States Food and Drug Administration (FDA), lead is present in small amounts throughout the environment due to its natural occurrence and its release into the environment by human activities. Lead in soil can be deposited on or absorbed by plants, including plants grown for food." 185 Cal. Rptr. 3d 189, 193 (Cal. Ct. App. 2015); *see also Paradowski v. Champion Petfoods USA, Inc.*, 2023 WL 3829559, at *3 (2d Cir. June 6, 2023) ("heavy metals [including lead] occur naturally in the environment and are prevalent in a wide variety of food products"). Lead also is in a wide variety of consumer products, such as lipstick. *See, e.g.*, *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010).

Court decisions regarding lead establish that the mere presence of lead in products—even in products that are ingested or applied to the skin—does not automatically render those products unsafe, and does not mean those products will cause harm. For example, in *Boysen v. Walgreen Co.*, the court explained that "the FDA has issued reports stating that the levels of lead and arsenic found in juice products such as defendant's are safe." 2012 WL 2953069, at *6 (N.D. Cal. July 19, 2012). In *Koronthaly v. L'Oreal USA*, the Third Circuit relied on a FDA report "finding that the lead levels in the Defendants' lipsticks were not dangerous." 374 F. App'x at 259.  In *In re Fruit Juice Products Marketing and Sales Practices Litigation*, the court relied on the FDA's determination that the levels of lead in defendant's packaged fruit products "would not pose an unacceptable risk to health." 831 F. Supp 2d 507, 509 (D. Mass. 2011) (quotation marks omitted).

The crucial difference, of course, between lead-containing products that people ingest or apply to their skin and Stanley cups is that Plaintiffs do not allege any lead in the cup can leach into the cup's contents or that any consumer has ever ingested lead from a Stanley cup or is even likely to.

### D.     The Claims Asserted And The Relief Sought

The Complaint purports to assert twelve claims. It asserts claims under Washington law for violation of the Washington Consumer Protection Act and the Washington Product Liability Act, breach of express and implied warranty, unjust enrichment, and "fraud by omission" (Counts 1-4, 11 and 12, respectively). Count Five asserts a violation of the Magnuson-Moss Warranty Act. Counts Six and Seven assert violations of California's Unfair Competition Law and Consumer Legal Remedies Act, respectively, and are asserted only "in the alternative" by the California Plaintiffs. Counts Eight and Nine assert violations of New York's Deceptive Acts and Practices Act and False Advertising Law, respectively, and are asserted only "in the alternative" by the New York Plaintiff. Count Ten asserts a violation of Nevada's Deceptive Trade Practices Act, and is asserted only "in the alternative" by the Nevada Plaintiff.

The Complaint seeks certification of a nationwide class of all buyers of Stanley cups and Washington, California, New York and Nevada subclasses. Compl. ¶ 52. The claims asserted under Washington law are asserted on behalf of the purported nationwide class.[6] The claims asserted under California, New York and Nevada law are asserted only on behalf of the respective state subclasses, and presumably (based on the statement that they were pleaded "in the alternative") will be pursued only if the Court denies certification of a nationwide class under Washington law. The class period for the nationwide class is alleged to be between June 1, 2016 and June 1, 2024, despite the fact that the longest applicable statute of limitations under the Washington law claims asserted is four years. *Id.*

---

[6] Concurrently with this motion, Defendant has filed a motion to strike the nationwide class allegations on the ground that applying a single state's law to the claims of consumers in 50 states violates Washington's choice-of-law rules and principles of federalism.

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 10

1      The Complaint seeks compensatory, statutory, treble, and punitive damages, based on

2  Defendant's alleged "deliberate concealment of its use of lead." *Id.* ¶ 51. It seeks a full refund of

3  "all amounts" paid by purported class members for Stanley cups, *id.*, which it alleges to exceed

4  750 million dollars. *Id.* ¶ 23. It also seeks injunctive relief in the form of a "corrective advertising

5  campaign" and an order mandating the elimination of lead in Defendant's manufacturing process.

6  *Id.* ¶ 185.

7                                          **ARGUMENT**

8  **I.      The Rule 12(b)(6) Standard**

9      To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual

10 allegations that, when accepted as true, state a claim that is plausible on its face. *Kwan v.*

11 *SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). A claim is plausible on its face only when

12 "the plaintiff pleads content that allows the court to draw the reasonable inference that the

13 defendant is liable for the misconduct alleged." *Id.* (quotation marks omitted). "[C]onclusory

14 allegations" are not "entitled to the assumption of truth" and must be disregarded. *Id.* (quotation

15 marks omitted). Nor does a complaint suffice if it tenders "'labels and conclusions, . . . a formulaic

16 recitation of the elements of a cause of action[,]' or 'naked assertion[s]' devoid of 'further factual

17 enhancement.'" *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014) (quoting

18 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). In keeping with these principles, a

19 "court considering a motion to dismiss can choose to begin by identifying pleadings that, because

20 they are no more than conclusions, are not entitled to the assumption of truth." *Kwan*, 854 F.3d at

21 1096 (quotation marks omitted).

22     In addition to the foregoing standards under Rule 8 of the Federal Rules of Civil Procedure,

23 an even more exacting standard applies when—as here—the complaint alleges common-law fraud

24 and/or deceptive conduct in violation of consumer protection statutes. Rule 9(b) of the Federal

25 Rules of Civil Procedure requires the plaintiff to "state with particularity the circumstances

26 constituting fraud. . . ," meaning "the complaint must 'identify the who, what, when, where, and

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 11

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 852 (9th Cir. 2024) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)). Moreover, where, as here, a "core component" of a plaintiff's fraud or deception theory is based on the assertion that the product at issue is "harmful," the particularity requirement also applies to the complaint's allegations concerning harm. *Id.* at 853 (affirming dismissal of false advertising case at pleading stage because plaintiff failed to allege specific facts showing the product in issue was harmful and instead offered only "speculative" and "general[ized]" allegations "largely unspecific to [defendant's] products").

