HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE: PACIFIC MARKET INTERNATIONAL, LLC, STANLEY TUMBLER LITIGATION | NO. 2:24-cv-00191-TL<br><br>**AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>***CLASS ACTION***<br><br>***JURY TRIAL DEMANDED*** |

1.     Plaintiffs Mariana Franzetti, Laura Barbu, Robin Krohn, Mackenzie Brown, Meiling Robinson, and Holly Rydman, bring this Amended Consolidated Class Action Complaint against Defendant, both individually and on behalf of all other members of the class (defined herein) for claims arising out of Defendant's failure to truthfully and timely alert customers of the presence of lead in its products and the risk that they unknowingly took every time they used one of these tumblers. Plaintiffs allege the following based on general knowledge and belief, except where specifically alleged to be on personal knowledge. All factual contentions either have or likely will have evidentiary support after a reasonable opportunity for further investigation or discovery, except where specifically identified.

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

**NATURE OF THE ACTION**

2.      Lead exposure is known to pose significant and dangerous health risks and consequences to humans. No amount of lead is safe for human exposure or consumption. The U.S. Food and Drug Administration ("FDA"), Centers for Disease Control and Prevention ("CDC"), American Academy of Pediatrics ("AAP"), and the World Health Organization ("WHO") have all stated that, as this substance is known to accumulate in the body,  "there is no safe amount of exposure to lead" in terms of human exposure or consumption.[1] Further, because of concerns that lead can harm human health at even low levels, the U.S. Environmental Protection Agency ("EPA") has set the maximum contaminant level goal for lead in water at zero. And as set forth herein, federal and state government officials agree that lead exposure can cause neurological damage, kidney malfunction, seizures, coma, and even death.  This is why exposure to any source of lead should be avoided and minimized, and why disclosure of the presence of lead in products intended to be used for food and beverage storage and consumption is presumptively material.

3.      For years, tumblers, sold under the "Stanley" brand were designed and manufactured with lead in the product base. Defendant Pacific Market International, LLC, dba PMI Worldwide and/or PMI WW Brands LLC (collectively referred to herein as "PMI") possessed exclusive and specialized knowledge of this purposeful inclusion of lead in its Stanley Tumblers during the class period.

---

[1] https://who.int/news-room/fact-sheets/detail/lead-poisoning-and-health (last accessed Feb. 20, 2025).

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 2

4.      PMI is one of the largest manufacturers of reusable water bottles in the United States, with worldwide revenue growing from $70 million in 2019 to about $750 million in 2023.[2] PMI has spent enormous sums to reach its target market by paying influencers to advertise Stanley tumblers as safe, durable, and suitable for ordinary use, as set forth herein.

5.      PMI was solely responsible for its intentional use of lead in the product design and manufacture– despite industry objections and suggestions for safer alternative designs –while choosing to not disclose the presence of lead in these products.[3]  PMI knew or reasonably should have known that doing so could expose its customers to the heavy metal if the bottom cap of the tumbler came off and thus plausibly constituted an unreasonable safety hazard and risk. In fact, when it was revealed to the public that lead was included in the products' design, PMI admitted that there is a risk of lead exposure to consumers. Thus, PMI is or should be aware that there is a known defect in these tumblers and safety concerns associated with the product's use was material information to reasonable consumers.  The products' contents, such as lead, are material to reasonable consumers' purchasing decisions.  Because consumers lack the knowledge and technical expertise to determine whether the Stanley tumblers contain lead or to learn the true nature of the tumblers' components on their own, reasonable consumers must and do rely on PMI to properly and fully disclose the content of its tumblers, particularly if that content can result in exposure to toxic chemicals.

---

[2] https://www.statista.com/statistics/1422707/stanley-sales-worldwide/ (last accessed March 2, 2025).

[3] As used herein, "tumblers" refers to drinkware or related products manufactured by PMI that include lead in their design or manufacture.

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 3

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

6.      Reasonable consumers, such as Plaintiffs, who purchased the Stanley tumblers for use by both themselves and their families, also consider the presence of lead a material fact when considering whether to buy the Stanley tumblers — especially since there is substitute drinkware readily available that is made without lead, and that therefore poses no risk of lead exposure or its attendant grave health risks. Plaintiffs and other reasonable consumers would not have bought the Stanley tumblers or would have paid less for them but for PMI's omissions.

7.      PMI's current response on its Stanley website to the FAQ, "Do Stanley products contain lead?" – which was first added after January 2024 – still does not fully disclose the presence of lead in the Stanley tumblers, which products do or do not contain lead, or the risk that consumers can be exposed to lead. Instead, PMI publicly represents: "The vacuum insulation in our products has been sealed using an industry standard process that includes pellets, *some* of which include *some lead*, and all of which are covered with a durable stainless-steel layer, making them inaccessible to consumers."[4]  The full text of this FAQ is as follows:

[4] https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-stanley-products-contain-lead (emphasis added) (last accessed March 2, 2025).

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

1

2

## Do Stanley products contain lead?

3

4    At Stanley, one of the key features of our products is our vacuum insulation technology, which provides
     consumers with drinkware that keeps beverages at the ideal temperature. The vacuum insulation in
     our products has been sealed using an industry standard process that includes pellets, some of which
     include some lead, and all of which are covered with a durable stainless-steel layer, making them
5    inaccessible to consumers.

6    All Stanley products are safe. Rest assured that no lead is present on the surface of any Stanley product
     that comes into contact with the consumer nor the contents of the product.

7

8         8.      This seal is then covered with a layer of steel, which PMI admits may come off

9    — even "due to ordinary use" — and expose users to lead.  Even after PMI's use of lead was

10   exposed, it launched a public relations campaign telling consumers not to worry about the lead

11   in their Stanley tumblers.

12        9.      While PMI admitted to using lead in the design and manufacturing of Stanley

13   tumblers and that consumers could be exposed to lead if a Stanley tumbler is damaged, it has

14   continued to sell Stanley tumblers without changing its manufacturing or marketing practices,

15   meaning the Stanley tumblers continue to contain lead. PMI has also misleadingly stated that "no

16   lead is present on the surface of any Stanley product that comes into contact with the consumer

17   nor the contents of the product," but has failed to disclose that lead can in fact be exposed and/or

18   come in contact with the consumer if the tumbler is damaged.

19        10.     PMI thus continues to wrongfully induce consumers into purchasing or not

20   returning Stanley tumblers by not fully disclosing the presence of lead in the products' packaging

21   or labeling, in advertisements, or at the point of sale, nor by changing its products' manufacture

22   or design.

23

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 5

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

11.    Despite the known health risks, PMI sold Stanley tumblers where PMI had used lead in its design and manufacture, and thereafter knowingly, recklessly, or unreasonably failed to disclose to consumers that its Stanley tumblers contained lead by design. As shown in the image in the following paragraph, PMI represents that these tumblers were "Designed in Seattle." However, nowhere on the labeling, advertising or promotion of these products prior to time of sale does PMI disclose that the Stanley tumblers contain lead. The omissions of material fact in the labeling and marketing of these products were thus deceptive, misleading, unfair, and/or false because the Stanley tumblers were manufactured with lead. PMI continues to market the Stanley tumblers without fully disclosing the presence or use of lead in its packaging or advertisements.

12.    PMI also did not disclose to consumers that these tumblers could be damaged even through ordinary use, which could expose consumers to lead. For example, the images below represent the bottom of Stanley tumblers: one with the seal intact and one where the seal was damaged, exposing where the lead pellet was located:[5]



---

[5] https://tamararubin.com/2023/03/full-xrf-test-results-for-a-2023-purchased-stanley-40-oz-flowstate-quencher-h2-0-tumbler/ (last accessed Feb. 6, 2025); https://www.tiktok.com/@kjbrzhk/video/7329002773851295018 (last accessed Feb. 7, 2025).

AMENDED CONSOLIDCATED CLASS ACTION COMPLAINT - 6

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

13.     PMI knew that consumers trust the company and its products and would not expect the Stanley tumblers to contain lead. PMI also knows that reasonable consumers seek out and wish to buy drinkware that does not contain lead and would likely pay more for products that meet this standard. Based on PMI's decision to omit any mention of the presence or use of lead in the design and manufacture of Stanley tumblers and instead market them as safe, durable, and suitable for ordinary use, it had a duty to ensure the advertising, labeling and marketing of the Stanley tumblers was accurate and not misleading.

14.     In the end, PMI actively concealed and omitted from disclosure this material information from Plaintiffs and/or made partial representations about the safety and durability of these tumblers but also suppressed these material facts during the class period. This is in stark contrast to the fact that now PMI readily admits that its Stanley tumblers contain lead and can expose customers to toxic substances if they are damaged, including through ordinary use.

15.     PMI had a duty to disclose the undisclosed presence of lead (a latent safety-related defect) in its products and it was an unfair business practice to conceal this information from the public. PMI knew that both: (1) a reasonable customer would find such information material to their purchasing decisions in buying the premium priced products; and (2) these reasonable consumers had no way of learning that the products included lead without PMI properly disclosing this information.

16.     PMI had exclusive and superior knowledge of material facts not known to the Plaintiffs regarding defects that are not readily ascertainable to customers.  Purchasers of these tumblers prior to January 2024 did not have access to the same information as PMI based on the design of these tumblers and the undisclosed use of a lead pellet in a sealed off and hidden

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 7

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

chamber in the base of the products that Plaintiffs and Class members would not have access to and thus would be difficult if not impossible to discover and thus were not readily ascertainable to them or the average consumer.

17.     PMI finally admitted in January 2024 that its popular Stanley tumblers contain lead but only because its hand was forced by a third-party who exposed the inclusion of lead publicly in the tumblers first.[6] PMI had previously knowingly and unfairly failed to disclose that information because it knew this material information that could hurt its PMI's bottom line and contradict the high premium price attached to the Stanley tumblers. PMI should have conveyed the existence of these alleged defects in any manner prior to sale of such products. However, PMI did not disclose this material defect and has done nothing but conceal these facts until very recently, failing to disclose and keeping this material fact hidden from consumers.

18.     PMI has also misleadingly stated that "no lead is present on the surface of any Stanley product that comes into contact with the consumer nor the contents of the product" — failing to mention that the lead can in fact come in contact with the consumer, or the drinkware's contents, especially if the tumbler is damaged.[7]

19.     When PMI finally admitted that these tumblers universally contain lead, it also conceded that consumers can be exposed to the toxic substance lead if the tumblers become

---

[6] Daryl Austin, "Do Stanley cups contain lead or pose a risk of lead poisoning? Experts weigh in", Today (Jan. 24, 2024), https://www.today.com/health/news/stanley-cups-lead-rcna135513 (a Stanley spokesperson admits that customers may be exposed to lead if the product is damaged) (last accessed March 2, 2025).
[7] *Do Stanley Products Contain Lead?* Stanley 1913, https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-stanley-products-contain-lead- (last visited March 2, 2025).

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 8

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

damaged based on reasonably foreseeable and ordinary use.[8] Yet no Stanley tumbler label warns customers that these tumblers contain lead, nor that a customer bears the risk of being exposed to lead if the tumbler is damaged in ordinary use. Only after reports on social media circulated last year did the public become aware of the lead content in Stanley tumblers.

20.    Plaintiffs and the class paid a premium price based on PMI's omissions and active concealment regarding the universal presence of lead in these products. Plaintiffs reasonably believed they had bargained for and purchased a premium product that had no safety risk or defect and reasonably expected that PMI would have disclosed such material facts, but instead unfairly received a lesser product that contained the unnecessary inclusion of lead.