## II.   The Complaint Fails To State Any Claim Upon Which Relief May Be Granted

### A.   The Complaint Fails To State A Claim For Violation Of The Washington Consumer Protection Act (Count 1)

The purported claim under the Washington Consumer Protection Act is based on "[f]ailing to disclose the material fact that the cups contained lead" and "[f]ailing to disclose to consumers that the cups could expose them to lead if damaged." Compl. ¶ 71. It is not based on any alleged false or deceptive affirmative representations.

To state a claim under the WCPA, "a plaintiff must prove five elements: (1) an unfair or deceptive act or practice that (2) affects trade or commerce and (3) impacts the public interest, and (4) the plaintiff sustained damage to business or property that was (5) caused by the unfair or deceptive act or practice." *Keodalah v. Allstate Ins. Co*., 449 P.3d 1040, 1047 (Wash. 2019).

"Where the alleged 'act' is a failure to disclose, the plaintiff must prove the omitted fact was *material*." *Lohr v. Nissan N. Am., Inc.*, 2022 WL 1449680, at *3 (W.D. Wash. May 9, 2022) (emphasis added) (citing *Young v. Toyota Motor Sales USA*, 472 P.3d 990, 995 (Wash. 2020)). A fact is material if "a reasonable person would attach importance to its existence in determining his or her action." *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1011 (9th Cir. 2010).

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 12

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Even assuming the truth of the Complaint's allegations, Plaintiffs have provided no basis for the Court to find that the alleged failure to disclose that Stanley cups contain lead, and the lead may be "exposed" if the cup is damaged, was material. The Complaint is devoid of any allegation that the lead in Stanley cups, whether "exposed" or not, causes physical harm to consumers. *See supra* pp. 1-4. And the mere conclusory allegation that lead, *in general*, is a "toxin that is unsafe in any amount," Compl. ¶ 29, is insufficient because it does not establish that any lead *in the product at issue* can cause harm. Courts routinely find similar allegations lacking—even in cases, unlike this one, where the lawsuit alleges that consumers have ingested the lead-containing product. In *Kimca v. Sprout Foods, Inc.,* for instance, plaintiffs alleged that "(1) the Baby Food products contain heavy metals [including lead] and (2) that elevated levels of heavy metals can be unsafe." 2022 WL 1213488, at *8 (D.N.J. Apr. 25, 2022). But the court held that plaintiffs "do not connect these two allegations by establishing that the levels of heavy metals *in the Baby Food Products* are unsafe. . . . Without this connection, Plaintiffs' allegations are simply speculation." *Id.* (emphasis added). Similarly, in *Boysen*, the court held that "Plaintiff has plead that arsenic and lead are harmful toxins, and that the products contain those toxins, but he does not expressly allege that the levels of lead and arsenic contained in defendant's juices are likely to cause physical harm." 2012 WL 2953069 at *7; *see also In re Fruit Juice Prods.*, 831 F. Supp. 2d at 511 ("Plaintiffs have made no allegations as to the amount of lead actually in Defendants' products, have not claimed that any particular amount in the products is dangerous, and have not alleged that any specific amount has caused actual injuries to any plaintiff."). If such allegations do not suffice in instances where consumers are alleged to have *actually ingested* lead, they certainly will not suffice here, where the Complaint lacks any allegation that any consumer has ingested lead from a Stanley cup or is likely to do so. In short, the bald assertion that lead is "unsafe" does not suffice.

With no factual allegations showing that lead *in Stanley cups* causes harm, there is no reason to believe that the alleged nondisclosure of lead would be clearly important to a reasonable person in deciding whether to buy a Stanley cup. *See Wilson v. ColourPop Cosmetics,  LLC*, 2023

WL 6787986, at *5 (N.D. Cal. Sept. 7, 2023) (in case alleging eyeshadow make-up products contained harmful ingredients that defendant failed to disclose, court held that "without a showing of actual harm related to the Products' use, the apparent need for disclosure is a moot proposition"). The Complaint accordingly provides no basis for a reasonable factfinder to determine, assuming the truth of the factual allegations, that the alleged nondisclosure was material. And the absence of any factual allegations regarding the materiality of the alleged nondisclosure mandates dismissal of the claim.

The cases cited in the preceding paragraphs stand for the common-sense proposition that simply alleging that some unspecified amount of lead is in a product, even a product that (unlike here) consumers ingest, is insufficient to permit a plaintiff to advance beyond the pleading stage and into discovery. If the law were otherwise, every farmer in the country would be subject to crushing litigation, because lead is present at some level in all food. *See supra* p. 9. All it would take to proceed past the pleading stage would be the allegations that lead is in the food grown and sold by the farmer, lead is harmful, and the farmer did not disclose its presence. Stripped to its essence, that is all the Complaint alleges here: lead is in Stanley cups, lead is harmful, and Defendant did not disclose the presence of lead in the cups. The difference between the two scenarios, of course, is that the lead in the farmer's food is certain to be ingested by consumers, whereas the Complaint is devoid of any allegation that a single consumer has ever ingested any lead from a Stanley cup or is likely to. That is fundamentally insufficient to unlock the door to discovery. *See, e.g.*, *Weaver*, 2019 WL 2774139, at *3 (if the mere presence of lead in food could support a consumer protection claim, "[n]o one would sell foodstuffs" because they would be "quickly slapped" with lawsuits; such a result is "preposterous").