21.    Had PMI disclosed these material facts and safety-related defects at the time of purchase, Plaintiffs and other reasonable consumers would not have bought the Stanley tumblers at all or would have paid materially less for them absent PMI's omissions and active concealment regarding the inclusion of lead in the tumblers. They thus have spent money that, absent PMI's actions and inactions, they would not have spent on such products.

22.     Plaintiffs seek both injunctive and monetary relief for the proposed Class, including refunds of payments made by the Class for Stanley tumblers that were sold containing

---

[8] Daryl Austin, "Do Stanley cups contain lead or pose a risk of lead poisoning? Experts weigh in", Today (Jan. 24, 2024), https://www.today.com/health/news/stanley-cups-lead-rcna135513 (a Stanley spokesperson admits that customers may be exposed to lead if the product is damaged) (last accessed March 2, 2025). *See also id.* ("Stanley is responding to claims that its products contain lead, clarifying that yes, lead is used in the manufacturing process, but the product needs to become damaged in order to expose the lead, a Stanley spokesperson tells TODAY.com in a statement."); Do Stanley Products Contain Lead? Stanley 1913, https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-stanley-products-contain-lead- (as visited June 5, 2024; the text has since been changed by PMI).

1    lead and an injunction requiring PMI to fully disclose the presence of lead in Stanley tumblers in

2    its labeling, marketing, communications, and at the point of sale wherever its tumblers are sold.

3                              **JURISDICTION AND VENUE**

4         23.    This Court has subject-matter jurisdiction over the claims asserted herein pursuant

5    to 28 U.S.C. § 1332 because the amount in controversy exceeds $5,000,000, excluding interest

6    and costs, and the Plaintiffs and PMI reside in different states.  It is likely more than two-thirds

7    of the members of the Class reside in states other than the states in which PMI is a citizen and in

8    which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d)

9    do not apply.

10        24.    Venue is proper in this Court under 28 U.S.C. § 1391 because PMI is

11   headquartered in this District, many of the acts and transactions giving rise to this action occurred

12   in this District, and PMI conducts substantial business in this District and has availed itself of the

13   laws and markets of the United States and this District.

14                                    **PARTIES**

15        25.    Plaintiff Mariana Franzetti ("Plaintiff Franzetti") is, and at all times relevant was,

16   a Nevada citizen and resides in Las Vegas, Nevada. Plaintiff Franzetti bought a Stanley tumbler

17   for personal, family, or household use from Target in Las Vegas, Nevada, around March 2023.

18   Plaintiff Franzetti believed she was buying a product that would not expose her or her family to

19   lead and that it would safely store liquids without fear of exposure to toxins. Before buying the

20   tumbler, Plaintiff Franzetti saw materials describing its characteristics, including that it was made

21   from stainless steel, dishwasher safe, and easy to clean. Plaintiff Franzetti no longer uses the

22   tumbler. Had PMI disclosed these material facts and safety related defects at the time of purchase,

23

AMENDED CONSOLIDCATED CLASS ACTION           **BRESKIN | JOHNSON | TOWNSEND PLLC**
COMPLAINT - 10                                        600 Stewart St., Suite 901
                                              Seattle, WA 98101 Tel: 206-652-8660

Plaintiff Franzetti would not have purchased this product, would have paid considerably less for it, or purchased a lead-free alternative.

26.    Plaintiff Laura Barbu ("Plaintiff Barbu") is, and at all times relevant was, a New York citizen and resides in Dix Hills, New York. Plaintiff Barbu bought three 40-ounce Stanley Stainless Steel Adventure tumblers for personal, family, or household use from Target.com and picked them up from Target retail stores in Commack, New York, around March 2022 and March 2024. Plaintiff Barbu believed she was buying a product that would not expose her or her family to lead and that it would safely store liquids without fear of exposure to toxins. Plaintiff Barbu no longer uses the tumblers. Had PMI disclosed these material facts and safety related defects at the time of purchase, Plaintiff Barbu would not have purchased these products, would have paid considerably less for them, or purchased a lead-free alternative.

27.    Plaintiff Robin Krohn ("Plaintiff Krohn") is, and at all times relevant was, a California citizen and resides in El Cajon, California. Plaintiff Krohn bought a Stanley tumbler for personal, family, or household use from Dick's Sporting Goods in El Cajon, California, around December 2022. Plaintiff Krohn believed she was buying a product that would not expose her or her family to lead and that it would store liquids without fear of exposure to toxins. Plaintiff Krohn no longer uses the tumbler. Had PMI disclosed these material facts and safety related defects at the time of purchase, Plaintiff Krohn would not have purchased this product, would have paid considerably less for it, or purchased a lead-free alternative.

28.    Plaintiff Mackenzie Brown ("Plaintiff Brown") is, and at all times relevant was, a California citizen and currently resides in San Marino, California. Plaintiff Brown bought a Stanley tumbler for personal, family, or household use from Dick's Sporting Goods in Pasadena,

1   California, in 2022. Plaintiff Brown believed she was buying a product that would not expose

2   her or her family to lead and that it would safely store liquids without fear of exposure to toxins.

3   Plaintiff Brown no longer uses the tumbler. Had PMI disclosed these material facts and safety

4   related defects at the time of purchase, Plaintiff Brown would not have purchased this product,

5   would have paid considerably less for it, or purchased a lead-free alternative.

6       29.     Plaintiff Mei Ling Robinson ("Plaintiff Robinson") is, and at all times relevant

7   was, a California citizen and resides in Long Beach, California. Plaintiff Robinson bought a

8   Stanley tumbler for personal, family, or household use in late 2020 or early 2021 from

9   Backcountry.com. Plaintiff Robinson believed she was buying a product that would not expose

10  her to lead and that it would safely store liquids without fear of exposure to toxins. Before buying

11  the tumbler, Plaintiff Robinson saw representations that the tumblers were "durable," "stay hot

12  24H," and "rugged." Plaintiff Robinson no longer uses the Stanley tumbler. Had PMI disclosed

13  these material facts and safety related defects at the time of purchase, Plaintiff Robinson would

14  not have purchased this product, would have paid considerably less for it, or purchased a lead-

15  free alternative.

16      30.     Plaintiff Holly Rydman ("Plaintiff Rydman") is, and at all times relevant was, a

17  citizen of Washington and resides in Olympia, Washington. Plaintiff Rydman bought a Stanley

18  tumbler for personal, family, or household use in February 2022 from Dick's Sporting Goods in

19  Olympia, Washington. Plaintiff Rydman believed she was buying a product that would not expose

20  her or her family to lead and that it would safely store liquids without fear of exposure to toxins.

21  Plaintiff Rydman no longer uses the tumbler. Had PMI disclosed these material facts and safety

22

23

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 12

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

1    related defects at the time of purchase, Plaintiff Rydman would not have purchased this product,

2    would have paid considerably less for it, or purchased a lead-free alternative.

3        31.    During the time each of the Plaintiffs purchased and used the Stanley tumblers,

4    they were unaware the Stanley tumblers contained lead and reasonably did not have access to

5    such information.  Plaintiffs also did not reasonably expect these tumblers to contain a toxic

6    heavy metal like lead. A reasonable consumer would consider the labeling of a product when

7    deciding whether to buy the tumblers. Had PMI fully, timely, and accurately disclosed this

8    material fact, which it did not, Plaintiffs would not have purchased the tumblers, paid less for

9    them, or purchased a lead-free alternative.

10       32.    Plaintiffs reasonably relied on the labeling and marketing of the Stanley tumblers

11   that did not disclose the presence of lead in these products when making their purchasing

12   decisions in terms of the failure to disclose the presence of lead.  Such labeling and marketing

13   were prepared, reviewed, approved, and/or disseminated by PMI and its agents, as well as the

14   omission and concealment of materials facts to the contrary. These omissions of nondisclosed

15   material facts were of such a nature a reasonable consumer would consider important when

16   purchasing the Stanley tumblers, as demonstrated below.

17       33.    Plaintiffs were injured in fact when they paid the premium price for Stanley

18   tumblers and also when paying a price for a product that did not deliver what was reasonably

19   bargained for. Plaintiffs paid for such products based on the reasonable assumption that the

20   marketing and statements were accurate and not misleading, the Stanley tumblers were not

21   manufactured with lead, and they posed no potential physical harm. Plaintiffs would not have

22   paid the amount of money they did for the Stanley tumblers had they known the truth about the

23

AMENDED CONSOLIDCATED CLASS ACTION          **BRESKIN | JOHNSON | TOWNSEND PLLC**
COMPLAINT - 13                               600 Stewart St., Suite 901
                                             Seattle, WA 98101 Tel: 206-652-8660

presence of lead in the Stanley tumblers. The tumblers are now worthless to Plaintiffs because they contain lead, and all Plaintiffs have stopped using them for fear of lead exposure.

34.     Plaintiffs Franzetti, Barbu, Brown, Robinson, and Rydman would consider purchasing the tumblers in the future if they were certain the tumblers were no longer manufactured with lead.

35.     Defendant Pacific Market International, LLC, dba PMI Worldwide and/or PMI WW Brands LLC is a Washington limited liability company with its principal place of business located at 2401 Elliot Avenue, Seattle, Washington 98121. PMI designs, manufactures, packages, labels, markets, advertises, distributes, and sells the Stanley tumblers throughout the United States, including in and from this District.

## FACTUAL ALLEGATIONS

36.     PMI designs, manufactures, distributes, markets, advertises, and sells the Stanley tumblers throughout the United States and in this District directly to consumers and through intermediaries and has done so continuously throughout the class period.   In addition to representing that the Stanley tumblers were "designed in Seattle", PMI is also primarily, if not exclusively, involved in sourcing components and designing and manufacturing the Stanley tumblers.   Stanley tumblers are available at numerous retail and online outlets nationwide and have been widely advertised.

37.     PMI knowingly created, allowed, oversaw, and authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and marketing for the Stanley tumblers that did not disclose the presence of lead.

38.    The Stanley tumblers include drinkware manufactured by PMI that include lead in their design and manufacture. For example:

a.    Quencher H2.0 Flowstate Tumbler;



b.    Iceflow Bottle with Flip Straw Lid;



c.    Iceflow Flip Straw Tumbler;



AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 15

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

d.   Iceflow Bottle with Fast Flow Lid; and



e.   IceFlow Jug with Fast Flow Lid.



39.    PMI markets its Stanley tumblers largely targeting millennial and Gen-Z women.

40.    In 2019, PMI partnered with The Buy Guide, an online shopping and review guide with an enormous following, which resulted in 10,000 Stanley tumblers sold within days.[9] 97.% of The Buy Guide's followers were women and nearly all of them were 24-45 years old, representing a new target market for Stanley tumblers.

---

[9] Therese Nguyen, *How Stanley's Marketing Strategy Went Viral*, RivalIQ (May 6, 2024), https://www.rivaliq.com/blog/stanleys-marketing-strategy/ (last accessed Feb. 6, 2025).

41.     Along with advertising to millennial and Gen-Z women, PMI also advertised its tumblers as ideal for adventurers and consumers who enjoy an active lifestyle. Although traveling with a tumbler and using it in rugged outdoor settings increases the chance that it will be damaged (and therefore expose consumers to lead), consumers were never told that the tumblers contained lead or that a damaged tumbler could pose a safety risk by exposing the user to lead.

42.     PMI's marketing strategy has also included paying social media influencers with large followings in PMI's target demographics to promote Stanley tumblers.[10] With the help of these influencers, the sales of Stanley tumbler skyrocketed: worldwide sales increased from $70 million in 2019 to about $750 million in 2023.[11]

43.     Plaintiffs relied upon the labeling and marketing of the Stanley tumblers as well as the omissions, which were prepared, reviewed, approved, and/or disseminated by PMI and its agents. The omissions were nondisclosed material content that a reasonable consumer would consider important when purchasing the Stanley tumblers.