The WCPA claim also fails under Rule 9(b). Just as in the Ninth Circuit's recent *Davidson* opinion, the Complaint's "allegations regarding harm are largely unspecific to [defendant's] products." 106 F.4th at 853. The Complaint only alleges that lead *in general* is a "toxin that is unsafe in any amount and can cause lifelong harm," Compl. ¶ 29—just as in *Davidson*, the "harm-

related allegations offer[ed] explanations for how [the product] *in general* may be unhealthy for children. . . ." *Id.* (emphasis added). And, as in *Davidson*, "plaintiffs never actually alleged that [defendant's] products cause any of these harms." *Id.* As a result, Plaintiffs have "failed to allege fraud with particularity as required by Rule 9(b)." *Id.*

Moreover, even the Complaint's allegation regarding lead in general—that "lead is a toxin that is unsafe in any amount," Compl. ¶ 29,—is conclusory. No factual allegations support this statement. Particularly in light of *Davidson's* requirement that harm be alleged with particularity in cases involving deceptive conduct, this allegation must therefore be disregarded. *See, e.g.*, *Stroble v. Walmart*, 2024 WL 1612240, at *1 (9th Cir. Apr. 15, 2024) ("Without [supporting] factual allegations, [plaintiff's] assertion that the flooring was unreasonably dangerous is a legal conclusion that is not entitled to the presumption of truth."); *Balistreri v. McCormick & Co.*, 2023 WL 5988600, at *11 (N.D. Cal. Sept. 13, 2023) ("The Court further finds Plaintiffs' assertion that any product containing Heavy Metals is unsafe for human consumption to be a conclusory statement unsupported by facts alleged in the Complaint."); *Leppert v. Champion Petfoods USA Inc.*, 2019 WL 216616, at *6 (N.D. Ill. Jan. 16, 2019) ("Plaintiffs' allegations that the mere presence of heavy metals and BPA in the Orijen and Acana brands [of cat food] renders these products 'unsafe' is mere speculation.").

**B.   The Complaint Fails To State A Claim Under The Washington Product Liability Act (Count 2)**

Plaintiffs' purported claim under the Washington Product Liability Act asserts that Stanley cups "were defective regarding their manufacture and design" because the cups were "not reasonably safe for their intended use." Compl. ¶ 82. This fails for the same reason the WCPA claim fails: the Complaint lacks any factual allegations showing the cups were "not reasonably safe for their intended use." Instead, this allegation is a classic legal conclusion—a "formulaic recitation" of the key element of a product liability claim. It must accordingly be disregarded. *See supra* p. 11; *see also Staub v. Zimmer, Inc.*, 2017 WL 2506166, at *3 (W.D. Wash. June 9, 2017)

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 15

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   (dismissing plaintiff's design defect claim based on "the conclusory allegation that [defendant]

2   designed, manufactured, marketed, and sold a product that was not reasonably safe" (quotation

3   marks omitted)); *Mesecher v. Lowes Cos.*, 2018 WL 793613, at *4 (E.D. Wash. Feb. 8, 2018)

4   (dismissing products liability claim where plaintiffs "allege[d] merely that the [product] they

5   purchased and used was 'not reasonably safe as designed'").

6         Plaintiffs' product liability claim fails for the additional and independent reason that an

7   essential element of a claim under the Washington Product Liability Act is proof of "harm" caused

8   by the product. RCW 7.72.010(4) (a "'[p]roduct liability claim' includes any claim or action

9   brought *for harm caused by* . . . the relevant product" (emphasis added)). Under the Act, "harm"

10  does not encompass purely economic damages. RCW 7.72.010(6) (excluding "direct or

11  consequential economic loss" from the definition of "harm"); *see also Wash. Water Power Co. v.

12  Graybar Elec. Co.*, 774 P.2d 1199, 1211 (Wash. 1989) (WPLA "provides no remedy for 'economic

13  loss'"). Yet Plaintiffs here seek *only* economic damages, and do not allege any physical injuries.

14  Compl. ¶¶ 3-9, 51, 185. They accordingly have incurred no "harm" under the Act, and therefore

15  have no claim.

16  **C.    The Complaint Fails To State A Claim For Breach Of Express Warranty
        Under Washington Law (Count 3)**

17

18        Plaintiffs claim that Defendant breached an express warranty that "the Stanley cups are

    safe and durable." Compl. ¶ 91. This claim fails for multiple independent reasons.

19

20        First, the Washington Supreme Court has repeatedly held that "[r]ecovery for breach of an

    express warranty is contingent on a plaintiff's knowledge of the representation." *Touchet Valley*

21  *Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc.*, 831 P.2d 724, 731 (Wash. 1992); *see also*

22  *Baughn v. Honda Motor Co., Ltd.*, 727 P.2d 655, 669 (Wash. 1986) (to recover for breach of

23  express warranty, the plaintiff "must at least be aware of such representations"). Plaintiffs do not

24  allege awareness of any express warranty. The Complaint accordingly fails to state a claim for

25  breach of express warranty.

26

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 16

Second, the claim fails because the Complaint alleges no facts showing that Stanley cups are *not* "safe and durable." As shown above, there is no factual allegation in the Complaint that the lead in Stanley cups causes physical injury, or that the cups are not "durable." Plaintiffs have accordingly failed to allege any facts showing that Defendant breached any purported "safe and durable" warranty.

Third, the Complaint alleges no facts showing that Defendant ever made the alleged express warranty. The only warranty that appears in the Complaint is set forth at paragraph 15, which quotes from a Stanley package insert. That insert, as it appears in the Complaint, states only that "Stanley products are warranted to be *free from any defect in workmanship or materials* and to be thermally efficient provided used according to the instructions." (emphasis added).

In *Afoa v. China Airlines Ltd.*, the plaintiff alleged that defendant "expressly warranted" that its product was "of good workmanship and is free from mechanical defects." 2013 WL 3354388, at *3 (W.D. Wash. July 3, 2013). The court held this allegation was insufficient, and dismissed the express warranty claim, because the complaint did "not quote any specific representation, describe where or when the representation was made, or describe how Plaintiff knew of such representation or relied thereon." *Id.* For precisely the same reasons, the purported "safe and durable" express warranty claim fails in this case. *See also Rydman v. Champion Petfoods USA, Inc.*, 2023 WL 3506133, at *9 (W.D. Wash. May 17, 2023) ("Plaintiff's claim for breach of express warranty lacks merit because Champion's packaging made no promise or guarantee that the Dog Food was '100%' fresh, regional, or free of heavy metals.").