## FACT ALLEGATIONS

**I.    Public reports exposed the presence of lead in Stanley tumblers**

44.     In late January 2024, reports that alleged the presence of lead in Stanley tumblers went viral on social media. The response to these disclosures, including their coverage in national

---

[10] AJ Willingham, *The Stanley craze begs the question: Why do we love our special little cups so much?* CNN (Jan. 10, 2024), https://www.cnn.com/2024/01/10/style/stanley-cup-craze-explained-cec/index.html (last accessed March 2, 2025).

[11] AJ Willingham, *The Stanley craze begs the question: Why do we love our special little cups so much?* CNN (Jan. 10, 2024), https://www.cnn.com/2024/01/10/style/stanley-cup-craze-explained-cec/index.html (last accessed March 2, 2025); *Stanley sales revenue worldwide from 2019 to 2023*, Statista, https://www.statista.com/statistics/1422707/stanley-sales-worldwide/ (last accessed Feb. 6, 2025).

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

1    news outlets both online and on television, provides significant evidence that consumers felt

2    blindsided and saw PMI's failure to disclose the lead as a material omission.

3        45.    Independent testing of Stanley tumblers revealed lead levels of 400,000 parts per

4    *million* ("ppm") and possibly as high as 600,000 ppm.[12]

5        46.    This extreme level of lead is not surprising as PMI has admitted that it uses a

6    sealing pellet made of lead in the tumblers. This is not a product that has potential to contain a

7    negligible amount of lead that was not intentionally added.

8        47.    While PMI admitted to using lead in the design and manufacturing of Stanley

9    tumblers and that consumers could be exposed to lead if a Stanley tumbler is damaged, it

10   continued to sell Stanley tumblers without changing its manufacturing or marketing practices,

11   meaning the Stanley tumblers continued to contain lead.

12   **II.    Lead At Any Level Poses a Significant Health Risk**

13       48.    Lead is a highly toxic heavy metal, identified as a carcinogen, and whose

14   harmful effects cannot be reversed or remediated due to its accumulation in the body over

15   time.[13]

16

17

---

18   [12] *Lead Safe Mama, LLC CPSC Violation Report (Report # LSM 2024_001) for Insulated Stainless Steel Stanley Brand Tumblers Made and Sold for Use by Children*, Lead Safe Mama,

19   Feb. 1, 2024, https://tamararubin.com/2024/02/lead-safe-mama-llc-cpsc-violation-report-report-lsm-2024_001-for-insulated-stainless-steel-stanley-brand-tumblers-made-and-sold-for-use-by-children/ (last visited March 2, 2025).

20   [13] *Heavy Metals in Baby Food: What You Need to Know*, Consumer Reports, Aug. 16, 2018 (updated Sept. 29, 2021), https://www.consumerreports.org/health/food-safety/heavy-metals-in-

21   baby-food-a6772370847/ (last accessed Feb. 5, 2025); *ToxFAQs for Lead*, Agency for Toxic Substances and Disease Registry,

22   https://wwwn.cdc.gov/TSP/ToxFAQs/ToxFAQsDetails.aspx?faqid=93&toxid=22 (last accessed Feb. 6, 2025).

23

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

49.     No amount of lead is safe for human exposure or consumption. The FDA, CDC, AAP, and WHO have all stated that there is no safe level of lead.[14]

50.     Exposure to lead can cause cancer, neuropathy and brain damage, hypertension, decreased renal function, increased blood pressure, and gastrointestinal and cardiovascular effects. It can also cause reduced fetal growth or lower birth weights.

51.     While lead is toxic to humans of any age, lead exposure can seriously harm the brain and nervous system in children and is associated with a range of adverse health outcomes such as behavioral problems, decreased cognitive performance, delayed puberty, reduced postnatal growth, increased incidence of attention-related behaviors and problem behaviors, and decreased hearing.[15]

52.     Lead is also harmful to adult health, and exposure to lead in adults is associated with increased blood pressure, increased risk of hypertension, reduced fetal growth in pregnant

---

[14] *Lead Levels Below EPA Limits Can Still Impact Your Health*, NPR, Aug. 13, 2016, https://www.npr.org/sections/thetwo-way/2016/08/13/489825051/leadlevels-below-epalimits-can-still-impact-your-health (last accessed Feb. 5, 2025); *Lead in Food and Foodwares*, FDA, Jan. 6, 2025, https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-foodwares (last accessed Feb. 6, 2025); *Health Effects of Lead Exposure*, CDC, https://web.archive.org/web/20240429041027/https://www.cdc.gov/nceh/lead/prevention/health-effects.htm (last accessed Feb. 6, 2025); *Lead Exposure & Children: FAQs for Families*, HealthyChildren.org, https://www.healthychildren.org/English/safety-prevention/all-around/Pages/lead-exposure-and-children-faqs-for-families.aspx#/1 (last accessed Feb. 6, 2025); Lead Poisoning, WHO, https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health (last accessed Feb. 6, 2025).

[15] *Lead in Food and Foodwares*, FDA, Jan. 6, 2025, https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-foodwares (last accessed Feb. 6, 2025); *NTP Monograph: Health Effects of Low-Level Lead*, U.S. Department of Health and Human Services, National Toxicology Program, June 2012, https://ntp.niehs.nih.gov/sites/default/files/ntp/ohat/lead/final/monographhealtheffectslowlevellead_newissn_508.pdf (last accessed Feb. 6, 2025).

BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

women, damage to reproductive organs, cognitive decline, heart disease, and worsened kidney function.[16]



53.     Because exposure to lead builds up in the human body over time, it can disrupt neurological, skeletal, reproductive, hematopoietic, renal, and cardiovascular systems.[17]

54.     In October 2024, the EPA issued a final Lead and Copper Rule Improvements regulation, published in the *Federal Register*, that included a lowered action level for lead from

---

[16] *NTP Monograph: Health Effects of Low-Level Lead*, U.S. Department of Health and Human Services, National Toxicology Program, June 2012, https://ntp.niehs.nih.gov/sites/default/files/ntp/ohat/lead/final/monographhealtheffectslowlevellead_newissn_508.pdf (last accessed Feb. 6, 2025); A. Spivey, *The Weight of Lead: Effects Add Up in Adults*, Environ. Health Perspect. Jan. 1, 2007, 115(1):A30-A36, https://ehp.niehs.nih.gov/doi/10.1289/ehp.115-a30 (last accessed Feb. 6, 2025); *Lead vs. Lead-free Solder: Which is Better for PCB Manufacturing?* Wevolver, Jan. 31, 2023, https://www.wevolver.com/article/lead-free-solder-vs-lead-solder (last accessed Feb. 6, 2025).
[17] Collin, M. Samuel, et al., *Bioaccumulation of Lead (Pb) and Its Effects on Human: A Review*, Journal of Hazardous Material Advances 7, Aug. 2022, https://www.sciencedirect.com/science/article/pii/S277241662200050X (last accessed March 2, 2025).

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

15 ppb to 10 ppb.[18] In setting the action level, the EPA conceded it is "not a health-protective level-only zero lead is safe."[19] Further, because of concerns that lead can harm human health at even low levels, the EPA has set the maximum contaminant level goal for lead in water at zero.[20]

55.    In January 2025, the FDA issued its final guidance for action levels of lead ranging from 10 ppb to 20 ppb in processed foods for infants and children under two years old.[21] The action levels represent levels at which the FDA considers the water or food to be "contaminated" within section 402(a)(1) of the Federal Food, Drug, and Cosmetic Act.

56.    Stanley tumblers — which PMI has admitted can expose consumers to lead if the bottom vacuum seal is damaged due to a latent design and manufacturing defect — pose a health risk to consumers. Consumers have the right to be informed of this risk before purchasing the products so they can decide for themselves whether to assume the risk or choose substitute drinkware.

---

[18] *Welcoming the EPA's New Lead in Tap Water Rule: An Overview*, National Resources Defense Council, Dec. 2, 2024, https://www.nrdc.org/bio/erik-d-olson/welcoming-epas-new-lead-tap-water-rule-overview (last accessed Feb. 6, 2025).
[19]    *Id.*
[20] *Basic Information About Lead in Drinking Water*, United States Environmental Protection Agency, https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water#:~:text=EPA%20has%20set%20the%20maximum,in%20the%20body%20over%20time. (last accessed Feb. 6, 2025).
[21] *Action Levels for Lead in Processed Food Intended for Babies and Young Children: Guidance for Industry*, U.S. Department of Health and Human Services, Food and Drug Administration (Jan. 2025), https://www.fda.gov/media/164684/download (last accessed Feb. 6, 2025).

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 21

**III.    Despite Admitting to The Presence of Lead in the Stanley Tumblers, PMI Still Markets the Stanley Tumblers as Safe**

57.    Until February 2024, PMI did not disclose on its website that the Stanley tumblers contained lead or that consumers can be exposed to lead if a tumbler is damaged – and even then it buried its admission in the middle of a number of other "General Support" FAQs.

February 1, 2024:[22]                                    February 29, 2024:[23]

**General Support**                                    **General Support**

I have a question about Stanley products.             I have a question about Stanley products.

I need help creating a Stanley account.               I need help creating a Stanley account.

I need help in managing my Stanley account.           I need help in managing my Stanley account.

I forgot my Stanley account password.                 I forgot my Stanley account password.

I would like to know when an item will be back in stock.   I would like to know when an item will be back in stock.

I want to know how you ship your products.            I want to know how you ship your products.

I want to know when your next promotional sale is.    I want to know when your next promotional sale is.

I want to resell Stanley products.                    Do Stanley products contain lead?

I have a question on donation or sponsorship.         I want to resell Stanley products.

I want to collaborate with Stanley.                   I have a question on donation or sponsorship.

I want to be a part of your team.                     I want to collaborate with Stanley.

How do I reach Stanley Customer Service?              I want to be a part of your team.

                                                      How do I reach Stanley Customer Service?

                                                      Our Locations

58.    PMI has admitted (albeit in a misleading manner, as described *supra*) that it deliberately and knowingly uses lead in the design and manufacture of Stanley tumblers, which

---

[22] PMI FAQ webpage from Feb. 1, 2024,
https://web.archive.org/web/20240201020106/https://www.stanley1913.com/pages/faq
[23] PMI FAQ webpage from Feb. 29, 2024,
https://web.archive.org/web/20240229155934/https://www.stanley1913.com/pages/faq

AMENDED CONSOLIDCATED CLASS ACTION          **BRESKIN | JOHNSON | TOWNSEND PLLC**
COMPLAINT - 22                                     600 Stewart St., Suite 901
                                              Seattle, WA 98101 Tel: 206-652-8660

1  could be damaged through ordinary use and potentially expose consumers to the dangerous toxin

2  lead.[24]

3      59.    PMI admitted in January 2024 that the reports were true: Stanley tumblers

4  include the use of lead to "seal the vacuum installation at the base." This seal is then covered

5  with a layer of steel, which PMI admits may come off — even "due to *ordinary use*" — and

6  expose users to lead.[25]

7      60.    PMI continues to market the Stanley tumblers without fully disclosing the

8  presence or use of lead even on the fine print of its website (much less in its packaging or

9  advertisements).

10      61.    For example, in the FAQ section of its website, PMI states, "The vacuum

11  insulation in our products has been sealed using an industry standard process that includes

12  pellets, *some* of which include *some lead*, and all of which are covered with a durable stainless-

13  steel layer, making them inaccessible to consumers."[26]

14

15

16

17

---

18  [24] *Do Stanley Products Contain Lead?* Stanley 1913,

19  https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-stanley-products-contain-lead- (as visited June 5, 2024; the text has since been changed).