To the extent the express warranty claim relies on the "free from any defect in workmanship or materials" warranty quoted in paragraph 15, it fails because the Complaint alleges no facts showing that Stanley cups *have* any "defect in workmanship or materials." The basis for the assertion that Defendant breached the "free from any defect in workmanship or materials" warranty is that the Stanley cups are allegedly "unsafe for consumption and contain lead." Compl. ¶ 94. But that allegation fails because no facts in the Complaint show that Stanley cups are not safe

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 17

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

for consumption. There is no allegation that any lead from the sealing pellet at the base of the cup could possibly leach into the fluid in the cup. The Complaint accordingly provides no factual allegations upon which the Court could conclude that Stanley cups are unsafe for drinking. And without any factual allegations that establish this, there is no basis for a determination that the "free from any defect in workmanship or materials" warranty is breached merely because Stanley cups contain lead.

Moreover, a warranty that a product is "free from any defect in workmanship or materials" is not a guarantee that the product is "safe." Many products are unsafe but can nonetheless be free from defects in workmanship or materials. Knives, swimming pools, and motorcycles come to mind.

### D. The Complaint Fails To State A Claim For Breach of the Implied Warranty Of Merchantability Under Washington Law (Count 4)

The claim for breach of the implied warranty of merchantability asserts that Defendant "implicitly warranted" that Stanley cups were "of merchantable quality, were fit for their ordinary use, and conformed to the promises made on PMI's websites and in its advertisements." Compl. ¶ 101. Plaintiffs allege that Defendant breached this warranty because the cups are (1) not "fit for their ordinary use (drinking liquids)" and (2) "did not conform to PMI's representations because they contained lead, a toxin, and failed to conform to their packaging and labeling." *Id.* ¶ 102. This claim fails for two reasons.

First, the claim fails because under settled Washington law, an implied warranty claim requires privity of contract between the plaintiff and the defendant. *Tex Enters., Inc. v. Brockway Standard, Inc.*, 66 P.3d 625, 626 (Wash. 2003). No Plaintiff alleges that she bought a cup from Defendant, and in fact each affirmatively alleges that she bought her cup from a third-party retailer. Compl. ¶¶ 3-8. The absence of privity requires dismissal of the claim.

The privity requirement may not bar an implied warranty claim *if* the plaintiff can show she is an intended third-party beneficiary of an implied warranty between the defendant and a third

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 18

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    party. *Lohr v. Nissan N. Am., Inc.*, 2017 WL 1037555, at *7 (W.D. Wash. Mar. 17, 2017). But

2    Plaintiffs' formulaic recitation that they are "intended beneficiaries," Compl. ¶ 106, of implied

3    warranties between Defendant and retailers is conclusory and must therefore be disregarded. To

4    come within this exception, a plaintiff must allege *facts* showing that the manufacturer "knew a

5    purchaser's identity, knew the purchaser's purpose for purchasing the manufacturer's product,

6    knew a purchaser's requirements for the product, delivered the product, and/or attempted repairs

7    of the product in question." *Lohr*, 2017 WL 1037555, at *7 (plaintiffs' allegations that they were

8    "third-party beneficiaries of contracts between [defendant] Nissan and its dealers" held insufficient

9    (quotation marks omitted)). The Complaint is devoid of any such allegations, and Plaintiffs

10   accordingly do not fall within the third-part beneficiary exception.

11          Second, the Complaint lacks any allegations showing that the cups are *not* "fit for their

12   ordinary use (drinking liquids)." Compl. ¶ 102. It does not allege that it is unsafe to drink from the

13   cups or that the cups cause harm. Nor does the Complaint contain any allegations showing the

14   cups "did not conform to PMI's representations and warranties because they contained lead," *Id.*

15   ¶ 103, in light of the fact that the Complaint identifies no instance where Defendant stated that the

16   cups did *not* contain lead. *See Thompson v. E. Pac. Enters., Inc.*, 2003 WL 352914, at *4-5 (Wash.

17   Ct. App. 2003) (dismissing a claim for breach of implied warranty of merchantability for restaurant

18   dish containing peanut residue, despite fact that a substantial portion of the population is allergic

19   to peanut residue; court held that the inclusion of peanuts in a product does not make that product

20   "unfit for ordinary purposes"); *Jet Boats, Inc. v. Puget Sound Nat'l Bank*, 721 P.2d 18, 25 (Wash.

21   Ct. App. 1986) (implied warranty claim fails because "[a]lthough the boat had numerous defects

22   when [Plaintiff] took possession . . . the boat was generally of a quality to be considered

23   merchantable").

24          "Merchantability is a very low standard," and is satisfied so long as the product "provides

25   for a minimum level of quality." *Balistreri*, 2023 WL 5988600, at *10-11 (quotation marks

26   omitted). In *Balistreri*, the plaintiff alleged that defendant McCormick's herbs and spices

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 19

contained lead, and asserted a claim for breach of the implied warranty of merchantability on the ground that the products were unsafe for human consumption, and accordingly unfit for their ordinary use. The court dismissed the claim at the pleading stage because plaintiffs had failed to allege facts showing that the products "contained a level of Heavy Metals rendering the products unfit for human consumption." *Id.* at *11. It held that plaintiffs "failed to show how the Products failed to meet the minimum level of quality for herbs and spices." *Id.* The same result is warranted here.