20  [25] *Do Stanley Products Contain Lead?* Stanley 1913,
https://web.archive.org/web/20240204202319/https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-stanley-products-contain-lead (emphasis added) (last accessed

21  Feb. 25, 2025).

22  [26] *Do Stanley products contain lead?* Stanley 1913,
https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-stanley-products-contain-lead- (emphasis added) (last accessed Feb. 7, 2025).

23

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 23

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

## Do Stanley products contain lead?

At Stanley, one of the key features of our products is our vacuum insulation technology, which provides consumers with drinkware that keeps beverages at the ideal temperature. The vacuum insulation in our products has been sealed using an industry standard process that includes pellets, some of which include some lead, and all of which are covered with a durable stainless-steel layer, making them inaccessible to consumers.

All Stanley products are safe. Rest assured that no lead is present on the surface of any Stanley product that comes into contact with the consumer nor the contents of the product.

62.     PMI has also misleadingly stated that "no lead is present *on the surface of any Stanley product that comes into contact with the consumer nor the contents of the product*"[27] — failing to mention that the lead can in fact come in contact with the consumer, or the drinkware's contents, especially if the tumbler is damaged.

---

[27] *Do Stanley Products Contain Lead?* Stanley 1913, https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-stanley-products-contain-lead- (emphasis added) (as visited January 31, 2024; the text has since been changed).

AMENDED CONSOLIDCATED CLASS ACTION COMPLAINT - 24

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

63.    However, in response to consumer inquiries, PMI downplayed any concerns about the presence or use of lead in the Stanley tumblers.[28]



64.    PMI continues to misleadingly and unfairly not disclose on its packaging, labeling, or advertising that consumers and their families can be exposed to lead if the tumblers are damaged, which can occur through ordinary wear and tear.

65.    PMI has neither withdrawn nor revised its unfair and misleading marketing nor offered refunds or other compensation to consumers who unknowingly purchased Stanley tumblers that contain lead in their design and manufacture.

---

[28] https://tamararubin.com/2024/01/stanley-confirms-that-they-are-aware-of-the-fact-that-their-stanley-cup-insulated-tumblers-are-made-with-lead/ (last accessed Feb. 7, 2025).

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 25

66.     PMI's omission from the labeling of any mention of the presence or use of lead in the Stanley tumblers was done to induce and mislead reasonable consumers to buy the Stanley tumblers.

67.     Because of the undisclosed material omissions regarding the presence or use of lead in the Stanley tumblers, reasonable consumers would have no reason to suspect the presence or use of lead in the Stanley tumblers without conducting their own scientific tests (which are time-consuming and expensive) or reviewing third-party scientific testing.

## IV.  PMI Has Known for Years That Similar Products Can Be Manufactured Without the Use Of Lead, But Has Made the Conscious Decision Not To Do So

68.     While PMI has claimed and maintained that using lead to seal insulation is the "industry standard,"[29] lead-free materials have been used by other manufacturers of reusable, vacuum-sealed water bottles in the industry for years, with alternatives to Stanley tumblers readily available.

69.     For example, Hydro Flask has used lead-free manufacturing for its drinkware for over a decade, stating, "Even though this new [lead-free] process was more complex – and more expensive – *we chose this path because we aimed for a higher standard knowing lead could be harmful to consumers, manufacturing partners and the environment.*"[30]

70.     And the Hydro Flask 40 oz. Travel Tumbler retails for $5 less than a Stanley 40 oz. tumbler.

---

[29] *Do Stanley products contain lead?* Stanley, https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-stanley-products-contain-lead- (last accessed Feb. 6, 2025).

[30] *Frequently Asked Questions*, Hydro Flask, https://www.hydroflask.com/gb/frequently-asked-questions/#:~:text=Product%20Care,without%20the%20use%20of%20lead (emphasis added) (last accessed Feb. 6, 2025).

BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

71.     Another competitor of PMI, Owala, has never used lead in its manufacturing process, and a spokesperson said, "[t]he production of vacuum-sealed containers using lead-free solder is more costly and complicated. However, we made a commitment from day one with Owala to use lead-free solder on our bottles."[31]

72.     Other manufacturers that have lead-free alternatives include Klean Kanteen and Sigg.[32]

73.     At least one manufacturer made its lead-free alternative design available for competitors to use at no cost – yet PMI made the conscious decision not to do so.

74.     PMI thus either knew, recklessly disregarded, or simply ignored the fact that it was possible to manufacture the Stanley tumblers without using lead but chose to do so anyway.

75.     If PMI had disclosed the use and presence of lead in Stanley tumblers, reasonable consumers, including Plaintiffs, could have forgone the purchase of Stanley tumblers entirely or bought lead-free alternative drinkware that poses no risk of lead exposure and its attendant severe health risks.

**V.     Reasonable Consumers were Misled Based on Defendant's Unfair and Misleading Business Practices and Did Not Expect it was Manufactured with Lead**

76.     PMI's labeling, marketing, and communications misled and deceived reasonable consumers because they actively and knowingly concealed and failed to disclose that the Stanley tumblers contained lead while representing them as safe, durable, and suitable for ordinary use.

---

[31] *Is There Lead in Your Reusable Water Bottle?* Wired (Feb. 13, 2024), https://www.wired.com/story/stanley-cup-lead-soldering/ (last accessed Feb. 6, 2025).
[32] *Id.*

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 27

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

77.    Based on the overall impression given by the labeling, marketing, communications, active concealment, and omissions, no reasonable consumer could expect or understand the Stanley tumblers contained lead.

78.    On its website, PMI markets the Stanley tumblers as "made of rugged stainless steel"[33] and "[t]o help you live a sustainable lifestyle."[34]



---

[33] Stanley Mugs & Cups, https://www.stanley1913.com/collections/mugs-cups#:~:text=Our%20versatile%20mugs%20and%20cups,great%20for%20travel%20and%20home (last accessed Feb. 7, 2025).
[34] The Iceflow Flip Straw Jug, 64 ounces, https://www.stanley1913.com/products/the-iceflow-flip-straw-jug-64-oz?variant=44560374104191 (last accessed Feb. 7, 2025).

79.     Stanley tumblers are also marketed on its website as "your trusted companion" and "built to last, with solid 18/8 stainless steel construction."[35]



"Your trusted companion whether
you're hitting the road or your
morning spin class."

## DETAILS & SPECIFICATIONS

Just the right size for long mornings or anytime you need a fuller cup. The 24 ounce Stay Hot Camp Mug has the legendary performance you expect from a Stanley, with fewer trips to refill. This one is built to last, with solid 18/8 stainless steel construction. Double-wall vacuum insulation keeps your favorite drinks hot for hours, and the secure press-fit Tritan™ Drink-Thru Lid  prevents splashes and makes sipping easy. Keep it with you in the backyard, take it on the road, or enjoy it while lounging by the fireside.

---

[35] The Quencher H2.0 Flowstate Tumbler, 40 ounces, Stanley 1913, https://www.stanley1913.com/products/adventure-quencher-travel-tumbler-40-oz (last accessed Feb. 7, 2025); Stay-Hot Camp Mug, 24 ounces, Stanley 1913, https://www.stanley1913.com/products/the-stay-hot-camp-mug-24-oz?variant=44559767273599 (last accessed Feb. 7, 2025).

BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

80.     In keeping with its marketing strategy, since admitting to the use of lead in the tumblers in January 2024, PMI has represented that the Stanley tumblers "meet all US regulatory requirements."  For example, PMI has uniformly claimed on the Stanley website:[36]

> Stanley assures that its products meet all US regulatory requirements including Prop65. Stanley tests for and validates compliance on all products through FDA accredited 3rd party labs that verify our products follow strict guidelines including but not limited to BPA/BPS, PFOS, and phthalate regulatory requirements.

81.     This representation is false and misleading for at least the following reasons: (a) as shown above, the presence of lead in these products means the tumblers do not meet all regulatory requirements based on the levels set forth above; (b) the reference to "including but not limited to" gives the impression that the products comply with all applicable regulatory requirements, including for lead and other toxic substances, and (c) having spoken on the issue of compliance with regulatory requirements, PMI had a duty to disclose that the Stanley tumblers either were never tested for the presence of lead or do not meet applicable regulatory requirements for the presence of lead.

82.     Such representations would lead consumers to reasonably but mistakenly believe that PMI had disclosed all material components of the Stanley tumblers. Yet PMI failed to disclose that lead was integral to their products. PMI's labeling, marketing, and communications thus misled and deceived reasonable consumers by actively concealing and failing to disclose that the Stanley tumblers contained lead while at the same time representing them to be safe, durable, and suitable for ordinary use.

---

[36] https://web.archive.org/web/20240412044752/https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-stanley-products-contain-lead- (last accessed March 2, 2025).

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 30

83.    Based on the overall impression given consumers created by PMI through its labeling, marketing, and communications related to the design, safety, and durability of the Stanley tumblers and compliance with all applicable regulatory requirements, all of which omitted the presence of lead in the Stanley tumblers, no reasonable consumer could be expected to understand the Stanley tumblers contained lead prior to its admission of the disclosure of the presence of lead in these tumblers.

84.    Based on PMI's decision to omit any mention of the presence or use of lead in the Stanley tumblers and instead market them as safe, durable, and suitable for ordinary use, it had a duty to ensure the labeling and marketing of the Stanley tumblers were accurate and not misleading.

85.    A reasonable consumer would not expect the Stanley tumblers to contain lead, nor would they be able to detect the presence of lead in them without conducting their own scientific tests or reviewing scientific testing – which no reasonable person would do.  These omissions of material fact wrongfully convey to consumers that the Stanley tumblers have specific characteristics they do not have. Although PMI misleadingly causes consumers to believe the Stanley tumblers do not contain lead, the Stanley tumblers do contain lead, which is information a reasonable consumer would consider important and thus is a materially omitted fact.

86.    Independent testing of Stanley tumblers also confirmed the presence of lead at 400,000 ppm and possibly as high as 600,000 ppm.[37]

---

[37] *Lead Safe Mama, LLC CPSC Violation Report (Report # LSM 2024_001) for Insulated Stainless Steel Stanley Brand Tumblers Made and Sold for Use by Children*, Lead Safe Mama, Feb. 1, 2024, https://tamararubin.com/2024/02/lead-safe-mama-llc-cpsc-violation-report-report-lsm-2024_001-for-insulated-stainless-steel-stanley-brand-tumblers-made-and-sold-for-use-by-children/ (last accessed March 2, 2025).

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

87.  Regardless of level, though, there is no safe lead level.[38]

88.  Based on the omissions, a reasonable consumer would not expect the Stanley tumblers to contain lead, nor would they be able to detect the presence of lead in them without conducting their own scientific tests or reviewing scientific testing.

89.  Reasonable consumers must rely on PMI to honestly report what the Stanley tumblers contain. Plaintiffs relied on the Stanley tumblers' labeling, marketing, and communications when making their purchasing decisions.

90.  Plaintiffs' reliance on the omission of this material fact (i.e., whether the Stanley tumblers were designed and manufactured with lead) is consistent with that of reasonable consumers, as shown by a consumer survey recently conducted by Plaintiffs' counsel that showed 94.9% of respondents consider the presence of lead important or very important when making their purchasing decisions:[39]

---

[38] *Lead Levels Below EPA Limits Can Still Impact Your Health*, NPR, Aug. 13, 2016, https://www.npr.org/sections/thetwo-way/2016/08/13/489825051/leadlevels-below-epalimits-can-still-impact-your-health (last accessed Feb. 5, 2025); *Lead in Food and Foodwares*, FDA, Jan. 6, 2025, https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-foodwares (last accessed Feb. 6, 2025); *Health Effects of Lead Exposure*, CDC, https://web.archive.org/web/20240429041027/https://www.cdc.gov/nceh/lead/prevention/health-effects.htm (last accessed Feb. 6, 2025); *Lead Exposure & Children: FAQs for Families*, HealthyChildren.org, https://www.healthychildren.org/English/safety-prevention/all-around/Pages/lead-exposure-and-children-faqs-for-families.aspx#/1 (last accessed Feb. 6, 2025); Lead Poisoning, WHO, https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health (last accessed Feb. 6, 2025).