### E.   The Complaint Fails To State A Claim Under The Magnuson-Moss Warranty Act (Count 5)

A claim for a violation of the Magnuson-Moss Warranty Act "stand[s] or fall[s] with [Plaintiffs'] express and implied warranty claims under state law." *E.g., Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008); *Coe v. Philips Oral Healthcare Inc.*, 2014 WL 722501, at *9 (W.D. Wash. Feb. 24, 2014) (dismissing Magnuson-Moss claim because plaintiffs failed to allege viable claims under state law for breach of express or implied warranty); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 524-25 (7th Cir. 2003) (to bring a Magnuson-Moss claim, a plaintiff must be "*entitled under state law*" to enforce a warranty claim (emphasis in original)). Because Plaintiffs have failed to state a claim for breach of express or implied warranty, their Magnuson-Moss claim fails as well.

The Magnuson-Moss claim fails for the additional and independent reason that Plaintiffs have failed to satisfy the jurisdictional requirements to assert such a claim. Under the Act, a purported class action must include at least 100 named plaintiffs. 15 U.S.C. § 2310(d)(3). Because only six named Plaintiffs have filed suit, they may not assert a purported class action under the Act. *See Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034 (9th Cir. 2020) ("The text is clear that a requirement for an MMWA class action in federal court is at least one hundred named plaintiffs.").

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 20

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**F.      The Complaint Fails To State A Claim Under California's Unfair Competition Law (Count 6)**

The sixth cause of action purport to assert claims under the "fraudulent," "unfair" and "unlawful" prongs of California's Unfair Competition Law. These claims are based on the same alleged underlying conduct: Defendant's alleged nondisclosure of lead in Stanley cups and alleged deceptive statements. They fail to state any claim.

**1.      Plaintiffs Have No Claim Under Any UCL Prong For Any Affirmative Statements**

Plaintiffs' UCL claim based on supposedly deceptive statements fails because nothing in the Complaint shows that any Plaintiff had any awareness whatsoever of any affirmative statement made by Defendant. There is no allegation that any Plaintiff ever viewed any of these statements, much less relied on them in deciding to buy a Stanley cup. Because causation or reliance is an essential element of any UCL claim, these purported claims cannot stand. *See* Cal. Bus. Code § 17204 (private plaintiff must have suffered injury "as a result of" a UCL violation); *see Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 887-88 (Cal. 2011) (reliance is essential element of a UCL claim based on alleged deceptive statements).

The claim based on affirmative statements also fails under Rule 9(b) because it does not "identify the who, what, when, where, and how of the misconduct charged." *Davidson*, 106 F.4th at 852 (quotation marks omitted); *see also Herrington v. Johnson & Johnson Consumer Cos.*, 2010 WL 3448531, at *11 (N.D. Cal. Sept. 1, 2010) (to satisfy 9(b), plaintiffs "must plead . . . the circumstances in which they were exposed to the alleged misrepresentations upon which they relied").

This claim fails for the additional and independent reason that the Complaint does not allege that *any* of the statements in issue are false. *See supra* p. 8. Thus, the Complaint does not allege the statements that the cups are made with "recycled stainless steel" and are "BPA-free" are false. Compl. ¶ 16. Notwithstanding the absence of any allegation of falsity, Plaintiffs nonetheless insist these statements are "misleading" because they "led consumers . . . to reasonably but

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 21

mistakenly believe that PMI had disclosed all the materials that the Stanley cups contained." *Id.* ¶ 19. This is nonsensical. Plaintiffs proffer no factual allegations showing that a reasonable consumer, or anyone else, would construe the alleged statements in this manner. Especially in light of Plaintiffs' obligation to plead fraud-based claims with particularity, *see supra* pp. 11-12, the conclusory allegation that Defendant's statements "led consumers . . . to . . . believe" that "PMI had disclosed all materials in the cups," Compl. ¶ 19, cannot be credited. *Rubenstein v. Gap, Inc.*, 222 Cal. Rptr. 3d 397, 404-05 (Cal. Ct. App. 2017) (in false advertising cases under the UCL, allegations about what consumers believe must be supported by factual allegations showing what consumers believe).

### 2.      Plaintiffs Have No Claim Under Any UCL Prong For Alleged Nondisclosure

Under the Ninth Circuit's decision in *Hodsdon v. Mars, Inc.*, while "omissions may be the basis of claims under California consumer protection laws . . . 'to be actionable the omission must be contrary to a representation actually made by the defendant, or *an omission of a fact the defendant was obliged to disclose.*'" 891 F.3d 857, 861 (9th Cir. 2018) (emphasis in original) (quoting *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 126 (Cal. Ct. App. 2006)). Because Plaintiffs have alleged no facts showing that the nondisclosure of lead in Stanley cups was contrary to a representation made by Defendant, the Complaint must allege facts showing that Defendant was "obliged to disclose" the presence of lead in the cups.

To establish that Defendant was "obliged to disclose" a fact in cases of allegedly defective products, Plaintiffs must allege facts showing either that "(1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, 'central to the product's function,' and the plaintiff alleges one of the four *LiMandri* factors." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022); *see also Hodsdon*, 891 F.3d at 864. A *LiMandri* factor is satisfied when the defendant (1) is the plaintiff's fiduciary; (2) has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) actively conceals a material fact from the

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 22

**K&L GATES LLP**
**925 FOURTH AVENUE, SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

1   plaintiff; or (4) makes partial representations that are misleading because some other material fact

2   has not been disclosed. *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1033 (N.D. Cal. 2014)

3   (citing *Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588, 593 (Cal. Ct. App. 2011)). Plaintiffs have

4   not alleged facts showing a duty to disclose under this test.

5       First, Plaintiffs cannot base any duty to disclose based on an "unreasonable safety hazard."

6   The Complaint here alleges no facts showing that Stanley cups pose any safety hazard, much less

7   an unreasonable one. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028 (9th Cir. 2017) (the

8   alleged "unreasonable safety hazard must describe more than merely 'conjectural and hypothetical

9   injuries'" (quoting *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009)); *see supra* p. 11.