[39] The consumer survey included 426 respondents from 49 states, including Washington, who were shown images of generic double-wall vacuum insulated stainless-steel tumblers, but specifically not identifying Stanley tumblers.

*How important, if at all, would it be to your purchasing decision if the product above [referring to an image of a generic insulated stainless-steel tumbler] was manufactured with lead?*



91.    Similarly, 94.6% of respondents would want to know if a product they planned to purchase was manufactured with lead:

*Would you want to know if a product you planned to purchase was manufactured with lead?*



AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 33

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

92.    Further, 92.5% of respondents to the same consumer survey indicated that if they had the ability to choose between two insulated stainless steel tumblers – one manufactured with lead and the other not – they would purchase a tumbler that was not manufactured with lead:

*If two products were identical in size, weight, color, features, and price, but one was manufactured with lead, which product would you choose?*



93.    Such survey results demonstrate that omissions of fact as to the presence and use of lead are material and reasonably likely to deceive reasonable consumers, such as Plaintiffs, in their purchasing decisions, especially considering PMI's marketing campaign that also portrayed the Stanley tumblers as safe, meeting all applicable regulatory requirements and suitable for ordinary use in an effort to induce consumers, such as Plaintiffs, to buy these products. These omissions were intended to and did cause consumers like Plaintiffs and the members of the Class to buy products they likely would not have purchased had the actual quality of the Stanley

1  tumblers been disclosed, and/or they would not have paid the premium price or the price they

2  did.

3      94.    These omissions are material and thereby render the Stanley tumbler's labeling,

4  marketing, and communications deceptive as, without full disclosure, reasonable consumers

5  would believe the Stanley tumblers are suitable for ordinary use and do not contain lead.

6      95.    PMI thus had a duty to ensure the Stanley tumblers were not deceptively,

7  misleadingly, unfairly, and falsely marketed and that all material information about their design

8  and manufacture was properly and fully disclosed.

9      96.    These omissions make the Stanley tumbler labeling, marketing, and

10  communications deceptive as reasonable consumers, such as Plaintiffs, would consider whether

11  the Stanley tumblers contain lead material when considering what water bottle or tumbler to buy.

12  PMI foresaw Plaintiffs' reliance on the Stanley tumblers' labeling, marketing, and

13  communications when making their purchasing decisions. PMI's labeling, marketing, and

14  communications were thus misleading due to PMI's failure to disclose the actual quality of the

15  Stanley tumblers based on the undisclosed presence and use of lead in the manufacture and design

16  of these tumblers.

17      97.    PMI had exclusive and superior knowledge of the presence and use of lead in the

18  Stanley tumblers but chose to remain silent and not inform consumers.

19      98.    PMI also knew, recklessly disregarded, or reasonably should have known that

20  consumers paid premium prices because the presence of lead in the Stanley tumblers was not

21  disclosed.

22

23

99.     The omissions are material and render the Stanley tumblers' labeling, marketing, and communications deceptive as, without full disclosure, reasonable consumers believe the Stanley tumblers are safe, durable, and suitable for ordinary use and do not contain lead.

100.    Moreover, reasonable consumers, such as Plaintiffs and the Class members, would have no reason to doubt or question PMI's statements that the Stanley tumblers were safe, durable, and suitable for ordinary use. Based on the overall impression created by PMI's labeling, marketing, and communications, no reasonable consumer could expect or understand the Stanley tumblers contained lead.

101.    The omissions were intended to and did cause consumers like Plaintiffs and the members of the Classes to buy products they would not have if the actual quality of the Stanley tumblers were disclosed or for which they would not have paid a premium price.

102.    As a result of PMI's deceptive labeling, marketing, and communications, PMI was able to generate substantial sales, which allowed PMI to capitalize on and reap enormous profits from consumers who paid the premium purchase price for Stanley tumblers that were not as advertised.

## VI.    PMI's Omissions of Material Fact Violate Washington and Other Similar State Laws

103.    Washington law is designed to ensure a company's claims about its products are truthful and accurate and that they are not unfair or have a capacity to deceive.

104.    PMI violated Washington and other states' laws by knowingly, recklessly, unfairly, and/or negligently claiming the Stanley tumblers were safe, complied with regulatory requirements, and were suitable for ordinary use while at the same time not disclosing the presence or use of lead in the design and manufacture of these products.

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

105.    PMI has engaged in this marketing campaign, which omits that the Stanley tumblers contain lead.

## VII.    Plaintiffs' Reliance was Reasonable and Foreseen by PMI

106.    Reasonable consumers would consider the labeling of a product when deciding whether to purchase it.  When purchasing the Stanley tumblers, Plaintiffs read or relied upon PMI's labeling, marketing, and communications.

107.    PMI foresaw the Plaintiffs' reliance on the Stanley tumblers' labeling, marketing, and communications when making their purchasing decisions.

108.    Had Plaintiffs known PMI omitted and failed to disclose the Stanley tumblers contained lead, they would not have purchased the Stanley tumblers or would not have paid the price they did.

## CLASS ACTION ALLEGATIONS

109.    Plaintiffs bring this action against PMI as a class action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of themselves and all others similarly situated as members of the following classes:

a.  **Nationwide Class**: All persons who bought a Stanley tumbler for household use, and not for resale or redistribution, from June 1, 2019, to January 4, 2024 (the "Class").

b.  **Washington Subclass**: All persons who purchased a Stanley tumbler for household use, and not for resale or distribution, in the State of Washington from June 1, 2019, to January 4, 2024 ("Washington Subclass").

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 37

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

c.   **Nevada Subclass**: All persons who bought a Stanley tumbler for household use, and not for resale or distribution, in the State of Nevada from June 1, 2019, to January 4, 2024 ("Nevada Subclass").

d.   **New York Subclass**: All persons who bought for household use, and not for resale or distribution, a Stanley tumbler in the State of New York from June 1, 2019, to January 4, 2024 ("New York Subclass").

e.   **California Subclass**: All persons who bought a Stanley tumbler for household use, and not for resale or distribution, in California from June 1, 2019, to January 4, 2024 ("California Subclass").

110.    The Washington, Nevada, New York, and California Subclasses are called the "State Subclasses." The term "Classes" refers collectively to the Class and State Subclasses.

111.    The Classes exclude PMI, any of PMI's parent companies, subsidiaries and other affiliates, officers, directors, legal representatives, and employees, and any judge, justice, or judicial officer presiding over these actions.

112.    This action is brought and may be properly maintained as a class action. There is a well-defined community of interest in this litigation, and the members of the Classes are readily ascertainable.

113.    Based on the reported national sales of the Stanley tumblers and their individual retail price, the members of the proposed Classes are so numerous that individual joinder of all members is impracticable and the disposition of the claims of the members of all Classes in a single action will provide substantial benefits to the parties and Court.

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 38

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

114.    Plaintiffs' claims are typical of those of the Classes because they are based on the same underlying facts, events, and circumstances relating to PMI's conduct and because of their similar experiences and harms. All Plaintiffs and the Classes purchased Stanley tumblers without knowing or having reason to know they contained lead in their design and manufacture.

115.    Plaintiffs will fairly and adequately represent Class members' interests and have no interests materially antagonistic to or that materially conflict with those of unnamed Class members. Plaintiffs are represented by a team of attorneys experienced in class action, consumer protection, toxic product, and false advertising litigation.

116.    Questions of law and fact common to Plaintiffs and the Class include (without limitation) the following and would predominate over any questions that affect only individual Class members:

a.    Whether Class members bought Stanley tumblers without knowing that they contained lead in their design and manufacture;

b.    Whether PMI knew, recklessly disregarded, or reasonably should have known that the Stanley tumblers contained lead in their design and manufacture;

c.    Whether PMI failed to disclose the Stanley tumblers contained lead in their design and manufacture;

d.    Whether omissions of the fact the Stanley stumblers contained lead in their design and manufacture would be material to a reasonable consumer;

e.    Whether the inclusion of lead in the design and manufacture of Stanley tumblers would be material to a reasonable consumer in deciding whether to purchase such products;

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

f. Whether PMI owed a duty to disclose the Stanley tumblers contained lead in their design and manufacture;

g. Whether the labeling and advertising of the Stanley tumblers would be considered false, unfair, deceptive, or misleading based on the failure of PMI to disclose the Stanley tumblers contained lead in their design and manufacture;

h. Whether such omissions are likely to deceive a reasonable consumer;

i. Whether PMI knew, recklessly disregarded, or reasonably should have known its omissions were material and false, deceptive, and misleading;

j. Whether PMI breached its duty to disclose the Stanley tumblers contained lead in their design and manufacture;

k. Whether PMI engaged in unfair trade practices;

l. Whether PMI engaged in false advertising;

m. Whether the claims of Plaintiffs and the Classes serve a public benefit;

n. Whether PMI violated the laws of the State of Washington;

o. Whether PMI violated the laws of the State of California;

p. Whether PMI violated the laws of the State of New York;

q. Whether PMI violated the laws of the State of Nevada;

r. Whether Plaintiffs and the Classes are entitled to actual, statutory, and punitive damages; and

s. Whether Plaintiffs and the Classes are entitled to declaratory and injunctive relief.

117. Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small such that, absent representative

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 40

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

1   litigation, it would not be possible for members of the Classes to redress the wrongs done to

2   them. Requiring consumers to pursue individual actions would contravene the public interest and

3   waste judicial resources. Further, PMI's assertions, the orders of other courts and this Court, and

4   agreements between the parties have resulted in the litigation being concentrated in this District,

5   and there will be few difficulties in managing this action based on how similar types of claims

6   have been either litigated through or resolved before trial. The disposition of the Class members'

7   claims will benefit the parties and the Court while serving the public interest in promoting truthful

8   advertising and the disclosure of latent safety risks in consumer products.

### COUNT I
**Violation of the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code §§ 19.86.010 *et seq.*, Against PMI on Behalf of the Class, or the Washington Subclass**

118.   Plaintiffs incorporate by reference every paragraph above as if set forth fully here.

119.   PMI, Plaintiffs, and the Class members are all "persons," as defined in the WCPA. Wash. Rev. Code § 19.86.010(1).

120.   Plaintiffs, the Class members, and PMI engaged in "commerce," as defined in the WCPA while marketing, offering for sale, selling, and purchasing Stanley tumblers in Washington and throughout the United States. Wash. Rev. Code § 19.86.010(2)

121.   The WCPA makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

122.   PMI's misleading omissions failed to disclose the Stanley tumblers contained lead. PMI's failure to disclose the material facts set forth above gives rise to a violation of the WCPA.

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 41

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

123. PMI omitted this material information with the intent to induce consumers, such as Plaintiffs, to buy the Stanley tumblers.

124. PMI engaged in deceptive practices in the conduct of its trade or commerce.

125. As alleged throughout this Amended Consolidated Class Action Complaint, PMI's actions constitute unfair and deceptive acts and practices in any trade or commerce violating the WCPA. PMI violated the WCPA by, among other things:

    a. Representing that the Stanley tumblers have characteristics or benefits that they do not have;

    b. Representing that the Stanley tumblers are of a particular standard, quality, and grade when they are not; and

    c. Failing to disclose material information concerning the Stanley tumblers, such as the presence or use of lead and the potential for exposure to lead even through ordinary use, information known to PMI at the time of advertisement or sale, to induce Plaintiffs and members of the Class to buy the Stanley tumblers.