10  This eliminates Plaintiffs' ability to allege a duty to disclose under the first option noted above.

11      Absent allegations showing that the product presents an unreasonable safety hazard, to

12  allege a duty to disclose Plaintiffs must show that "the defect is material, 'central to the product's

13  function,'" and satisfies one of the four *LiMandri* factors." *Hammerling*, 615 F. Supp. 3d at 1085.

14  Plaintiffs cannot satisfy any of these requirements, much less all three.

15      With respect to materiality of the defect, the Complaint alleges no such facts. *See supra*

16  pp. 13-14. With no allegation that the lead in Stanley cups has ever caused physical harm to

17  anyone, and no allegation that it is likely to do so, no good-faith argument may be made that the

18  alleged defect is "material."

19      With respect to the "central function" prong, Plaintiffs must plead facts showing that the

20  product is "incapable of use by any consumer." *Hodsdon*, 891 F.3d at 864*; In re Plum Baby Food

21  Litig.*, 2024 WL 1354447, at *6 (N.D. Cal. Mar. 28, 2024) (same). The Complaint alleges no such

22  facts. It does not even allege that any Plaintiff, much less any consumer, is incapable of drinking

23  from Stanley cups. Nor does it allege that any individual can ingest lead from drinking from the

24  cups. Because drinking from the cups is indisputably their central function, Plaintiffs cannot satisfy

25  the "central function" prong. *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, 2024 WL 1643696, at

26  *10 (N.D. Cal. Apr. 16, 2024) ("The alleged presence of cadmium notwithstanding, Plaintiff has

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 23

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

not plausibly pled that the Products have ceased to function as a food, or even more specifically as flaxseed.").

With respect to the *LiMandri* factors, Plaintiffs cannot satisfy any of the four factors. They cannot satisfy the first factor because they do not allege that Defendant is Plaintiffs' fiduciary, nor can they. They cannot satisfy the second factor because they do not allege that Defendant had "exclusive knowledge of material facts not known or reasonably accessible to the plaintiff"— indeed, the Complaint admits that reports of lead in Stanley cups "went viral on social media" *before* Defendant is alleged to have disclosed its use of lead. Compl. ¶ 24; *see also Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703, at *8 (C.D. Cal. Jan. 23, 2012) ("As Plaintiffs purchased their Prius Hybrids more than two years after this information was disseminated, Plaintiffs cannot show that Toyota possessed 'exclusive' knowledge of these facts at the time of purchase."), *aff'd*, 554 F. App'x 608 (9th Cir. Feb. 5, 2014); *see also Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1175 (E.D. Cal. 2013) (concluding that defendant did not have exclusive knowledge after a published study had been available for nine months). They cannot satisfy the third factor (active concealment) because, to do so, they must identify specific facts showing that Defendant was "concealing or covering up the matters complained of," and they allege no such facts. *Herron*, 924 F. Supp. 2d at 1176. Instead, Plaintiffs simply assert the conclusion that Defendant "actively concealed its use of lead," Compl. ¶ 178. This is no more than a "formulaic recitation" of the *LiMandri* element, and accordingly fails to satisfy both Rules 8 and 9(b). *See, e.g.*, *Milman v. FCA U.S., LLC*, 2019 WL 3334612, at *6 (C.D. Cal. Apr. 15, 2019) ("this conclusory allegation of concealment is unsupported by facts and insufficient to state a claim for fraudulent active concealment"); *Kingston v. FCA US LLC*, 2019 WL 7753446, at *5 (C.D. Cal. Dec. 10, 2019) ("Plaintiffs' FAC alleges in conclusory fashion that FCA 'actively concealed' the fuel filler neck defect by instituting an expanded warranty 'without making it public.' The act of not making information public does not equate to actively trying to suppress it."). Finally, the Complaint does not satisfy the fourth factor because it alleges no facts showing that Defendant made "partial

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 24

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1  representations that are misleading because some other material fact has not been disclosed." *See*

2  *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1019 (N.D. Cal. 2020) (holding that a plaintiff must

3  plead that they relied on an affirmative representation to allege a partial representation).

4        There is yet another independent reason Plaintiffs have not alleged a duty to disclose under

5  the UCL: they must allege facts showing that the omission was *material*. *Hodsdon*, 891 F.3d at

6  862. For the reasons already stated, *see supra* pp. 13-14, the Complaint does not allege facts

7  showing that the alleged nondisclosure would be important to a reasonable consumer, and

8  accordingly does not establish that the nondisclosure was material.

9        For these reasons, the Complaint fails to show that Defendant had any duty to disclose lead

10  in Stanley cups. Accordingly, no omission-based claim is viable under the UCL.[7]

11      **G.**    **The Complaint Fails To State A Claim Under California's Consumer Legal Remedies Act (Count 7)**

12        The CLRA claim is based on the same alleged nondisclosures and affirmative statements

13  as the UCL claim. CLRA claims are judged by the same standards as claims under the fraudulent

14  prong of the UCL. *In re Plum Baby Food Litig.*, 2024 WL 1354447, at *4. Plaintiffs' failure to

15  state a claim under the UCL's fraudulent prong thus forecloses any claim under the CLRA.