126. PMI's failure to disclose that the Stanley tumblers contain lead harmed the public interest by:

    a. Committing the alleged acts in the course of its business.

    b. Committing the acts as part of a pattern or generalized course of conduct.

    c. Committing repeated acts since before the Plaintiffs and class members purchased the Stanley tumblers and continuing the acts as PMI has not changed its manufacturing processes to stop its use of lead or its marketing or labeling to disclose the presence of lead.

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 42

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

1          d.  Creating a real and substantial potential for repetition of its conduct and failure to

2               disclose the material facts as PMI has yet to change its practices.

3          e.  Causing or having the capacity to cause injury to other persons.

4          127.    PMI's failure to disclose the presence or use of lead in the Stanley tumblers could

5    deceive a substantial part of the public. A practice is considered unfair or deceptive under the

6    WCPA if it is likely to mislead a reasonable or ordinary consumer.

7          128.    PMI's failure to disclose the presence or use of lead in the Stanley tumblers

8    offends public policy. It is immoral, unethical, oppressive, and unscrupulous, and the utility of

9    its conduct, if any, does not outweigh the gravity of the harm to consumers.

10         129.    Plaintiffs and Class members suffered injury and damages due to PMI's unfair

11   and deceptive trade practices and acts. Most notably, they bought Stanley tumblers that they

12   would not have bought if PMI had disclosed that the tumblers contain lead and expose consumers

13   to the risk of lead exposure — and, by extension, the risk of the severe health problems identified

14   by the CDC, WHO, and other agencies — especially but not solely if the tumblers are broken.

15         130.    PMI's unfair and deceptive practices injured and continue to injure the public

16   interest by misleading consumers into buying products they would not have bought. These

17   injuries greatly outweigh any potential countervailing benefit to consumers or competition. PMI

18   has no legally cognizable interest in misleading consumers by failing to disclose a material fact

19   that reasonable consumers consider when purchasing.

20         131.    As a direct and proximate result of PMI's deceptive, misleading, unfair, and

21   unconscionable practices as above and as provided in the WCPA, Plaintiffs and the Class are

22

23

AMENDED CONSOLIDCATED CLASS ACTION          **BRESKIN | JOHNSON | TOWNSEND PLLC**
COMPLAINT - 43                                        600 Stewart St., Suite 901
                                                 Seattle, WA 98101 Tel: 206-652-8660

1    entitled to actual damages, treble damages, attorneys' fees, costs, and any other just and proper

2    relief available thereunder. Wash. Rev. Code § 19.86.090.

3        132.    Plaintiffs and members of the Class also seek injunctive and declaratory relief and

4    any other just and proper relief available thereunder.

### COUNT II
**Violation of the California Unfair Competition Law, California Business &
Professions Code, §§ 17200 *et seq.*, Against PMI on
Behalf of Plaintiffs Krohn, Brown, and Robinson and the California Subclass**

7        133.    Plaintiffs Krohn, Brown, and Robinson incorporate by reference every paragraph

8    above as if set forth fully here.

9        134.    Plaintiffs Krohn, Brown, and Robinson, the California Subclass members, and

10    PMI are "persons" under California Business & Professions Code section 17201.

11        135.    The Unfair Competition Law prohibits as "unfair competition" the commission of

12    "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

*Unlawful Business Practices*

15        136.    As alleged here, PMI's failure to disclose the presence or use of lead in the Stanley

16    tumblers violates the California's Consumers Legal Remedies Act [Cal. Civ. Code §§ 1750 *et*

17    *seq.*]

*Unfair Business Practices*

19        137.    PMI has also engaged in "unfair" business acts or practices. There are several tests

20    that determine whether a practice that impacts consumers as compared to competitors is "unfair,"

21    examining the practice's impact on the public balanced against the reasons, justifications and

22

23

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 44

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

1 | motives of defendants. PMI's conduct would qualify as "unfair" under any of these standards

2 | because:

3 |     a.   the practices at issue related to PMI's labeling, marketing, and selling of the

4 |        Stanley tumblers and failure to disclose the presence of lead offend the policies of

5 |        protecting consumers' health as reflected in state and federal law and policy set

6 |        forth above;

7 |     b.   balancing the utility of PMI's conduct of not disclosing the presence of lead in the

8 |        Stanley tumblers against the gravity of the harm created by that conduct, including

9 |        that PMI's practices caused substantial injury to consumers by causing them to

10 |        purchase products they would not have if the true nature and quality of the Stanley

11 |        tumblers was disclosed or for which they would not have paid a premium price,

12 |        with little to no countervailing legitimate benefit that could not reasonably have

13 |        been avoided by the consumers themselves, and causes substantial injury to them;

14 |        or

15 |     c.   PMI's conduct and practices related to its labeling, marketing, and selling of the

16 |        Stanley tumblers are immoral, unethical, oppressive, unscrupulous,

17 |        unconscionable, and/or substantially injurious to consumers.

18 |     d.   PMI's conduct related to the labeling and sale of Stanley tumblers is also unfair

19 |        because it violates public policy as declared by specific statutory or regulatory

20 |        provisions, including the CLRA.

21 |

22 |

23 |

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

1

*Fraudulent Business Practice*

2
138.    PMI's failure to disclose the presence or use of lead in the Stanley tumblers is also

3
a fraudulent business practice because failing to do so was likely to deceive the public targeted

4
by such practices.

5
139.    PMI was obligated to disclose the presence of lead in the Stanley tumblers

6
because:

7
    a.    PMI had exclusive or superior knowledge of the presence or use of lead in the

8
            Stanley tumblers that was not known or reasonably accessible to Plaintiffs Krohn,

9
            Brown, and Robinson and the California Subclass; and

10
    b.    PMI actively concealed the presence or use of lead in the Stanley tumblers.

11
140.    PMI marketed the Stanley tumblers as safe, in compliance with regulatory

12
requirements, and suitable for ordinary use but failed to disclose the presence or use of lead in

13
the design and manufacture of these products.

14
141.    PMI's advertisements also misleadingly suggested that Stanley tumblers were free

15
of harmful materials, safe, durable, suitable for consumption, and in compliance with "all"

16
applicable regulatory requirements. Class members, including Plaintiff Robinson, were aware of

17
those statements.

18
142.    PMI's failure to disclose material information regarding the presence or use of

19
lead in the Stanley tumblers caused reasonable consumers, including Plaintiffs Krohn, Brown,

20
and Robinson, to buy products they would not have or would not have paid a premium price if

21
the true nature and quality of the Stanley tumblers were disclosed. Had Plaintiffs Krohn, Brown,

22
and Robinson known PMI failed to disclose the presence or use of lead in the design and

23

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

1  manufacture of the Stanley tumblers, they would not have purchased them or paid the premium

2  prices they did.

3      143.    In accordance with California Business and Professions Code section 17203,

4  Plaintiffs Krohn, Brown, and Robinson seek an order for a corrective marketing campaign,

5  enjoining PMI from continuing to conduct business through unlawful, unfair, or fraudulent acts

6  or practices.

7      144.    PMI's conduct is ongoing and continuing such that prospective injunctive relief

8  is necessary, especially given the desire by Plaintiffs Brown and Robinson to buy the Stanley

9  tumblers in the future if they can be assured that they do not contain lead.

10     145.    On behalf of themselves and the California Subclass, Plaintiffs Krohn, Brown,

11  and Robinson also seek restitution of all monies from the sale of the Stanley tumblers that were

12  unjustly acquired by PMI through such acts of unfair competition. Plaintiffs Krohn, Brown, and

13  Robinson also seek prejudgment interest, costs, attorneys' fees, and other just and proper relief

14  available.

15  <b><u>COUNT IV</u></b>
16  <b>Violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil
Code §§ 1750, <i>et seq.</i>, Against PMI on Behalf of Plaintiffs Krohn, Brown, and Robinson
and the California Subclass</b>
17     146.    Plaintiffs Krohn, Brown, and Robinson incorporate by reference every paragraph

18  above as if set forth fully here.

19     147.    Plaintiffs Krohn, Brown, and Robinson bring this claim individually and on behalf

20  of the California Subclass against PMI.

21     148.    Plaintiffs Krohn, Brown, and Robinson and each proposed California Subclass

22  member are "consumers" as defined in California Civil Code section 1761(d).

23

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 47

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

149.    Each Stanley tumbler sale constitutes a "transaction" under California Civil Code section 1761(e).

150.    The Stanley tumblers are "goods" under California Civil Code section 1761(e).

151.    The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770(a).

152.    PMI's conduct alleged here violates at least the following provisions of California's Consumer Legal Remedies Act:

a.    California Civil Code § 1770(a)(5) by "representing that goods or services have approval, characteristics, uses, [or] benefits… that they do not have" by failing to disclose the presence or use of lead in the design and manufacture of Stanley tumblers;

b.    California Civil Code § 1770(a)(7) by representing that Stanley tumblers "are of a particular standard, quality, or grade… if they are of another";

c.    California Civil Code § 1770(a)(9) by advertising the Stanley tumblers "with intent not to sell them as advertised";

d.    California Civil Code § 1770(a) (14) by "representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law"; and

e.    California Civil Code § 1770(a)(16) by representing the Stanley tumblers "ha[ve] been supplied in accordance with a previous representation when [they] ha[ve] not."

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 48

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

153.    The omissions of material fact detailed above were material as reasonable consumers such as Plaintiffs Krohn, Brown, and Robinson would have considered the presence or use of lead in the Stanley tumblers important when determining whether to buy the Stanley tumblers.

154.    PMI had a duty to disclose the presence of lead in the design and manufacture of the Stanley tumblers because:

    a.    PMI had exclusive or superior knowledge of the presence or use of lead in the Stanley tumblers that was not known or reasonably accessible to Plaintiffs Krohn, Brown, and Robinson and the California Subclass;

    b.    PMI actively concealed the presence or use of lead in the Stanley tumblers from Plaintiffs Krohn, Brown, and Robinson and the California Subclass; and

    c.    PMI marketed the Stanley tumblers as safe, durable, and suitable for ordinary use but failed to disclose the presence or use of lead, and having spoken on such issues PMI was obligated to disclose all material facts related thereto.

155.    Plaintiffs Krohn, Brown, and Robinson and the California Subclass members relied on the Stanley tumblers' labeling, marketing, communications, and omissions when purchasing. Had Plaintiffs Krohn, Brown, and Robinson and the California Subclass members known PMI failed to disclose the presence or use of lead in the Stanley tumblers, they would not have purchased them. Their reliance on PMI's obligation to disclose such material facts was thus reasonable.

156.    As a direct and proximate result of these violations, Plaintiffs Krohn, Brown, and Robinson and the members of the California Subclass have been harmed, and such harm will continue unless and until PMI is appropriately enjoined.

157.    Plaintiff Krohn sent written notice and demand to PMI by certified letter dated March 20, 2024, that its conduct violated the CLRA, which was received by PMI but thereafter ignored.

158.    PMI failed to provide appropriate relief for its violations of California Civil Code sections 1770(a)(5), (7), (9), and (16) within thirty days of receipt of Plaintiff Krohn's CLRA notification. Plaintiffs Krohn, Brown, and Robinson and the California Subclass are therefore entitled under California Civil Code section 1780 to recover and obtain the following relief for PMI's violations of the CLRA as set forth above:

    a.    Actual damages under California Civil Code section 1780(a)(1);

    b.    Restitution of property under California Civil Code section 1780(a)(3);

    c.    Punitive damages under California Civil Code section 1780(a)(4); and

    d.    Any other relief the Court deems proper under California Civil Code section 1780(a)(5).