16

17

18

---

19  [7] To the extent Plaintiffs may argue that, while the lack of a duty to disclose may foreclose their claim under the UCL's
20  fraudulent prong, but does not foreclose their claim under the unfair prong, they are wrong. As the Court held in *In re
Plum Baby Food Litigation*, "where conduct that comprises the UCL fraudulent or unlawful prongs is the same
21  conduct as the unfair prong, 'the unfair prong of the UCL cannot survive if the claims under the other two prongs of
the UCL do not survive.'" 2024 WL 1354447, at *7 (quoting *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074,
22  1104–05 (N.D. Cal. 2017)). Here, the conduct on which Plaintiffs' unfair and fraudulent prongs is based is
identical. Moreover, Plaintiffs' assertion that Defendant's nondisclosure amounts to an unfair business practice
23  depends on their assertion that the conduct was "immoral, unethical, unscrupulous, or substantially injurious to
consumers." Compl. ¶ 123. But in *Hodsdon*, the Ninth Circuit expressly held that if there is no duty to disclose
24  information (as Defendant showed above), then the failure to disclose such information is not, as a matter of law,
"substantially injurious, immoral, or unethical." *Hodsdon*, 891 F.3d at 867. In any event, the Complaint alleges no
25  facts showing that the alleged nondisclosure was any of these things. Instead, the Complaint just parrots this language
in a conclusory manner. In fact, there is nothing "immoral, unethical, unscrupulous or substantially injurious" about
26  not disclosing the presence of lead in the cups when there is no reason to believe that the cups pose any material health
risk.

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**H.**     **The Complaint Fails To State A Claim Under New York's Consumer Protection Statutes (Counts 8 and 9)**

The claims under New York law (General Business Laws 349 and 350) are based on the same alleged nondisclosures and affirmative statements as the claims under California law. Courts merge analysis of claims under 349 and 350). *Housey v. Procter & Gamble Co.*, 2022 WL 17844403, at *1 (2d Cir. Dec. 22, 2022). Plaintiffs' claims under these statutes fail.

To the extent the claims are based on allegedly deceptive statements, the Complaint does not identify a single false statement made by Defendant, and it alleges no facts showing that these true statements were misleading. *See supra* pp. 1-4. Any claim based on affirmative statements fails for the additional reason that the Complaint alleges no facts showing that Plaintiffs relied on any statement by Defendant in deciding to buy the product, as required by New York law. *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 706 (S.D.N.Y. 2019) (plaintiff "must show that the defendant's material deceptive [or misleading] act caused the injury" (quotation marks omitted)). Such claims also fail under Rule 9(b). *See supra* pp. 21-22.

To the extent the claims are based on the alleged nondisclosure of lead, they fail for two reasons. First, to be actionable under New York law, a nondisclosure must be material. *Herceg v. Chobani, LLC*, 2023 WL 6162939, at *4 (S.D.N.Y. Sept. 21, 2023)*; Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 148 (S.D.N.Y. 2022) (plaintiff must show that the challenged act was "misleading in a material way" (quotation marks omitted)). Defendant's alleged nondisclosure was not. *See supra* pp. 13-14. Second, under New York law, omissions are only actionable "where the business *alone* possesses material information that is relevant to the consumer and fails to provide this information." *Herceg*, 2023 WL 6162939, at *7 (emphasis added) (quotation marks omitted). There is no allegation in the Complaint that Defendant had exclusive knowledge of lead in Stanley cups, nor could there be, given the Complaint's admission that the issue "went viral on social media" before Defendant is alleged to have publicly disclosed the presence of lead in the cups.

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 26

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Compl. ¶ 24; *see also supra* pp. 7-8 n.5 ("Lead Safe Mama" publicly disclosed lead in Stanley cups in March 2023).

The New York claims also fail for the additional and independent reason that injury is an essential element of a claim under these statutes, and Plaintiffs fail to allege facts showing any injury. *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (dismissing claims because "Plaintiff also failed to adequately plead injury, the third element of his claims under Sections 349 and 350"). The Complaint asserts that Plaintiffs were injured because they (1) paid for products they would not have bought but for Defendant's alleged conduct, and (2) they paid a premium for the products. Compl. ¶ 145. But "[c]ourts applying New York law have routinely held that the loss of the purchase price of an item, standing alone, does not constitute an 'actual injury'" under these statutes. *Borenkoff v. Buff. Wild Wings, Inc.*, 2018 WL 502680, at *4 (S.D.N.Y. Jan. 19, 2018). As for the allegation that Plaintiffs paid a premium, it is purely conclusory and does not pass muster on a motion to dismiss. As the court stated in *Colella v. Atkins Nutritionals, Inc.*, a "well pleaded allegation that a plaintiff paid a premium may be sufficient to allege injury, however, plaintiff only conclusorily asserts that Atkins Nutritionals charges a premium for its products and provides no facts regarding what the premium was, what price he paid for the products, or the price of non-premium products. . . . As such, plaintiff's conclusory allegations are insufficient to identify a cognizable injury." 348 F. Supp. 3d at 143. The Complaint here lacks all the information that was missing in *Colella*. It accordingly fails to state a claim under New York's consumer protection statutes.

## I.      The Complaint Fails To State A Claim Under Nevada's Consumer Protection Statute (Count 10)

Plaintiffs' purported claim under Nevada's Deceptive Trade Practices Act, NRS 598.0901, is based exclusively on Defendant's allegedly deceptive statements, and is not based on any alleged nondisclosure. For the reasons already discussed, the Complaint does not allege that any

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 27

representation made by Defendant is false, and does not allege any facts showing how these indisputably true statements are misleading.

The Nevada claim fails for the additional and independent reason that it does not allege that any Plaintiff was aware of any of these statements or relied on such statements, and thus fails to plead reliance, which is an essential element of a claim under Nevada's law. *Guerra v. Dematic Corp.*, 2020 WL 5995496, at *2 (D. Nev. Oct. 8, 2020) (recognizing NDTPA "causation element includes reliance"); *Motogolf.com, LLC v. Top Shelf Golf, LLC*, 528 F. Supp. 3d 1168, 1178-79 (D. Nev. Mar. 25, 2021) (same).

Finally, the Nevada claim fails under Rule 9(b). *See supra* p. 22.