159.    On behalf of themselves and the California Subclass, Plaintiffs Krohn, Brown, and Robinson also seek an award of attorneys' fees pursuant to California Civil Code section 1780(c) and California Code of Civil Procedure section 1021.5.

160.    Given PMI's continuing conduct, on behalf of themselves and the California Subclass, Plaintiffs Krohn, Brown, and Robinson also ask the Court for an injunction barring

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

1    PMI from continuing its deceptive advertisements and nondisclosures and requiring it engage in

2    a corrective marketing campaign.

3                                          **COUNT VI**

4    **Violation of New York's Deceptive Acts and Practices Law, New York General Business
     Law § 349, Against PMI on Behalf of Plaintiff Barbu and the New York Subclass**

5        161.    Plaintiff Barbu incorporates by reference every paragraph above as if set forth

6    fully here.

7        162.    Plaintiff Barbu brings this claim individually and on behalf of the members of the

8    New York Subclass.

9        163.    New York General Business Law ("GBL") § 349 declares unlawful "[d]eceptive

10   acts or practices in the conduct of any business, trade, or commerce or the furnishing of any

11   service in this state."

12       164.    PMI's conduct, as alleged herein, constitutes recurring, "unlawful," and deceptive

13   acts and practices in violation of GBL § 349 when it advertised and sold goods through the State

14   of New York. Plaintiff Barbu and members of the New York Subclass seek monetary damages

15   against PMI, enjoining it from inaccurately describing, labeling, marketing, and promoting the

16   Stanley tumblers and from charging consumers moneys in the future.

17       165.    PMI misleadingly, inaccurately, and deceptively advertised and marketed the

18   Stanley tumblers to consumers. By misrepresenting their true contents and failing to disclose that

19   they contain lead, PMI's marketing and labeling mislead reasonable consumers.

20       166.    PMI had exclusive knowledge of the presence or use of lead in the Stanley

21   tumblers that was not known or reasonably accessible to Plaintiff Barbu and members of the New

22   York Subclass.

23

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 51

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

167.    Because of the undisclosed material information on the labeling, marketing, and communications regarding the presence or use of lead in the Stanley tumblers, reasonable consumers would have no reason to suspect the presence or use of lead in the Stanley tumblers without conducting their own scientific tests (which are time-consuming and expensive) or reviewing third-party scientific testing.

168.    The omissions were material, as reasonable consumers such as Plaintiff Barbu and members of the New York Subclass would deem the presence or use of lead in the Stanley tumblers important when determining whether to buy them.

169.    Plaintiff Barbu and the New York Subclass members relied on the Stanley tumblers' labeling, marketing, communications, and omissions when purchasing the Stanley tumblers. Had Plaintiff Barbu and members of the New York Subclass known PMI failed to disclose the presence or use of lead in the Stanley tumblers, they would not have purchased them.

170.    PMI's omissions, concealment, and other deceptive conduct intentionally marketed Stanley tumblers as having a particular standard, grade, or quality when, in fact, they contained lead, a dangerous toxin.

171.    PMI's statements misleadingly represented that the Stanley tumblers were free of harmful materials, safe, durable, and suitable for ordinary use. Such representations led consumers, including Plaintiff Barbu, to reasonably but mistakenly believe that PMI had disclosed all material components of the Stanley tumblers. Yet PMI failed to disclose that lead was integral to their products.

172.    PMI's improper consumer-oriented conduct, including the omissions regarding the presence or use of lead in the Stanley tumblers, is materially misleading because, *among*

*others*, it induced Plaintiff Barbu and members of the New York Subclass to purchase and pay a premium for the Stanley tumblers when they otherwise would not have.

173.    PMI has engaged and continues to engage in deceptive conduct that violates GBL section 349.

174.    Plaintiff Barbu and members of the New York Subclass have been injured as they paid a premium for the Stanley tumblers that contained lead contrary to PMI's omissions. Accordingly, Plaintiff Barbu and members of the New York Subclass received less than what they bargained and paid for in that they would not have purchased the Stanley tumblers but for PMI's omissions.

175.    PMI intended for Plaintiff Barbu and the New York Subclass members to stay unaware of material facts about how the tumblers are made so these consumers would continue them based on PMI's deceptive omissions.

176.    PMI's deceptive and misleading practices constitute a "deceptive act or practice" in business conduct, violating GBL section 349(a). Plaintiff Barbu and members of the New York Subclass have been damaged thereby.

177.    As a result of PMI's recurring, "unlawful," and deceptive acts and practices, Plaintiff Barbu and members of the New York Subclass are entitled to monetary, actual, or statutory damages of $50 (whichever is greater), full refunds, compensatory and punitive damages, statutory and treble damages, attorneys' fees, and injunctive and declaratory relief.

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

1

## COUNT VII
**Violation of New York's False Advertising Law, New York General Business Law**
**§ 350, Against Defendant on Behalf of Plaintiff Barbu and the New York Subclass**

2

3      178.    Plaintiff Barbu incorporates by reference every paragraph above as if set forth

4    fully here.

5      179.    Plaintiff Barbu brings this claim individually and on behalf of the members of the

6    New York Subclass.

7      180.    New York GBL section 350 declares unlawful "[f]alse advertising in the conduct

8    of any business, trade, or commerce or the furnishing of any service in this state[.]"

9      181.    GBL section 350-a(1) provides, in part:

10         The term 'false advertising' means advertising, including labeling, of a commodity .
           . . if such advertising is misleading in a material respect. In determining whether any
11         advertising is misleading, there shall be taken into account (among other things) not
           only representations made by statement, word, design, device, sound, or any
12         combination of it but also the extent to which the advertising fails to reveal facts
           material in the light of such representations regarding the commodity or employment
13         to which the advertising relates under the conditions proscribed in said advertisement,
           or under such conditions as are customary or usual.

14     182.    PMI's labeling, marketing, and communications contain untrue and materially

15   misleading representations that the Stanley tumblers were safe, durable, and suitable for ordinary

16   use. Such representations led consumers, including Plaintiff Barbu, to reasonably but mistakenly

17   believe that PMI had disclosed all material components of the Stanley tumblers. Yet PMI failed

18   to disclose that lead was integral to its products.

19     183.    PMI had exclusive knowledge of the presence or use of lead in the Stanley

20   tumblers that was not known or reasonably accessible to Plaintiff Barbu and members of the New

21   York Subclass.

22

23

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 54

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

184.    Because of the undisclosed material information on the labeling, marketing, and communications regarding the presence or use of lead in the Stanley tumblers, reasonable consumers would have no reason to suspect the presence or use of lead in the Stanley tumblers without conducting their own scientific tests (which are time-consuming and expensive) or reviewing third-party scientific testing.

185.    The omissions were material, as reasonable consumers such as Plaintiff Barbu and members of the New York Subclass would consider the presence or use of lead in the Stanley tumblers necessary when determining whether to buy them.

186.    Plaintiff Barbu and the New York Subclass members relied on the Stanley tumblers' labeling, marketing, communications, and omissions when purchasing. Had Plaintiff Barbu and members of the New York Subclass known PMI failed to disclose the presence or use of lead in the Stanley tumblers, they would not have purchased them.

187.    PMI's omissions have been consistent throughout the Class Period, as it never disclosed the presence or use of lead in the Stanley tumblers.

188.    Plaintiff Barbu and members of the New York Subclass were injured as they paid a premium for the Stanley tumblers that contained lead contrary to PMI's omissions. Accordingly, Plaintiff Barbu and members of the New York Subclass received less than what they bargained and/or paid for in that they would not have purchased the Stanley tumblers but for PMI's omissions.

189.    PMI's conduct caused Plaintiff Barbu and members of the New York Subclass to suffer actual damages when they bought the Stanley tumblers because the tumblers were worth

1    less than the price they paid and because they would not have bought them at all had they known

2    they contained lead.

3    190.    Plaintiff Barbu and members of the New York Subclass have been injured as they

4    paid a premium for the Stanley tumblers that contained lead contrary to PMI's omissions.

5    Accordingly, Plaintiff Barbu and members of the New York Subclass received less than what

6    they bargained and paid for in that they would not have purchased the Stanley tumblers but for

7    PMI's omissions.

8    191.    As a result of PMI's recurring, "unlawful," and deceptive acts and practices,

9    Plaintiff Barbu and members of the New York Subclass seek monetary, actual, and punitive

10    damages or $500 (whichever is greater), statutory damages of three times the actual damages (up

11    to $10,000), full refunds, compensatory and punitive damages, statutory and treble damages,

12    attorneys' fees, and injunctive and declaratory relief.

13
## CLAIM VIII
**Violation of Nevada's Deceptive Trade Practices Act, NRS § 598.0901 *et seq.*, Against**
14    **Defendant on Behalf of Plaintiff Franzetti and the Nevada Subclass**

15    192.    Plaintiff Franzetti incorporates by reference every paragraph above as if set forth

16    fully here.

17    193.    Plaintiff Franzetti brings this claim individually and on behalf of the members of

18    the Nevada Subclass.

19    194.    PMI's conduct alleged here violated at least the following provisions of Nevada's

20    Deceptive Trade Practices Act ("DTPA"):

21

22

23

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 56

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

a. Nevada Revised Statute section 598.0923(1)(b) defines as a deceptive trade practice the knowing act of "[f]ail[ing] to disclose a material fact in connection with the sale or lease of goods or services."

b. Nevada Revised Statute section 598.0923(1)(e) defines as a deceptive trade practice the knowing use of "an unconscionable practice in a transaction." An "unconscionable practice" includes "an act or practice which, to the detriment of a consumer: (1) Takes advantage of the lack of knowledge, ability, experience or capacity of the consumer to a grossly unfair degree; (2) Results in a gross disparity between the value received and the consideration paid, in a transaction involving transfer of consideration."

c. Nevada Revised Statute section 598.0915(15) by "knowingly mak[ing] any other false representation in a transaction." By failing to disclose the presence of lead, PMI implicitly represented its Stanley tumblers were safe for their intended use.

195.    PMI's misleading omissions failed to disclose the Stanley tumblers contained lead. PMI's failure to disclose the material facts set forth above gives rise to a violation of the DTPA.  PMI omitted material information about the presence of lead with the intent to induce consumers, such as Plaintiff Franzetti and the Nevada subclass, to buy the Stanley tumblers.

196.    By selling Stanley tumblers without any disclosure of lead content, PMI knowingly made an implicit false representation that its products were safe for their intended use, free from harmful toxins, and compliant with applicable consumer safety standards. The absence of any warning or disclosure about lead content constituted a de facto representation of safety that was materially false. Nevada consumers, including Plaintiff Franzetti and members of the

Nevada Subclass, reasonably relied on this implicit representation of safety when purchasing PMI's Stanley tumblers for everyday use. PMI knew or should have known that its products contained lead—a fact so material to the transaction that its omission transformed the entire nature of what was being sold: from safe drinkware to potentially harmful products containing a known toxin. PMI's silence on this crucial safety matter was not merely an omission but an affirmative misrepresentation that no such hazard existed.

197.    Because of undisclosed material information regarding the presence or use of lead in the Stanley tumblers, reasonable consumers would have no reason to suspect the presence or use of lead in the Stanley tumblers without conducting their own scientific tests (which are time-consuming and expensive) or reviewing third-party scientific testing.

198.    As described above, these omissions of fact were material as reasonable consumers such as Plaintiff Franzetti and members of the Nevada Subclass would consider the presence or use of lead in the Stanley tumblers important when determining whether to buy the Stanley tumblers.