**J.      The Complaint Fails To State A Claim For Unjust Enrichment (Count 11)**

To plead a claim for unjust enrichment under Washington law, a plaintiff must establish: "[(1)] a benefit conferred upon the defendant by the plaintiff; [(2)] an appreciation or knowledge by the defendant of the benefit; and [(3)] the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008) (quoting *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 810 P.2d 12, 18 (Wash. Ct. App. 1991)). The Complaint fails to satisfy at least the last two of these requirements. It does not allege "appreciation or knowledge of the benefit" by Defendant. *Water & Sanitation Health, Inc. v. Chiquita Brands Int'l, Inc.*, 2014 WL 2154381, at *2 (W.D. Wash. May 22, 2014) ("plaintiff has not plausibly alleged any facts demonstrating that [defendant] had an appreciation or knowledge of the revenue from plaintiff's purchase"). And it does not allege circumstances that would make it inequitable for Defendant to retain any benefit, because without any actionable omission or deceptive statement, there has been no inequitable conduct. *See supra* Sections II.F-II.I, *see also Balistreri*, 2023 WL 5988600, at *13 (dismissing unjust enrichment claim under Washington law because "Plaintiffs have failed to plead an actionable omission or misrepresentation").

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 28

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

To the extent Plaintiffs attempt to assert unjust enrichment claims under California, Nevada, and New York law, such attempts fail for the same reason. *See, e.g.*, *UFCW Loc. 1500 Pension Fund v. Mayer*, 2016 WL 6122458, at *12 (N.D. Cal. Oct. 19, 2016), *aff'd*, 895 F.3d 695 (9th Cir. 2018) (dismissing unjust enrichment claims under California law for failure to allege that conduct violated "fundamental principles of justice or equity and conscience"); *Sunrise Hosp. & Med. Ctr., LLC v. Ariz. Physicians IPA, Inc.*, 2018 WL 3419250, at *3 (D. Nev. July 13, 2018) (factual allegations of inequitable conduct required for unjust enrichment claim under Nevada law); *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) ("To prevail on a claim for unjust enrichment in New York, a plaintiff must establish . . . that 'equity and good conscience' require restitution."). The unjust enrichment claim fails under New York law for the additional reason that "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).

### K.    The Complaint Fails To State A Claim For Fraudulent Omission (Count 12)

Plaintiffs' final purported claim is for common-law fraudulent omission under Washington law. Like the other fraud-based claims in the Complaint, such a claim requires proof that the omission was material. *E.g.*, *J.C. v. Soc'y of Jesus*, 457 F. Supp. 2d 1201, 1203 (W.D. Wash. 2006)*.* As Defendant showed above, there are no factual allegations in the Complaint that would permit the Court to find that, assuming the truth of the allegations, the nondisclosure of lead in Stanley cups would be material to a reasonable consumer. *See supra* pp. 13-14. As a result, Plaintiffs have failed to state a claim for fraudulent omission.

The fraudulent omission claim also fails to satisfy the particularity requirement of Rule 9(b). *See, e.g.*, *Krakauer v. Recreational Equip., Inc.*, 2024 WL 1494489, at *9-12 (W.D. Wash. Mar. 29, 2024) (dismissing fraudulent omission claims for failure to meet Rule 9(b) standard); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 2005 WL 2207037, at *2 (W.D. Wash. Aug. 29, 2005) (dismissing fraudulent omission claims for failure to "identify with specificity the

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 29

**K&L GATES LLP**
**925 FOURTH AVENUE, SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

precise misrepresentations or omissions made, the time, place, and manner in which they were made, and the persons to whom they were made"); *Wessa v. Watermark Paddlesports, Inc.*, 2006 WL 1418906 (W.D. Wash. May 22, 2006) ("Plaintiffs' allegations addressing the failure to disclose . . . do not meet the heightened pleading requirements of Rule 9(b)."); *Velicer v. Falconhead Cap., LLC*, 2020 WL 1182962, at *7-10 (W.D. Wash. Mar. 11, 2020) (dismissing fraudulent omission claims for failure to adequately plead under Rule 9(b)).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its motion and dismiss the Complaint with prejudice.

DATED July 31, 2024

Respectfully submitted,

K&L GATES LLP

By:  */s/ Pallavi Mehta Wahi*
Pallavi Mehta Wahi, WSBA No. 32799
pallavi.wahi@klgates.com
Ashley E.M. Gammell, WSBA No. 50123
ashley.gammell@klgates.com
Tyler K. Lichter, WSBA No. 51090
tyler.lichter@klgates.com
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Telephone: 206.623.7580
Facsimile: 206.623.7022

*Attorneys for Defendant Pacific Market International, LLC*

ARNOLD & PORTER KAYE SCHOLER LLP

James F. Speyer (*pro hac vice*)
E. Alex Beroukhim (*pro hac vice*)
james.speyer@arnoldporter.com
alex.beroukhim@arnoldporter.com
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: 213.243.4000
Facsimile: 213.243.4199

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 30

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Elie Salamon (*pro hac vice*)
elie.salamon@arnoldporter.com
250 West 55th Street
New York, NY 10019-9710
Telephone: 212.836.8000
Facsimile: 212.836.8969

*Attorneys for Defendant Pacific Market International, LLC*

I certify that this memorandum contains 10,134 words, in compliance with the Court's Order (Dkt. No. 50) granting motion for leave to file over-length briefs.

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 31

**K&L GATES LLP**
**925 FOURTH AVENUE, SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

1

**CERTIFICATION OF CONFERRAL**

2

Pursuant to Sections II.D and III.G of the Court's Standing Order for All Civil Cases,

3

counsel for Defendant Pacific Market International, LLC certifies that on July 24, 2024, the parties

4

met and conferred via telephonic conference regarding the substance of this motion to dismiss.

5

6

DATED July 31, 2024

7

By:  */s/ E. Alex Beroukhim*_____
       E. Alex Beroukhim

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PACIFIC MARKET INTERNATIONAL, LLC'S
MOTION TO DISMISS
No. 2:24-cv-00191-TL - 32

**K&L GATES LLP**
**925 FOURTH AVENUE, SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**