199.    Plaintiff Franzetti and members of the Nevada Subclass relied on PMI's marketing, implicit representations about safety, and omissions when purchasing the Stanley tumblers. Had Plaintiff Franzetti and members of the Nevada Subclass known PMI failed to disclose the presence or use of lead in the Stanley tumblers, they would not have purchased them at the prices they did, if at all.

200.    Plaintiff Franzetti and members of the Nevada Subclass are entitled to an award of actual damages based on and derived from PMI's engagement in deceptive trade practices,

1  treble damages on all damages suffered because of these deceptive trade practices to the extent

2  they were knowing and willful, and punitive damages, in an amount to be determined at trial.

3     201.    Under Nevada Revised Statute section 598.0993, the Court should also make such

4  additional orders or judgments as may be necessary to restore to any such person in interest any

5  money or property, real or personal, which any deceptive trade practice under Nevada law may

6  have been acquired by means of any deceptive trade practice, as well as issue appropriate

7  injunctive relief.

8     202.    Plaintiff Franzetti and other Nevada Subclass members also have a right to recover

9  reasonable costs and attorneys' fees under Nevada law, including Nevada Revised Statute section

10  598.0999.

11  **CLAIM X**
**Unjust Enrichment Against PMI on Behalf of the Class, or**
12  **Alternatively, the State Subclasses**

13     203.    Plaintiffs incorporate by reference every paragraph above as if set forth fully here.

14     204.    Plaintiffs bring this claim individually and on behalf of the Classes' members

15  against PMI.

16     205.    Substantial benefits have been conferred on PMI by the Plaintiffs and members

17  of the Classes through the purchase of the Stanley tumblers. PMI knowingly and willingly

18  accepted and enjoyed these benefits.

19     206.    The benefits conferred upon PMI were at Plaintiffs' expense because PMI either

20  knew or should know the payments rendered by Plaintiffs were given and received with the

21  expectation that the Stanley tumblers would not contain lead. Thus, it would be inequitable for

22  PMI to retain the benefit of the payments under these circumstances without payment.

23

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 59

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

207.    PMI needed to disclose the presence of lead in the Stanley tumblers because:

a.    PMI had exclusive or superior knowledge of the presence or use of lead in the Stanley tumblers that was not known or reasonably accessible to Plaintiffs and members of the Classes;

b.    PMI actively concealed the presence or use of lead in the Stanley tumblers from Plaintiffs and Classes' members; and

c.    PMI knew the Stanley tumblers could expose consumers to lead and the grave health risks attendant to lead exposure or consumption.

208.    PMI marketed the Stanley tumblers as safe, durable, and suitable for ordinary use but failed to disclose the presence or use of lead.

209.    Because of the undisclosed material information on the labeling, marketing, and communications regarding the presence or use of lead in the Stanley tumblers, reasonable consumers would have no reason to suspect the presence or use of lead in the Stanley tumblers without conducting their own scientific tests (which are time-consuming and expensive) or reviewing third-party scientific testing.

210.    The omissions were material as reasonable consumers would consider the presence or use of lead in the Stanley tumblers important when determining whether to buy the Stanley tumblers.

211.    PMI's labeling, marketing, and communications contain untrue and materially misleading representations that the Stanley tumblers were safe, durable, and suitable for ordinary use. Such false representations led consumers to reasonably but mistakenly believe that PMI had

1    disclosed all material components of the Stanley tumblers. Yet PMI failed to disclose that lead

2    was integral to its products.

3        212.    PMI was unjustly enriched because it induced reasonable consumers to buy the

4    Stanley tumblers through deceitful marketing.

5        213.    Plaintiffs and members of the Classes seek restitution of all amounts they have

6    paid to PMI for the Stanley tumblers and disgorgement of any profits PMI made by selling the

7    Stanley tumblers to consumers unaware they contained lead. Plaintiffs and members of the

8    Classes also seek prejudgment interest.

9                            **CLAIM XI**
                **Fraud by Omission Against PMI on Behalf of the Class**

10        214.    Plaintiffs incorporate by reference every paragraph above as if set forth fully here.

11        215.    Plaintiffs and PMI acted within the context of a business transaction when

12    Plaintiffs and the Class purchased the Stanley tumblers for household or business use and not for

13    resale.

14        216.    Plaintiffs and the Class members were ordinary non-business consumers.

15        217.    PMI knew the Stanley tumblers contained lead.

16        218.    PMI actively and knowingly concealed from and failed to disclose to Plaintiffs

17    and the Class that the Stanley tumblers contained lead that did not conform to the products'

18    labeling, marketing, and communications.

19        219.    PMI was obligated to disclose the presence of lead in the Stanley tumblers

20    because:

21

22

23

AMENDED CONSOLIDCATED CLASS ACTION              **BRESKIN | JOHNSON | TOWNSEND PLLC**
COMPLAINT - 61                                          600 Stewart St., Suite 901
                                              Seattle, WA 98101 Tel: 206-652-8660

1        a.   PMI had exclusive or superior knowledge of the presence or use of lead in the

2              Stanley tumblers that was not known or reasonably accessible to Plaintiffs and

3              members of the Class;

4        b.   PMI actively concealed the presence or use of lead in the Stanley tumblers from

5              Plaintiffs and members of the Class;

6        c.   PMI knew customers could be exposed to lead if the tumblers were damaged or

7              through ordinary use; and

8        d.   PMI knew that reasonable consumers would wish to know that the drinkware for

9              which they were paying a premium price contained lead and risked exposing

10            consumers and their families to lead, especially since lead-free substitutes are

11            readily available.

12     220.   PMI marketed the Stanley tumblers as safe, durable, and suitable for ordinary use

13 but failed to disclose the presence or use of lead.

14     221.   Because of the undisclosed material information on the labeling, marketing, and

15 communications regarding the presence or use of lead in the Stanley tumblers, reasonable

16 consumers would have no reason to suspect the presence or use of lead in the Stanley tumblers

17 without conducting their own scientific tests (which are time-consuming and expensive) or

18 reviewing third-party scientific testing.

19     222.   The omissions were material as reasonable consumers such as Plaintiffs and

20 members of the Class would consider the presence or use of lead in the Stanley tumblers

21 important when determining whether to buy the Stanley tumblers.

22

23

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

223.    Plaintiffs and members of the Class relied on the Stanley tumblers' labeling, marketing, communications, and omissions when making their purchasing decisions. Had they known PMI failed to disclose the presence or use of lead in the Stanley tumblers, they would not have purchased them.

224.    PMI's labeling, marketing, and communications contain untrue and materially misleading representations that the Stanley tumblers were safe, durable, and suitable for ordinary use. Such false representations led consumers, including Plaintiff Franzetti, to reasonably but mistakenly believe that PMI had disclosed all material components of the Stanley tumblers. But PMI failed to disclose that lead was integral to its products.

225.    PMI also chose to speak on the hazards of toxins by disclosing some facts about Stanley tumblers, such as that they were safe, durable, and suitable for ordinary use, while not disclosing that the Stanley tumblers also contain lead. Having spoken partially about this issue, PMI needed to disclose all the relevant facts related to the lead in these products.

226.    Fraud by omission occurs when a defendant has a duty to disclose facts within its knowledge but fails to do so. PMI had a duty to disclose the presence of lead in the Stanley tumblers but failed to do so. PMI also actively concealed the presence or use of lead in the design and manufacturing of the Stanley tumblers to maximize its profits from unsuspecting consumers. PMI deliberately chose not to reveal the design and manufacturing use of lead in the Stanley tumblers to consumers and instead marketed the Stanley tumblers as safe, durable, and suitable for ordinary use.

227.    PMI intended to induce Plaintiffs and the Class to buy the Stanley tumblers by concealing the presence or use of lead.

228.    Plaintiffs and the Class had a right to know and should have been told at the point of sale that the Stanley tumblers contained lead. Had PMI disclosed the lead in these tumblers, Plaintiffs would not have bought them.

229.    Plaintiffs and the Class seek compensatory damages for PMI's fraudulent concealment based on a full refund of the amounts they paid for PMI products that contained lead, punitive damages, and a permanent injunction, together with prejudgment interest and costs.

## PRAYER FOR  RELIEF

230.    Plaintiffs, on behalf of themselves and all others similarly situated, request judgment against PMI on every count set forth above, along with the relief as may be applicable and appropriate for each of those counts:

     a.  An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class;

     b.  A permanent injunction ordering PMI to engage in a corrective advertising campaign, including disclosures on its website and in its advertisements of the lead-containing Stanley tumblers, in the Stanley tumblers' labeling, and at the point of sale that PMI: (1) uses lead in its design and manufacturing process; (2) includes lead in its finished tumblers; and (3) that, if damaged, the consumer or others may be exposed to lead;

     c.  An order for appropriate restitutionary and restitutionary disgorgement relief;

     d.  Injunctive relief enjoining PMI from continuing the unlawful practices alleged herein;

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 64

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

e.   Compensatory, statutory, and treble damages in an amount to be proved at trial, including refunding all amounts paid by Plaintiffs and the Class for Stanley tumblers;

f.   Punitive damages to hold PMI accountable for its deliberate concealment of its use of lead and to deter similar misconduct;

g.   Pre- and post-judgment interest;

h.   Attorneys' fees and costs of suit; and

i.   Any other relief the Court finds appropriate.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues and counts that are so triable.

DATED this 3rd day of March, 2025.

**BRESKIN JOHNSON & TOWNSEND PLLC**

By: *s/ Brendan W. Donckers*
Brendan Donckers (WSBA # 39406)
600 Stewart Street, Suite 901
Seattle, WA 98101
Telephone: (206) 652-8660
Fax: (206) 652-8290
Email: bdonckers@bjtlegal.com

**TOUSLEY BRAIN STEPHENS PLLC**

Jason T. Dennett
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101-3147
Tel: (206) 621-1158/Fax: (206) 682-2992
jdennett@tousley.com

*Interim Plaintiffs' Liaison Counsel*

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 65

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**WHATLEY KALLAS, LLP**
Alan M. Mansfield (admitted *pro hac vice*)
16870 W. Bernardo Drive, Suite 400
San Diego, CA 92127
Tele: (619) 308-5034
amansfield@whatleykallas.com

**GEORGE FELDMAN MCDONALD, PLLC**
Rebecca A. Peterson (admitted *pro hac vice*)
1650 West 82nd Street, Suite 880
Bloomington, MN 55431
Tele: (612) 778-9595
rpeterson@4-justice.com

**RUSHING MCCARL LLP**
Ryan McCarl (admitted *pro hac vice*)
John Rushing (admitted *pro hac vice*)
Adam Burch (admitted *pro hac vice*)
2219 Main St. No.144
Santa Monica, CA 90405
Tele: (310) 896-582
info@rushingmccarl.com

*Interim Plaintiffs' Lead Counsel*

**DOYLE APC**
William J. Doyle *(*admitted *pro hac vice)*
Chris W. Cantrell *
550 West B St, 4th Floor
San Diego, CA 92101
Tele: (619) 736-0000/ Fax: (619) 736-1111
bill@doyleapc.com
chris@doyleapc.com

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson (admitted *pro hac vice*)
David A. Goodwin (admitted *pro hac vice*)
Mary M. Nikolai (admitted *pro hac vice*)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tele: (612) 333-8844
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 66

**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

mnikolai@gustafsongluek.com

**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman (WSBA #29096)
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9320
Fax: (888) 421-4173
lfeldman@4-justice.com
eservice@4-justice.com

*Interim Plaintiffs' Executive Committee*

AMENDED CONSOLIDCATED CLASS ACTION
COMPLAINT - 67