

Honorable Tana Lin

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   IN RE: PACIFIC MARKET INTERNATIONAL,
LLC, STANLEY TUMBLER LITIGATION

NO. 2:24-cv-00191-TL

10

11

**PLAINTIFFS' OPPOSITION TO
DEFENDANT PACIFIC MARKET
INT'L, LLC'S MOTION TO
DISMISS AMENDED
CONSOLIDATED CLASS ACTION
COMPLAINT**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................... 1

II.  STATEMENT OF FACTS ......................................................................................... 2

III. LEGAL STANDARD ............................................................................................... 4

IV.  ARGUMENT ............................................................................................................ 5

    A.   PMI unfairly misled consumers by failing to disclose that the Tumblers
        contain lead. ...................................................................................................... 5

        1.   The CCAC plausibly alleges that the Tumblers contain harmful levels
            of lead. ................................................................................................... 5

        2.   No reasonable consumer would expect lead in the Tumblers. .............. 6

    B.   Rule 9(b) Does Not Support Dismissing Any Claim Here............................... 7

    C.   All Plaintiffs' Claims Are Adequately Pleaded.............................................. 13

        1.   The WCPA Claim is Adequately Pleaded........................................... 13

        2.   Plaintiffs Adequately Allege a Violation of the CLRA...................... 15

        3.   Plaintiffs Adequately Allege Violations of the UCL. ........................ 16

        4.   Plaintiff Barbu Adequately Alleges Violations of New York Consumer
            Protection Statutes. .............................................................................. 19

        5.   Plaintiff Franzetti Adequately Alleges Violation of the NDTPA. ...... 20

        6.   Plaintiffs State a Claim for Unjust Enrichment. .................................. 21

        7.   Plaintiffs State a Claim for Fraud by Omission................................... 22

    D.   In the Alternative, Further Leave to Amend Is Warranted............................. 23

V.   CONCLUSION ....................................................................................................... 24

i

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

## TABLE OF AUTHORITIES

2

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 4

*Axon v. Florida's Nat. Growers, Inc.*,
  813 F. App'x 701 (2d Cir. 2020) ..................................................................... 20

*Barnes v. Nat. Organics, Inc.*,
  No. EDCV 22-314 JGB (PLAx), 2022 WL 4283779 (C.D. Cal. Sept. 13, 2022) ................ 17

*Becerra v. Dr Pepper/Seven Up, Inc.*,
  945 F.3d 1225, 1231 (9th Cir. 2019) ................................................................ 13

*Bell v. Publix Super Markets, Inc.*,
  982 F.3d 468 (7th Cir. 2020) .......................................................................... 11

*Benson v. Kwikset Corp.*,
  62 Cal. Rptr. 3d 284 (Cal. Ct. App. 2007) ........................................................ 18

*Berryman v. Merit Prop. Mgmt., Inc.*,
  62 Cal. Rptr. 3d 177 (Cal. Ct. App. 2007) ........................................................ 18

*Bland v. Sequel Nat. Ltd.*,
  No. 18-cv-04767-RS, 2019 WL 4674337 (N.D. Cal. Aug. 2, 2019) ...................... 6

*Blough v. Shea Homes, Inc.*,
  No. 2:12-cv-01493 RSM, 2014 WL 3694231 (W.D. Wash. July 23, 2014) ........... 14

*Boyd v. SunButter LLC*,
  No. CV 24-7873-GW-BFMx, 762 F. Supp. 3d 931 (C.D. Cal. 2025) ................... 16

*Buonasera v. Honest Co., Inc.*,
  208 F. Supp. 3d 555 (S.D.N.Y. 2016) ............................................................. 19

*Carideo v. Dell, Inc.*,
  706 F. Supp. 2d 1122 (W.D. Wash. 2010) ........................................................ 23

*Clausing v. DeHart*,
  515 P.2d 982 (Wash. 1973) ........................................................................... 11

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
  251 F.3d 1252 (9th Cir. 2001) ....................................................................... 12

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

ii

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

**Tousley Brain Stephens PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Crisman v. Crisman*,
   931 P.2d 163 (Wash. Ct. App. 1997) ................................................................................ 22

*Culver v. Unilever United States, Inc.*,
   No. CV 19-9263-GW-RAOx, 2021 WL 10382839, at *7 (C.D. Cal. Jan. 21, 2021) ........... 13

*Davidson v. Kimberly-Clark Corp.*,
   873 F.3d 1103 (9th Cir. 2017) .................................................................................. 5, 10

*Danone, US, LLC v. Chobani, LLC*,
   362 F. Supp. 3d 109 (S.D.N.Y. 2019) ........................................................................... 11

*Deutsch v. Flannery*,
   823 F.2d 1361 (9th Cir. 1987) ...................................................................................... 5

*Donor Network W. v. Nev. Donor Network, Inc.*,
   No. 3:23-cv-00632-ART-CSD, 2025 WL 326980 (D. Nev. Jan. 29, 2025) ..................... 9, 20

*Eidelman v. Sun Prods. Corp.*,
   No. 21-1046-cv, 2022 WL 1929250 (2d Cir. June 6, 2022) ......................................... 19, 20

*Eidmann v. Walgreen Co.*,
   522 F. Supp. 3d 634 (N.D. Cal. 2021) ........................................................................... 8

*Endres v. Newell Brands, Inc.*,
   No. CV 24-00952-MWF (DFMx), 2024 WL 3915055 (C.D. Cal. May 14, 2024) ............... 11

*Falk v. Gen. Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ......................................................................... 5

*Gompper v. VISX, Inc.*,
   298 F.3d 893 (9th Cir. 2002) ...................................................................................... 23

*Goodwin v. Walgreens Co.*,
   No. CV 23-0147-DMG, 2023 WL 4037175 (C.D. Cal. June 14, 2023) ........................... 1, 17

*Gutierrez v. CarMax Auto Superstores Cal.*,
   248 Cal. Rptr. 3d 61 (Cal. Ct. App. 2018) ................................................................... 15, 16

*Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*,
   719 P.2d 531 (Wash. 1986) .................................................................................... 8, 13

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018*)* ...................................................................................... 16

iii

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC*,
135 P.2d 499 (Wash. Ct. App. 2006) ...................................................................... 1

*In re Lindt & Sprüngli (USA), Inc., Dark Chocolate Litig.*,
No. 23-CV-1186 (AMD) (JAM), 2024 WL 4107244 (E.D.N.Y. Sept. 6, 2024) .............. 8, 16

*In re KIND LLC "Healthy and All Natural" Litigation*,
627 F. Supp. 3d 269, 289 (S.D.N.Y. 2022)……………………………………………………..12

*In re Nurture Baby Food Litig.*,
No. 1:21-cv-01217-MKV, 2025 WL 918927 (S.D.N.Y. Mar. 26, 2025)........................ 19, 20

*Intuit Inc. v. HRB Tax Grp., Inc.*,
No. 5:24-cv-00253-BLF, 2024 WL 4093918 (N.D. Cal. Sept. 5, 2024)............................... 10

*Kelley v. Microsoft Corp.*,
251 F.R.D. 544 (W.D. Wash. 2008)........................................................................... 22

*Levy v. Hu Prods. LLC*, No. 23 Civ. 1381 (AT),
2024 WL 897495 (S.D.N.Y. Mar. 1, 2024)............................................................... 5

*McGinity v. Procter & Gamble Co.*,
69 F.4th 1093, 1099 (9th Cir. 2023) ........................................................................ 13

*McMorrow v. Mondelēz Int'l, Inc.*,
No. 17-cv-2327-BAS-JLB, 2021 WL 859137 (S.D. Cal. Mar. 8, 2021) ........................... 12

*Miller v. Amazon.com, Inc.*,
No. 21-cv-204-BJR, 2024 WL 4554410 (W.D. Wash. Oct. 23, 2024) ............................. 7

*Moss v. United States Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ................................................................................... 23

*MST Mgmt., LLC v. Chicago Doughnut Franchise Co., LLC*,
584 F. Supp. 3d 923 (2022) .................................................................................... 20

*Mui Ho v. Toyota Motor Corp.*,
931 F. Supp. 2d 987 (N.D. Cal. 2013).................................................................... 16

*Nauman v. Gen. Motors LLC*,
No. C21-5150 BHS, 2021 WL 4502666 (W.D. Wash. Oct. 1, 2021) ................................. 23

*Nevada Power Co. v. Monsanto Co.*,
891 F. Supp. 1406 (D. Nev. 1995) .......................................................................... 21

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015) ............................................................................. 19

*Outer Aisle Gourmet, LLC v. Bimbo Bakeries USA, Inc.*,
    No. 2:21-cv-02599-FLA (SKx), 2022 WL 22893769 (C.D. Cal. Mar. 29, 2022) ................ 10

*Owens v. Kaiser Found. Health Plan, Inc.*,
    244 F.3d 708 (9th Cir. 2001) ............................................................................ 23

*Panag v. Farmers Ins. Co. of Wash.*,
    204 P.3d 885 (Wash. 2009) ................................................................................ 8

*Peri & Sons Farms, Inc. v. Jain Irrigation, Inc.*,
    933 F. Supp. 2d 1279 (D. Nev. 2013) ................................................................. 21

*Picus v. Wal-Mart Stores, Inc.*,
    256 F.R.D. 651 (D. Nev. 2009) .......................................................................... 20

*Podolsky v. First Healthcare Corp.*,
    58 Cal. Rptr. 2d 89 (Cal. Ct. App. 1996) ........................................................... 17

*Puri v. Costco Wholesale Corp.*,
    No. 5:21-cv-01202-EJD, 2021 WL 6000078 (N.D. Cal. Dec. 20, 2021) ..................... 12

*Quackenbush v. Am. Honda Motor Co.*,
    No. 24-33, 2025 WL 1009273 (9th Cir. Apr. 4, 2025) ........................................... 11

*Real Est. Exch. Inc. v. Zillow Inc.*,
    No. C21-312, 2021 WL 3930694 (W.D. Wash. Sept. 2, 2021) ................................... 9

*Reinsdorf v. Skechers U.S.A.*,
    922 F. Supp. 2d 866 (C.D. Cal. 2013) ............................................................... 11

*Reno Tech. Ctr. 1, LLC. v. New Cingular Wireless PCS LLC*,
    No. 3:17-cv-00410-LRH-WGC, 2019 WL 507461 (D. Nev. Feb. 7, 2019) ................. 21

*Reyes v. Crystal Farms Refrigerated Distrib. Co.*,
    No. 18-CV-2250, 2019 WL 3409883 (E.D.N.Y. July 26, 2019) .............................. 8

*Rodriguez v. Mondelez Glob. LLC*,
    703 F. Supp. 3d 1191 (S.D. Cal. 2023) ............................................................... 6

*Scholder v. Sioux Honey Ass'n Coop.*,
    No. CV 16-5369 (GRB), 2022 WL 125742 (E.D.N.Y. Jan.13, 2022) ....................... 20

v

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Scotts Co. v. United Indus. Corp.*,
  315 F.3d 264 (4th Cir. 2002) ............................................................. 12

*Sharpe v. A&W Concentrate Co.*,
  481 F. Supp. 3d 94 (E.D.N.Y. 2020) ................................................. 11

*Shields v. Fred Meyer Stores, Inc.*,
  741 F. Supp. 3d 915 (W.D. Wash. 2024) ............................................ 4

*Short v. Hyundai Motor Co.*,
  444 F. Supp. 3d 1267 (W.D. Wash. 2020) .......................................... 5

*Silver State Broad., LLC v. Crown Castle MU, LLC*,
  No. 2:18-cv-00734-GMN-VCF, 2018 WL 6606064 (D. Nev. Dec. 17, 2018) ..................... 21

*Small v. Lorillard Tobacco Co.*,
  720 N.E.2d 892 (N.Y. 1999) ............................................................ 19

*Smallman v. MGM Resorts Int'l*,
  638 F. Supp. 3d 1175 (D. Nev. 2022) ............................................... 21

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) ......................................................... 10

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*,
  240 F.3d 832 (9th Cir. 2001) ........................................................... 12

*Twohig v. Shop-Rite Supermarkets, Inc.*,
  519 F. Supp. 3d 154 (S.D.N.Y. 2021) .............................................. 12

*Van Dinter v. Orr*,
  138 P.3d 608 (Wash. 2006) ............................................................. 23

*Vance v. Amazon.com Inc.*,
  525 F. Supp. 3d 1301 (W.D. Wash. 2021) .......................................... 4

*Vernon v. Qwest Commc'ns Int'l, Inc.*,
  643 F. Supp. 2d 1256 (W.D. Wash. 2009) ........................................ 22

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ........................................................... 7

*Watkins v. Rapid Fin. Sols., Inc.*,
  No. 3:20-cv-00509-MMD-CSD, 2024 WL 3938537 (D. Nev. Aug. 26, 2024) ..................... 20

vi

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Weisblum v. Prophase Labs, Inc.*,
  88 F. Supp. 3d 283 (S.D.N.Y. 2015) ................................................................. 19

*Whitman v. State Farm Life Ins. Co.*,
  No. 3:19-cv-6025-BJR, 2021 WL 4264271 (W.D. Wash. Sept. 20, 2021) ........................... 13

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ................................................................................. 9

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
  135 F.3d 658 (9th Cir. 1998) ................................................................................. 4

*Wynn Las Vegas, LLC v. Cigar Row, LLC*,
  No. 2:15-cv-01079-RJC-CWH, 2016 WL 7115988 (D. Nev. Dec. 6, 2016) ........................ 21

*Young v. Toyota Motor Sales, U.S.A.*,
  472 P.3d 990 (Wash. 2020) ................................................................................. 1

*Young v. Young*,
  191 P.3d 1258 (Wash. 2008) ................................................................................ 21

*Zeiger v. WellPet LLC*,
  304 F. Supp. 3d 837 (N.D. Cal. 2018) ..................................................................... 17

*Zeiger v. WellPet LLC*,
  526 F. Supp. 3d 652 (N.D. Cal. 2021) ..................................................................... 17

*Zhang v. Superior Court*,
  304 P.3d 163 (Cal. 2013) ..................................................................................... 18

*Zunum Aero, Inc. v. Boeing Co.*,
  No. C21-0896JLR, 2022 WL 2116678 (W.D. Wash. June 13, 2022) ............................... 11

*Zwicker v. Gen. Motors Corp.*,
  No. C07-0291-JCC, 2007 WL 5309204 (W.D. Wash. July 26, 2007) ............................... 22

**Statutes**

California's Unfair Competition Law ......................................................... 1, 16-17

Consumers Legal Remedies Act ............................................................... 1, 15-16

N.Y. Gen. Bus. Law §§349, 350 ............................................................... 8, 19-21

Washington Consumer Protection Act ....................................................... *passim*

vii

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

**Rules**

2

Fed. R. Civ. P. 8(a) ............................................................................................... 4

3

Fed. R. Civ. P. 9(b) ...................................................................................... *passim*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

2

## I.    INTRODUCTION

3

Plaintiffs' Amended Consolidated Class Action Complaint alleges that PMI misled

4

consumers by omitting a material fact: Stanley Tumblers ("Tumblers") are manufactured with a

5

lead pellet that contains a harmful amount of lead, which can be exposed to consumers if a cup

6

is damaged or even through ordinary use. (*See* ¶¶45–46, 49–50, 57–61.)[1] This omission is

7

material because no level of lead exposure is safe (¶¶49–50), and consumers reasonably expect

8

high-end, family-marketed drinkware to be lead-free. (¶¶31–33.) PMI's customers had the right

9

to decide whether to buy lead-containing cups or opt for lead-free substitutes.

10

This is not a personal injury case; it is a consumer-protection case alleging economic

11

injury based on PMI's avoidable decision to include a lead pellet in the Tumblers without

12

revealing that material fact to consumers, who — had they known — could have bought a lead-

13

free cup from one of PMI's competitors. As such, Plaintiffs need not plead that the Tumblers

14

caused physical harm or that any individual was exposed to lead. Rather, the question is whether

15

PMI's conduct had "the capacity to deceive substantial portions of the public." *Young v. Toyota

16

Motor Sales, U.S.A.*, 472 P.3d 990, 994 (Wash. 2020). Such inquiries are inherently factual and

17

rarely appropriate for resolution at the pleadings stage. *See Holiday Resort Cmty. Ass'n v. Echo

18

Lake Assocs., LLC*, 135 P.2d 499, 507-508 (Wash. Ct. App. 2006) (Washington Consumer

19

Protection Act ["WCPA"] claim); *Goodwin v. Walgreens Co.*, No. CV 23-0147-DMG, 2023 WL

20

4037175, at *2-4 (C.D. Cal. June 14, 2023) (California's Unfair Competition Law ["UCL"] and

21

Consumers Legal Remedies Act ["CLRA"] claims).

22

PMI's assertion that the CCAC is "unchanged" is wrong. The CCAC added allegations

23

directly responding to the Court's issues. Additional allegations include:

24

25

26

---

[1] All references to "¶" are to Plaintiffs' Amended Consolidated Class Action Complaint ("CCAC"). (Dkt. 68.)

1

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

- Consumer testing of the Tumblers, which revealed lead levels exceeding 400,000 parts per million ("ppm") in the pellet – a critical component of the Tumblers (¶¶45, 86), addressing the Court's concern with the previously "unspecified amount" of lead.

- The Tumblers can expose consumers to harmful amounts of lead if the bottom vacuum seal is damaged (*e.g.*, ¶56), addressing the Court's concern that the health risk at issue be linked explicitly to the Tumblers.

- Government health organizations (including the EPA, CDC, and WHO) recognize that "only zero lead is safe" (¶54; *see also* ¶¶2, 49), addressing the Court's request for reputable sources linking the level of lead in the Tumblers to health risks.

- Details of why the inclusion of lead in the Tumblers is material to reasonable consumers. (¶¶90–92.)

Plaintiffs had a right to make an informed decision whether to buy a tumbler that unnecessarily uses lead. PMI knew that revealing its use of lead — and the risk the Tumblers can expose consumers to lead if they are damaged or through ordinary use — would hurt its profits. That is why PMI concealed its use of lead from consumers. (¶¶64–65.)

## II.    STATEMENT OF FACTS

For years, PMI has used lead in manufacturing its Tumblers. (¶3.) PMI failed to disclose and actively concealed that lead was unnecessarily used in the Tumblers. (*See*, *e.g.*, ¶¶7, 14-15, 17, 19, 32, 37, 57, 67, 76-77.) In 2024, PMI admitted that it used lead only after public reports by third parties exposed the presence of lead in the Tumblers. (¶¶17, 44, 57, 59.) Even after its public admission, PMI continues to actively conceal and mislead the public. (*See*, *e.g.*, ¶¶7, 61 (PMI's current response to a FAQ regarding the presence of lead does not fully disclose the presence of lead, identify which products do or do not contain lead, or warn consumers they can be exposed to lead); ¶¶9, 18, 62 (no disclosure consumers can be exposed to or come into contact

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

with lead if the Tumbler is damaged); ¶63 (downplaying consumer concerns about lead); ¶¶80–81 (representing the Tumblers meet all U.S. regulatory requirements).)

Before purchasing the Tumblers, Plaintiffs saw PMI's labels, marketing, communications, and omissions. (¶¶26–28, 30, 32, 43, 89, 106, 155, 169, 186, 196, 199, 223; ¶25 (Plaintiff Franzetti saw materials describing the Tumblers as made of stainless steel, dishwasher safe, and easy to clean); ¶29 (Plaintiff Robinson saw statements that the Tumblers were "durable," "stay hot 24H," and "rugged").)

Lead is highly toxic, and no amount of lead exposure is safe. (¶48 (lead's "harmful effects cannot be reversed or remediated due to its accumulation in the body over time."); ¶49 ("[n]o amount of lead is safe for human exposure or consumption."); ¶¶50–55.) Besides its negative cumulative effects, lead exposure in adults can cause cancer, increased blood pressure, damage reproductive organs, cognitive decline, and damage to the heart and kidneys. (¶¶50, 52.) Lead exposure in children is associated with even more serious health effects, including behavioral problems, reduced growth, and harm to the brain. (¶51.) Independent testing of the Tumblers revealed lead levels of 400,000 ppm in the pellet used in the Tumblers and "possibly as high as 600,000 ppm." (¶¶45, 86.) This is *twenty million times higher* than levels at which the FDA considers water or food to be contaminated within the federal Food, Drug, and Cosmetic Act. (¶55.)

PMI has admitted that consumers can be exposed to lead if the Tumblers become damaged or even through "ordinary use." (¶¶9, 14, 18-19, 41, 47, 57–59, 62, 64; ¶12 (Tumbler was damaged and the bottom seal containing the lead pellet was broken).) Because of the real risk that consumers can be exposed to lead through using the Tumblers and the levels of lead present (¶¶12, 45, 86), the presence of lead in the Tumblers is information material to consumers' purchasing decisions. (¶¶5–6, 11, 14–15, 20–21, 25–32, 85, 90-92, 96, 122, 126, 130, 153–155, 175, 194–195, 223.)

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

The results of a consumer survey conducted by Plaintiffs overwhelmingly confirm the presence of lead is material to reasonable consumers and the materiality of information related to the presence of lead in the Tumblers:

- 94.9% consider the presence of lead "important" or "very important" when making their purchasing decisions (¶90);

- 94.6% would want to know if a product was manufactured with lead (¶91); and

- 92.5% would choose a lead-free tumbler if given the choice (¶92).

Despite the public outcry over its use of lead in the Tumblers, PMI has not changed its manufacturing processes or its misleading and unfair marketing, and continues to use lead in the Tumblers. (¶¶9–11, 18–19, 47, 60, 64–65.) The reason is simple: in 2023, worldwide sales of the Tumblers were approximately $750 million. (¶42.) PMI's continued silence as to the presence of lead in the Tumblers and the risk posed to consumers misled unsuspecting consumers into purchasing and paying a premium price therefor when lead-free alternatives were available (¶¶15–17, 20, 33, 74–75, 93, 98, 101–102, 137, 142, 172, 174, 188, 190, 219), allowing its sales and profits to soar. (¶¶17, 42, 102, 226.)

### III.    LEGAL STANDARD

A complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Shields v. Fred Meyer Stores, Inc.*, 741 F. Supp. 3d 915, 922 (W.D. Wash. 2024) (*quoting* Fed. R. Civ. P. 8(a)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Vance v. Amazon.com Inc.*, 525 F. Supp. 3d 1301, 1307 (W.D. Wash. 2021) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009)). Courts accept all well-pleaded facts as true and "draw all reasonable inferences in favor of the plaintiff." *Id*. (*citing Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998)).

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Although Rule 9(b) imposes stricter pleading standards for fraud claims, plaintiffs need only state the circumstances constituting fraud with enough particularity to give defendants adequate notice. *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1111 (9th Cir. 2017) (*quoting Deutsch v. Flannery*, 823 F.2d 1361, 1365 (9th Cir. 1987)). As this Court has noted, "the Rule 9(b) standard is relaxed in fraudulent omission cases." (Dkt. 66 at 7 (quoting *Short v. Hyundai Motor Co.*, 444 F. Supp. 3d 1267, 1279 (W.D. Wash. 2020).) Since plaintiffs often lack personal knowledge of facts solely within the defendant's control, they "will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-1099 (N.D. Cal. 2007).

## IV.    ARGUMENT

Plaintiffs' new allegations address the deficiencies identified in the Court's January 17, 2025, Order (Dkt. 66 ("Order")), including new details about lead concentrations found in the Tumblers, references to authoritative health agency guidance, the results of a new consumer survey addressing the Court's concerns about materiality, and new allegations linking PMI's omissions to consumer deception and economic harm. (*See, e.g.*, ¶¶2, 12, 45, 49, 56.) The CCAC includes particularized allegations sufficient under Rule 9(b) to state a claim on each legal theory.

**A. PMI unfairly misled consumers by failing to disclose that the Tumblers contain lead.**

1. <u>The CCAC plausibly alleges that the Tumblers contain harmful levels of lead.</u>

No amount of lead is safe for human exposure or consumption. (¶2.) The FDA, CDC, AAP, EPA, and WHO have all said so. (¶49.) Consumers have a right to know whether drinkware contains unsafe levels of lead. Courts have recognized that allegations that no amount of lead is safe are plausible and must be taken as true at this stage, and that whether a particular level of lead is unsafe is a fact question. *See, e.g.*, *Levy v. Hu Prods. LLC*, No. 23 Civ. 1381 (AT), 2024 WL 897495, at *4 (S.D.N.Y. Mar. 1, 2024) ("[W]hat constitutes an 'unsafe level' of lead . . . is

5

1  a question of fact not appropriately resolved on a motion to dismiss.") *(quoting Rodriguez v.*

2  *Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1205 (S.D. Cal. 2023)); *see also id.* ("Plaintiffs have

3  plausibly alleged that *no* amount of lead or cadmium is safe for human consumption.").

4       The Tumblers have included lead for years (¶3), and they continue to contain a lead pellet.

5  (¶¶3, 58–60.) The Tumblers thus pose a health risk to anyone exposed to the lead they contain.

6  (¶19.) Reasonable consumers could be exposed to lead based on reasonably foreseeable use, since

7  while the lead is covered with a layer of steel, PMI admits that layer can come off — even due

8  to ordinary use. (¶¶8–9, 19, 59.) Plaintiffs also allege that damage through ordinary use, such as

9  dropping the Tumbler, can cause the base seal to break, exposing consumers to unsafe levels of

10 lead. (*Id.*) PMI has admitted that lead in the Tumblers can be exposed in such scenarios. Any

11 resulting exposure would be at unsafe levels, as government health organizations recognize there

12 is no safe level of lead. (¶¶2, 49, 54.)

13      PMI first admitted using lead in the Tumblers in 2024 after a third party exposed that use.

14 (¶¶7, 16-17, 57, 59.) Until then, PMI actively concealed the presence of lead. (¶14.) PMI's

15 labeling, marketing, and communications also misled and deceived consumers because it

16 intentionally failed to disclose that the Tumblers contained lead while representing them as safe,

17 durable, and suitable for use in rugged environments. (*See, e.g.*, ¶¶78-79 (alleging that PMI

18 advertises its Tumblers as "made of rugged stainless steel" and "built to last"); ¶79 n.35 (showing

19 Stanley's product line includes the "Adventure Quencher" and "Stay-Hot Camp Mug").)

20      2.  No reasonable consumer would expect lead in the Tumblers.

21      PMI failed to tell consumers the Tumblers contain lead that can be exposed, and that

22 consumers could be exposed to it. (¶¶5, 8.) The amount of lead in PMI's cups is far greater than

23 zero (¶¶5, 6, 13, 45–46), and its presence matters to consumers. (*See, e.g.*, ¶¶90-92).

24      Although "whether Defendant's products actually pose a risk to health is ultimately a

25 question of fact that cannot be decided at this stage," *Bland v. Sequel Nat. Ltd.*, No. 18-cv-04767-

26 RS, 2019 WL 4674337, at *4 (N.D. Cal. Aug. 2, 2019) — whether a product is unsafe is not the

6

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

right question in a misleading advertising case. The question common to all Plaintiffs' claims is *whether a reasonable consumer would want to know the Tumblers can expose consumers to an unsafe amount of lead*. If PMI failed to disclose that the Tumblers contain harmful levels of lead, and that fact could influence reasonable consumers' purchasing decisions, the omission is deceptive and actionable under the WCPA and other consumer-protection laws. The CCAC alleges that reasonable consumers would want to know, before paying premium prices for drinkware advertised as suitable for families and outdoor adventuring, that instead, the drinkware carries a risk of exposing consumers to harmful lead levels. (*See*, *e.g.*, ¶¶90-92.) The plausibility of that allegation was confirmed by the fact that once consumer-investigators discovered the Tumblers contain lead, it caused a national outcry. (¶44.) Plaintiffs' consumer survey further confirmed the presence of undisclosed harmful levels of lead matters to buyers of drinkware. (¶¶90–92.) The CCAC thus adequately states a claim under each legal theory.

**B. Rule 9(b) Does Not Support Dismissing Any Claim Here.**

"Rule 9(b) requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud . . . .'" *Miller v. Amazon.com, Inc.*, No. 21-cv-204-BJR, 2024 WL 4554410, at *3 (W.D. Wash. Oct. 23, 2024) (*quoting* Fed. Rule Civ. Proc. 9(b)). Allegations of "who, what, when, where, and how" satisfy Rule 9(b)'s particularity. *Id.* (*quoting Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

What will answer liability here is the unfair and misleading *nondisclosur*e of lead in the Tumblers, specifically:

- PMI continues to misleadingly omit on its packaging, labeling, or advertising that consumers and their families can be exposed to lead if the Tumblers are damaged, which can occur through ordinary use, and wrongfully induces reasonable consumers into purchasing or not returning the Tumblers by omitting the presence of lead. (¶¶10, 64.)

- PMI had a duty to disclose the unnecessary presence of lead, and it was an unfair business practice to conceal this information from the public. (¶15.)

7

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

- Plaintiffs and the class members paid a premium price based on PMI's omission and active concealment. Plaintiffs reasonably believed they had bargained for and purchased a premium product that had no safety risk and reasonably expected PMI would disclose the material omission but received a lesser product that unnecessarily contained lead. (¶20.)

- PMI had a duty to ensure the Tumblers were not unfairly and misleadingly marketed and all material information about their design and manufacture was fully disclosed. (¶95.)

- Washington law is designed to ensure a company's claims about its products are truthful and accurate and that they are neither unfair nor have a capacity to deceive. (¶103.)

Even a cursory review of the counts here shows it is PMI's failure to disclose material facts that triggers liability. (*See*, *e.g.*, ¶¶125, 136–37, 141–42, 152, 165, 182, 196, 207–08.)

Moreover, Plaintiffs sufficiently allege PMI's conduct has the tendency or capacity to deceive consumers, and thus, Rule 9(b) does not apply. (*Compare* Dkt. 66 at 9 *with*, *e.g.*, ¶124 (WCPA), ¶138 (UCL), ¶160 (CLRA), ¶165 (New York Gen. Bus. Law ["GBL"] §349), ¶191 (GBL §350), ¶200 (Nevada Deceptive Trade Practices Act ["NDTPA"]), ¶211 (Unjust Enrichment), ¶224 (Fraud by Omission).) Plaintiffs need not prove fraud or intention for most of their claims. *See Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (Wash. 2009) (elements of a WCPA claim: "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation) (*citing Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986)); *In re Lindt & Sprüngli (USA), Inc., Dark Chocolate Litig.*, No. 23-CV-1186 (AMD) (JAM), 2024 WL 4107244, at *4 (E.D.N.Y. Sept. 6, 2024) ("'To assert a claim under either [N.Y. Gen. Bus. Law §§349 or 350], a plaintiff must establish that [1] the defendant engaged in consumer[-]oriented conduct, [2] that is materially misleading, and [3] plaintiff was injured as a result of the deceptive act or practice.'") (*quoting Reyes v. Crystal Farms Refrigerated Distrib. Co*., No. 18-CV-2250, 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019)); *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 643 (N.D. Cal. 2021) ("The UCL provides a cause of action for 'any unlawful,

1   unfair, or fraudulent business act or practice[]'" and "[c]onduct that is considered deceptive or

2   misleading runs afoul of the . . . fraudulent prong of the UCL when it is 'likely to deceive' a

3   'reasonable consumer.'") (*quoting Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir.

4   2008); *Donor Network W. v. Nev. Donor Network, Inc.*, No. 3:23-cv-00632-ART-CSD, 2025 WL

5   326980, at *4 (D. Nev. Jan. 29, 2025) (elements of a claim under the NDTPA: (1) an act of

6   consumer fraud by the defendant, (2) causation, and (3) resulting damages). Plaintiffs' allegations

7   satisfy the elements required for their claims. (*See, e.g.*, ¶¶33, 36–43, 64–65, 76–102, 117.)

8       Although the Court stated that Rule 9(b) applied (*see* Dkt. 66 at 9), the CCAC is not fully

9   grounded in, nor sounds entirely in, fraud. The CCAC does not allege a "unified fraudulent course

10  of conduct" (*see* Dkt. 66 at 9 (quoting *REX – Real Est. Exch. Inc. v. Zillow Inc.*, No. C21-312,

11  2021 WL 3930694, at *8 (W.D. Wash. Sept. 2, 2021))), that would warrant the Rule 9(b)

12  heightened pleading standard. The allegations the Court cited in the Order to support a Rule 9(b)

13  finding (*see* Dkt. 66 at 9 (citing, *e.g.*, Dkt. No. 48 at ¶¶14, 25, 31, 41)), are not alleged in the

14  CCAC. (*See*, *generally*, Dkt. 68.) Thus, Rule 9(b) should not be applied.

15      In any event, Plaintiffs particularly allege "particularity of harm under Rule 9(b)." (*See*

16  Dkt. 66 at 10; *see also*, *e.g.*, ¶¶2, 45, 49, 54, 56.) PMI's argument to the contrary fails as the

17  CCAC alleges each relevant question under Rule 9(b):

18
19      • Plaintiffs allege that PMI (the "who") (¶35), unfairly and misleadingly sold the
         Tumblers in violation of consumer protection laws (the "what") (¶¶76–84);

20      • This occurred from June 1, 2019, to the present (the "when") (¶¶109, 144);

21
22      • For the named Plaintiffs specifically, this occurred in Nevada, New York,
         California, and Washington (the "where") (¶¶25–30); and

23      • The unfair and misleading acts allowed the Tumblers to be sold at a premium
24       price by omitting that: (1) the Tumblers contained large amounts of lead; and (2)
         that could far exceed any safe level of lead under federal regulations based on the
25       recognized scientific conclusions and consensus that lead is not safe at any level
         (the "how"). (¶¶44-56.)

26

9

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

The CCAC also alleges the extreme amount of lead in the Tumblers' pellet – 400,000 ppm – skyrockets over any lead regulations. (¶¶2, 45, 49, 54-55.) This satisfies Rule 9(b). *See Miller*, 2024 WL 4554410, at *4.

With respect to pleading particularity of harm under Rule 9(b), Plaintiffs sufficiently cured the deficiencies and alleged the omission was material. (*See* Dkt. 66 at 9-10.)[2] Plaintiffs added significant allegations concerning harm and materiality, including:

- PMI marketed the Tumblers while omitting material information: its pellet contains harmful levels of lead (400,000 ppm) when it could have chosen to not use any lead in its design. (¶¶5-6, 13, 45-46, 68-74, 85, 152–155.)

- This amount of lead far exceeds regulations on lead. (¶¶2, 45, 49, 54-55.) It is well recognized that no amount of lead is safe (¶¶2, 49), and publicly available studies establish the plausibility of that allegation. (¶¶48–55.)

- PMI's own competitor, Hydro Flask, chose not to use lead because it knew "lead could be harmful to consumers . . . ." (¶69.)

- Hydro Flask retails for $5.00 less than the Tumblers showing a premium (*e.g.*, the alleged economic harm here). (¶70.)

- A consumer survey shows 94.9% of respondents considered the inclusion of lead material to their purchasing decisions, and 92.5% indicated that if they had the ability to choose between two insulated stainless-steel tumblers – one manufactured with lead and the other not – they would purchase a tumbler that was not manufactured with lead. (¶¶90–92 (describing results of consumer survey).) *Outer Aisle Gourmet, LLC v. Bimbo Bakeries USA, Inc.*, No. 2:21-cv-02599-FLA (SKx), 2022 WL 22893769, at *5 (C.D. Cal. Mar. 29, 2022) ("Materiality in false advertising claims is 'typically' proven through consumer surveys.") (*citing Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140 (9th Cir. 1997)); *Intuit Inc. v. HRB Tax Grp., Inc.*, No. 5:24-cv-00253-BLF, 2024 WL 4093918, at *5 (N.D. Cal. Sept. 5, 2024) (same).

- When PMI's use of lead was revealed in January 2024, it generated a nationwide public outcry, confirming many consumers considered this omission material. (¶44.)

---

[2] Previously, the Court relied on *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 853 (9th Cir. 2024), to hold Plaintiffs did not allege "harm", and thus materiality, sufficiently under 9(b). (*See* Dkt. 66 at 6, 9-10.) But here, Plaintiffs do not challenge a direct statement of health claims as at issue in *Davidson*.

10

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

These facts alleged show the sufficiency of Plaintiffs' allegations that the inclusion of lead would be material to a reasonable consumer in purchasing a Tumbler. *See Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109, 120 (S.D.N.Y. 2019) (finding consumer survey was persuasive extrinsic evidence to demonstrate that customers are misled by "Chobani's 33% less sugar" label); *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 98, 103 (E.D.N.Y. 2020) (considering survey evidence and denying motion to dismiss misleading label claims); *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 480-482 (7th Cir. 2020) (reversing dismissal after considering survey evidence); *see also Endres v. Newell Brands, Inc.*, No. CV 24-00952-MWF (DFMx), 2024 WL 3915055, at *6 (C.D. Cal. May 14, 2024) (plaintiff satisfied Rule 9(b) where alleged "the findings from the testing done on the Products and other studies about organic fluorine and PFAS generally . . . . that Defendants omitted the information about PFAS to induce consumers to purchase the Products . . . . [and that] [p]laintiff would have acted differently if she knew about the existence of organic fluorine and PFAS in the Products.") (internal citations to the record omitted). Indeed, Plaintiffs need not allege actual exposure to allege materiality, as "Washington courts define 'material fact' as 'a fact to which a reasonable [person] would attach importance in determining [their] choice of action in the transaction in question.'" *Zunum Aero, Inc. v. Boeing Co.*, No. C21-0896JLR, 2022 WL 2116678, at *13 (W.D. Wash. June 13, 2022) (*quoting Clausing v. DeHart*, 515 P.2d 982, 984 (Wash. 1973)); *see also Quackenbush v. Am. Honda Motor Co.,* No. 24-33, 2025 WL 1009273, at *2 (9th Cir. Apr. 4, 2025) ("Under ICFA, a defect can be material . . . without affecting safety.").

Perhaps, recognizing that the consumer survey adequately addresses the Court's concerns about materiality and Rule 9(b), PMI raises irrelevant and premature challenges to these allegations. (*See* Dkt. 73 at 18-21 (citing various cases).) First, PMI's challenge as to the methodology and underlying results should be addressed at a later stage of the litigation, such as at summary judgment. *See*, *e.g.*, *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 877-879 (C.D. Cal. 2013) (considering survey principles on motion for summary judgment); *McMorrow*

11

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

*v. Mondelēz Int'l, Inc.*, No. 17-cv-2327-BAS-JLB, 2021 WL 859137, at *9 (S.D. Cal. Mar. 8, 2021) (considering survey methodology on motion for class certification – but only for whether it provides a model for a class-wide determination of liability or damages and *Daubert* motions).[3] Second, PMI's arguments go to the weight of the survey, not whether it plausibly supports allegations of materiality. *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001) ("[F]ollow-on issues of methodology, survey design, reliability . . . and the like go to the weight of the survey rather than its admissibility. These are issues for a jury, or in a bench trial, the judge.") (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 840 (9th Cir. 2001)).

Even if the Court were to consider these, PMI's arguments that Plaintiffs' survey is "biased" and "unreliable" fail. PMI provides no case law to support its assertion that a survey is faulty because it did not test the product and brand in issue. (*See* Dkt. 73 at 20.) In *Twohig v. Shop-Rite Supermarkets, Inc.*, unlike here, the survey failed to plausibly support what plaintiffs alleged. 519 F. Supp. 3d 154, 163 (S.D.N.Y. 2021) ("the survey does not demonstrate that over 43% of the respondents believed the flavor in Defendant's product came *predominantly or exclusively* from vanilla beans – which is what Plaintiffs allege."). Finally, *Puri v. Costco Wholesale Corp.*, can also be distinguished – the plaintiff only stated the survey results and failed to identify the questions asked, where here, Plaintiffs' allegations include specific questions from the survey. No. 5:21-cv-01202-EJD, 2021 WL 6000078, at *7 (N.D. Cal. Dec. 20, 2021); (¶¶90-92).[4]

---

[3] To support its assertion, PMI cites *In re KIND LLC "Healthy and All Natural" Litigation*, 627 F. Supp. 3d 269, 289 (S.D.N.Y. 2022), *affirmed*, *Bustamante v. KIND, LLC*, 100 F.4th 419 (2d Cir. 2024), but that concerned a motion for summary judgment, to decertify class, and to strike expert testimony. (*See* Dkt. 73 at 19.)

[4] *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 280 (4th Cir. 2002) is contrary to the Ninth Circuit authority, *supra*.

12

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

PMI's other cases are likewise distinguishable. In *Culver v. Unilever United States, Inc*., which concerned allegations products were deceptively labeled to be perceived as Made in France, the plaintiff failed to allege "that some consumers of mustards might want to purchase only mustards actually made in France[.]" No. CV 19-9263-GW-RAOx, 2021 WL 10382839, at *7 (C.D. Cal. Jan. 21, 2021). The court held the survey failed to address the materiality and rather went to deception. *Id.* at *12-15. *Culver* supports the adequacy of the methodology here, since the court stated, "[a] preliminary question could have been: Is the location where a mustard is manufactured a significant factor in your decision to purchase a particular brand of mustard?" *Id.* at *15. Here, Plaintiffs' survey asked just that. (*See* ¶90 ("How important, if at all, would it be to your purchasing decision if the product above [referring to an image of a generic insulated stainless-steel tumbler] was manufactured with lead?").) Similarly, the survey in *McGinity v. Procter & Gamble Co*., was directed at the ambiguity of the phrase "Nature Fusion," rather than materiality. 69 F.4th 1093, 1099 (9th Cir. 2023). Thus, unlike here, "the survey [did] not adequately address the primary question in the case." *Id*. The survey in *Becerra v. Dr Pepper/Seven Up, Inc.* also missed the mark – that survey was meant to address a reasonable consumer's understanding of the term "diet" but failed to do so. 945 F.3d 1225, 1231 (9th Cir. 2019).

**C. All Plaintiffs' Claims Are Adequately Pleaded.**

1. <u>The WCPA Claim is Adequately Pleaded.</u>

To prevail under the WCPA, a plaintiff needs only establish "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag*, 204 P.3d at 889 (*citing Hangman Ridge Stables*, 719 P.2d at 535). The WCPA is liberally construed. *See Young*, 472 P.3d at 994. Both causation and reliance may be presumed in consumer fraud cases involving omissions. *See Whitman v. State Farm Life Ins. Co*., No. 3:19-cv-6025-BJR, 2021 WL 4264271, at *8 (W.D. Wash. Sept. 20, 2021) (Washington courts recognize a rebuttable presumption of reliance which

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

"shifts the focus of the causation inquiry from what information each class member received to what the defendant allegedly concealed in light of what consumers reasonably expect.") (*quoting Blough v. Shea Homes, Inc.*, No. 2:12-cv-01493 RSM, 2014 WL 3694231, at *13 (W.D. Wash. July 23, 2014)).[5]

PMI's argument that materiality is not sufficiently alleged to satisfy the first factor fails. Materiality is not required to prove a WCPA claim, as this Court has already noted. (Dkt. 66 at 8 n.2); *see also Young*, 472 P.3d at 992. But as shown above (*see* Section IV(B)), Plaintiffs adequately pleaded materiality anyway. As to the capacity to deceive, Plaintiffs allege that (1) PMI had the exclusive and specialized knowledge of its decision to include lead in the Tumblers (¶45); (2) reasonable consumers lack the knowledge and expertise to determine whether the Tumblers had a lead pellet (¶5); (3) PMI did not disclose, and in fact actively concealed, that the Tumblers contain lead and can be damaged through ordinary use, exposing the hidden lead (¶¶11-13); (4) PMI knew consumers trusted it to not use lead in the Tumblers (¶13); (5) it is well recognized there is no safe level of lead and yet the lead used in the Tumblers has extreme amounts of lead compared to any regulatory limit (*see, e.g.*, ¶¶2, 45–46); and (6) the unnecessary inclusion of lead is material to Plaintiffs and reasonable consumers alike. (*See, e.g.*, ¶2 ("[B]ecause of concerns that lead can harm human health at even low levels, the [EPA] has set the maximum contaminant level goal for lead in water at zero. And . . . federal and state government officials agree that lead exposure can cause neurological damage, kidney malfunction, seizures, coma, and even death. This is . . . why disclosure of the presence of lead in products intended to be used for food and beverage storage and consumption is presumptively material."); ¶¶48–56.) These facts sufficiently show an unfair or deceptive act by PMI, especially given that consumers reasonably expect such products to be lead-free. Plaintiffs satisfactorily plead their WCPA claim.

---

[5] PMI does not dispute Plaintiffs adequately alleged factors (2) through (5). (*See* Dkt. 73 at 15–22.)

14

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

2. <u>Plaintiffs Adequately Allege a Violation of the CLRA.</u>

There is no dispute that the CCAC alleges the unnecessary and undisclosed presence of lead is part of the Tumblers' design. (¶¶7–9, 46, 61, 68.) PMI marketed the Tumblers as safe, durable products appropriate for family use while omitting a material fact PMI had exclusive knowledge of: the Tumblers could expose consumers to unsafe levels of lead — a harmful toxin no reasonable consumer would expect to find in a premium drinkware product. (¶¶5–6, 85.) As shown by the national outcry after PMI's use of lead in the Tumblers was exposed, reasonable consumers would not expect a premium tumbler marketed as family-safe and suitable for rugged outdoor use to contain a latent safety hazard. (¶¶44, 56, 76–85.)

PMI provides no argument why Plaintiffs' CLRA claim should be dismissed other than it is foreclosed by Plaintiffs' alleged failure to state a claim under the UCL's alternative "fraudulent" prong, which is not part of the CLRA. (*See* Dkt. 73 at 25.) Nor is there any argument from PMI that the seal of the vacuum insulation is not central to a product sold as insulated drinkware and that is what sets it apart from other drinkware. Under the CLRA, a duty to disclose arises when a defendant has exclusive knowledge of a material fact and actively conceals it, or when a defendant makes partial representations that are misleading without full disclosure. *Gutierrez v. CarMax Auto Superstores Cal.*, 248 Cal. Rptr. 3d 61, 83-84 (Cal. Ct. App. 2018). Plaintiffs allege no amount of lead exposure is safe (¶¶2, 49), and that the Tumblers contain harmful levels of lead in the pellet (a component that is central to the Tumbler's function) (¶45), which if exposed to, even in ordinary use, could cause harm. (¶¶48–56.)

Plaintiffs also allege they bought the Tumblers reasonably believing they were risk-free of an unsafe component and would not have bought them had they known of the lead risk. (¶¶25-31, 33.) These allegations adequately plead reliance and causation. *See*, *e.g.*, *Gutierrez*, 248 Cal. Rptr. 3d at 88-89 (plaintiff adequately pleaded an omission-based CLRA claim based on allegations plaintiff would not have bought the car had the seller disclosed its history of safety recalls). As shown in Section IV(B), Plaintiffs also allege materiality in detail which creates a

15

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

presumption of reliance. Plaintiffs also allege the safety risk was unnecessary as PMI did not need to use a lead pellet, thereby showing the safety risk was unreasonable. These allegations satisfy any safety hazard requirement. *See Mui Ho v. Toyota Motor Corp*., 931 F. Supp. 2d 987, 996–997 (N.D. Cal. 2013) (plaintiffs adequately stated an omission-based CLRA claim where defendants failed to disclose the vehicles' headlights could shut off randomly, posing a safety hazard; consumers may consider a manufacturer's failure to disclose a hidden safety risk material even if the risk materializes only occasionally). Plaintiffs have thus adequately alleged a duty to disclose for CLRA purposes under *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863–865 (9th Cir. 2018*).*[6] Moreover, PMI's partial representations — such as emphasizing the Tumblers' durable, stainless-steel body and promoting them as ideal for use in rugged outdoor settings — created a misleading impression of overall product safety (¶¶41), implying lead was not present in the products. *See Boyd v. SunButter LLC*, No. CV 24-7873-GW-BFMx, 762 F. Supp. 3d 931, 945 (C.D. Cal. 2025) (lists of certain components can imply to consumers that other components, such as heavy metals, are absent).

Courts have upheld similar omissions-based CLRA claims. *See In re Lindt*, 2024 WL 4107244, at *8 (found lead and cadmium unreasonable safety risks: "plaintiffs need not wait until someone develops lead poisoning or cancer to allege a sufficient nexus between the defect — lead and cadmium exposure — and the identified harms."); *Gutierrez*, 248 Cal. Rptr. 3d at 83-86; *Mui Ho*, 931 F. Supp. 2d at 996–999.

3.  <u>Plaintiffs Adequately Allege Violations of the UCL.</u>

Under the UCL, "unfair competition" includes any unlawful, unfair, or fraudulent business act or practice, including unfair or deceptive advertising. *See* Cal. Bus. & Prof. Code §17200. Each prong — unlawful, unfair, fraudulent — operates independently, and satisfying

---

[6] PMI failed to address the active concealment allegations, which trigger a duty to disclose under California law. So that alone is a reason to foreclose any dismissal of the CLRA claim.

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  any one prong establishes a UCL claim. *See Podolsky v. First Healthcare Corp.*, 58 Cal. Rptr.

2  2d 89, 98 (Cal. Ct. App. 1996).

3     Whether a practice is deceptive, fraudulent, or unfair is ordinarily a question of fact

4  unsuitable for resolution at the pleadings stage. *See Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652,

5  682 (N.D. Cal. 2021). Deceptive advertising claims cannot be dismissed on the pleadings unless

6  the product's packaging conclusively disproves the likelihood of deception. *See Goodwin v.*

7  *Walgreens Co.*, No. CV 23-147-DMG (PDx), 2023 WL 4037175, at *3 (C.D. Cal. June 14, 2023).

8  Here, the allegations show that PMI's omission was deceptive, unfair, and material, and they are

9  adequately pleaded under 9(b). *See* Sections IV(A) and IV(B).

10                *i.*    **Fraudulent Prong**

11     The UCL's "fraudulent" prong prohibits conduct that, even if technically accurate, is

12  likely to mislead or deceive consumers. *See*, *e.g.*, *Zeiger*, 526 F. Supp. 3d at 682–684. Here,

13  Plaintiffs allege that PMI deceptively sold the Tumblers without disclosing the presence of lead.

14  (¶¶76–105.) Courts have held that similar omissions regarding toxic substances in consumer

15  products state claims under the UCL. *See*, *e.g.*, *Barnes v. Nat. Organics, Inc.*, No. EDCV 22-314

16  JGB (PLAx), 2022 WL 4283779, at *6-7 (C.D. Cal. Sept. 13, 2022) (denying a motion to dismiss

17  where the plaintiff alleged a manufacturer used undisclosed heavy metals in prenatal vitamins).

18  PMI argues that Plaintiffs' claim under this prong should be dismissed because Plaintiffs do not

19  allege materiality or a safety risk. (*See* Dkt. 73 at 23-24.) As discussed above, Plaintiffs

20  adequately plead materiality. *See* Section IV(B). Allegations of safety risk are unnecessary since

21  this is not a product liability case, but Plaintiffs adequately plead them anyway. *See, e.g.*, Section

22  IV(A).

23                *ii.*    **Unfair Prong**

24     Under the UCL's "unfair" prong, a business practice is actionable if the harm it causes to

25  consumers outweighs its benefits. *See Podolsky*, 58 Cal. Rptr. 2d at 98; *Zeiger v. WellPet LLC*,

26  304 F. Supp. 3d 837, 852-853 (N.D. Cal. 2018). Courts apply a balancing test, weighing the

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    utility of the defendant's conduct against the gravity of harm to the alleged victims. *Zeiger*, 304

2    F. Supp. 3d at 853. This test is fact-intensive and not properly resolved on a motion to dismiss

3    unless the complaint's allegations fail the test even if proven true. *See Berryman v. Merit Prop.*

4    *Mgmt., Inc.*, 62 Cal. Rptr. 3d 177, 187 (Cal. Ct. App. 2007).

5        PMI concealed the presence of toxic lead in the Tumblers to increase sales, particularly

6    to young families and outdoor adventurers. (¶¶5–6, 40–42, 102, 152–157.) This concealment of

7    a serious health risk presents a substantial harm that far outweighs any utility PMI might claim

8    in promoting its drinkware, for which lead-free substitutes are readily available. (¶73.) Plaintiffs

9    allege that lead in the cups is harmful to consumers. (¶¶48–56.) This harm outweighs any benefits

10   to consumers. *See Zeiger*, 304 F. Supp. 3d at 853 ("Assuming the truth of plaintiffs' allegations,

11   I cannot conclude as a matter of law that defendants' allegedly misleading and deceptive labeling

12   practices are not unfair, as the harm to the consumer outweighs the utility of this practice [of

13   failing to disclose the presence of arsenic, lead, or BPA in pet food products].").

14                    *iii.    **Unlawful Prong***

15       Under the UCL's "unlawful" prong, the statute "borrows" violations of other laws and

16   treats them as independently actionable. *See Benson v. Kwikset Corp.*, 62 Cal. Rptr. 3d 284, 293

17   (Cal. Ct. App. 2007); *Podolsky*, 58 Cal. Rptr. 2d at 98. A practice can also violate the UCL even

18   if it is not specifically prohibited by another law. *See Zhang v. Superior Court*, 304 P.3d 163,

19   167 (Cal. 2013). Plaintiffs sufficiently pleaded violations of every cause of action, including the

20   unjust enrichment and fraudulent omission claims and the CLRA claim. They also allege risk of

21   exposure that is enough to render the omission material under the false advertising prong of the

22   UCL and other consumer-protection laws. Each violation supports a UCL "unlawful" prong

23   claim.

24

25

26

18

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

4.  <u>Plaintiff Barbu Adequately Alleges Violations of New York Consumer Protection Statutes.</u>

Plaintiff Barbu adequately states claims under GBL sections 349 and 350, which require allegations of (1) consumer-oriented conduct, (2) materially misleading acts or omissions, and (3) injury caused by the defendant's conduct. *See Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 565–566 (S.D.N.Y. 2016) (*quoting Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015)). Plaintiff Barbu alleges consumer-oriented conduct, a material omission, and economic injury. For example, PMI marketed the Tumblers as "made of rugged stainless steel" — suggesting pure, nontoxic ingredients — while concealing they contained unsafe levels of lead, a material health risk. (¶¶5-7, 61, 78-79.) Plaintiff Barbu paid a premium for products she would not have bought had she known the truth. (¶¶16–17, 26.) Recent decisions have held similar allegations survive a motion to dismiss. *See Levy*, 2024 WL 897495, at *6-7 (plaintiff adequately pleaded GBL claims based on allegations that chocolate bars labeled as "clean" and without including lead in the ingredient list contained undisclosed lead); *Buonasera*, 208 F. Supp. 3d at 559 (allegations sufficient where personal care products marketed as "natural" allegedly contained synthetic ingredients). Plaintiffs' allegations are also sufficient to demonstrate reliance. *See id.* at 565 n.4 (reliance satisfied where plaintiff alleged "that if he had known that the products were not 'plant-based,' he would not have purchased the products.").

Plaintiff Barbu pleaded materiality and satisfies Rule 9(b). *See* Section IV(B). To plead injury under GBL sections 349 and 350, Plaintiffs must allege that "on account of a materially misleading practice, [they] purchased a product and did not receive the full value of [their] purchase." *In re Nurture Baby Food Litig.*, No. 1:21-cv-01217-MKV, 2025 WL 918927, at *11 (S.D.N.Y. Mar. 26, 2025) (citing *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015); *accord Eidelman v. Sun Prods. Corp.*, No. 21-1046-cv, 2022 WL 1929250, at *1 (2d Cir. June 6, 2022); *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 897 (N.Y. 1999). "Such allegations may include 'price premium' allegations that 'plaintiffs paid more than they would have for the

19

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

good but for the deceptive practices of the defendant-sellers.'" *In re Nurture* 2025 WL 918927, at *11 (citing *Orlander*, 802 F.3d at 302; *accord Eidelman*, 2022 WL 1929250, at *1). "However, a 'failure to identify the prices of competing products to establish the premium' is not fatal to Plaintiffs' claims at this stage." *In re Nurture*, 2025 WL 918927, at *11 (*quoting Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020)).

Plaintiff Barbu alleges that she spent money she would not have, absent PMI's omissions. (¶26.) This satisfies an alleged injury under the GBL, even under the price premium theory. *See Scholder v. Sioux Honey Ass'n Coop.*, No. CV 16-5369 (GRB), 2022 WL 125742, at *4 (E.D.N.Y. Jan.13, 2022) (injury pleaded under GBL §§349 and 350 when plaintiff alleged "a premium price for the product that he . . . thought was pure and free from contaminants . . . and 'did not receive full value of [the] purchase.'") (*quoting Orlander*, 802 F.3d at 302).

5.  Plaintiff Franzetti Adequately Alleges Violation of the NDTPA.

Plaintiff Franzetti adequately pleads the elements of a claim under the NDTPA: (1) an act of consumer fraud by the defendant, (2) causation, and (3) resulting damages. *See Donor Network W.*, 2025 WL 326980, at *4  (*citing Picus v. Wal-Mart Stores, Inc*., 256 F.R.D. 651, 658 (D. Nev. 2009)); (*see also* ¶¶192-202). NDTPA claims may proceed where, as here, a defendant suppresses or omits a material fact that it has a duty to disclose. *See MST Mgmt., LLC v. Chicago Doughnut Franchise Co., LLC*, 584 F. Supp. 3d 923, 933 (2022). As discussed above, Plaintiffs sufficiently pleaded materiality. *See* Section IV(B); *see also Watkins v. Rapid Fin. Sols., Inc.*, No. 3:20-cv-00509-MMD-CSD, 2024 WL 3938537, at *9 (D. Nev. Aug. 26, 2024) ("NDOC's omission was the proximate cause of Plaintiff's harm if Plaintiff would have chosen to receive his inmate trust fund balance via that other distribution method had he known about its existence and/or the entirety of the Release Card fees."). Incomplete representations can also create a duty to disclose. *See id.* ("[t]he suppression or omission id. the Release Card fee schedule could therefore constitute a fraudulent misrepresentation prohibited by the NDTPA."). PMI misled consumers by marketing the Tumblers as made of rugged, safe materials that are suitable for

20

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

family and rugged outdoor use. (*See*, *e.g.*, ¶41.) These partial representations created a duty to disclose a latent safety hazard misleading, as consumers had a right to know that the Tumblers are manufactured with unsafe levels of lead, and that consumers can be exposed to lead.

PMI's argument that Plaintiff's relationship with PMI is not vendor-vendee is irrelevant. (*See* Dkt. 73 at 28.) PMI relies on *Nevada Power Co. v. Monsanto Co.*, but it discusses the vendor-vendee relationship with respect to a fraudulent concealment claim, not the NDTPA. 891 F. Supp. 1406, 1415–1417 (D. Nev. 1995); *see also Peri & Sons Farms, Inc. v. Jain Irrigation, Inc.*, 933 F. Supp. 2d 1279, 1292-1294 (D. Nev. 2013) (same); *Reno Tech. Ctr. 1, LLC. v. New Cingular Wireless PCS LLC*, No. 3:17-cv-00410-LRH-WGC, 2019 WL 507461, at *8 (D. Nev. Feb. 7, 2019) (same); *Silver State Broad., LLC v. Crown Castle MU, LLC*, No. 2:18-cv-00734-GMN-VCF, 2018 WL 6606064, at *2-4, *7 (D. Nev. Dec. 17, 2018) (claims of Fraudulent Joinder and Breach of Contractual Covenant of Good Faith and Fair Dealing); *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1193–1194 (D. Nev. 2022) (claim of Negligent Misrepresentation); *Wynn Las Vegas, LLC v. Cigar Row, LLC*, No. 2:15-cv-01079-RJC-CWH, 2016 WL 7115988 (D. Nev. Dec. 6, 2016) (various common-law tort claims).

6. <u>Plaintiffs State a Claim for Unjust Enrichment.</u>

Under Washington law, unjust enrichment requires Plaintiffs to allege (1) a benefit conferred, (2) PMI's knowledge of the benefit, and (3) circumstances making it inequitable for PMI to retain the benefit without paying for it. *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008). Plaintiffs conferred an economic benefit on PMI by paying premium prices for the Tumblers without knowing they could expose consumers to harmful levels of lead. (¶¶5–7, 16–17, 20, 33, 93.) PMI knew consumers were buying the Tumblers (¶4), and it concealed its use of lead because disclosing it would hurt sales. (¶102.) If there was no harm in using lead in these products, PMI could have let Plaintiffs and other consumers know this fact, yet PMI deliberately concealed the presence of harmful levels of lead while marketing the Tumblers as suitable for use by consumers and their families.

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

It would be inequitable to allow PMI to retain profits from this deception, as PMI charged premium prices that Plaintiffs would not have paid but for the omission. (¶¶5–7, 39–45.) Allowing PMI to keep these gains would unjustly enrich it and incentivize others to conceal lead hazards. *See Young*, 191 P.3d at 1262.

PMI's arguments to the contrary fail. Plaintiffs added substantive allegations that support this claim. (¶¶2, 45, 49, 54, 56, 90–93.) Plaintiffs' unjust enrichment claims are not based on fraud. *See Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1265 (W.D. Wash. 2009) (declining to dismiss unjust enrichment claim because fraud was not an essential element of it). But even if fraud were an element, Plaintiffs' allegations satisfy Rule 9(b). *See* Section IV(B). Plaintiffs allege facts "showing an appreciation or knowledge of the benefit conferred upon" PMI by Plaintiffs. (*See* Dkt. 73 at 29 (*citing Young*, 191 P.3d at 1262); ¶¶4, 41-42, 68–82, 102.) Finally, PMI asserts that Plaintiffs do not identify the state law governing the claim; however, PMI does not make an argument as to why that is relevant. (*See* Dkt. 73 at 29.) While Plaintiffs assert Washington law should govern this nationwide claim, the governing state law can be addressed later in the litigation. *See, e.g.*, *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 549–553 (W.D. Wash. 2008), *class decertified*, No. C07-0475 MJP, 2009 WL 413509 (W.D. Wash. Feb. 18, 2009) (conducting conflict/choice of law analysis in addressing motions for class certification and application of Washington law); *see also* Plaintiffs' concurrently filed Opposition to PMI's Motion to Strike Class Allegations.

7.  Plaintiffs State a Claim for Fraud by Omission.

To allege fraud under Washington law, Plaintiffs may "simply show that the defendant breached an affirmative duty to disclose a material fact." *Zwicker v. Gen. Motors Corp.*, No. C07-0291-JCC, 2007 WL 5309204, at * (W.D. Wash. July 26, 2007) (*quoting Crisman v. Crisman*, 931 P.2d 163, 166 (Wash. Ct. App. 1997)) (plaintiffs properly alleged that a manufacturer breached its duty to disclose a material defect).

22

PMI had a duty to disclose the presence of lead in the Tumblers for two reasons. First, PMI had exclusive knowledge of the lead risk. (¶¶5, 16.) A duty to disclose arises "when a manufacturer has superior information regarding defects that are not readily ascertainable to customers[.]" *Nauman v. Gen. Motors LLC*, No. C21-5150 BHS, 2021 WL 4502666, at * (W.D. Wash. Oct. 1, 2021) (*citing Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1133 (W.D. Wash. 2010)). Second, PMI made partial representations creating a misleading impression of safety. A duty to disclose arises "if necessary to prevent a partial or ambiguous statement of facts from being misleading." *Zwicker*, 2007 WL 5309204, at *3 (*quoting Van Dinter v. Orr*, 138 P.3d 608, 610 (Wash. 2006)). PMI's marketing — such as portraying the Tumblers as ideal for families and rugged outdoor use — created a misleading impression of a safe, durable product while omitting the known presence of lead capable of harming buyers. (¶¶5-7, 40-41, 44–45, 64.)

PMI only argues that Plaintiffs' fraud-by-omission claim fails because Plaintiffs do not plead materiality or specify any particular harm under Rule 9(b) (*see* Dkt. 73 at 29–30), but Plaintiffs do both. *See* Section IV(B).

**D.  In the Alternative, Further Leave to Amend Is Warranted.**

The CCAC addresses the concerns in the Order and satisfies the requirements of Rule 9(b) while alleging plausible facts supporting every element of every claim. If the Court grants PMI's Motion to Dismiss for reasons beyond those in its Order, however, it should grant Plaintiffs leave to amend to address those concerns. *Moss v. United States Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) ("Courts are free to grant a party leave to amend whenever 'justice so requires,' and requests for leave should be granted with 'extreme liberality.' (*quoting Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)) . . . 'Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.'") (*quoting Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002)).

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## V.    CONCLUSION

The Motion should be denied in its entirety. If the Court identifies any deficiencies, it should grant leave to amend.

DATED this 21st day of May, 2025.        **TOUSLEY BRAIN STEPHENS PLLC**
By: *s/ Jason T. Dennett*
Jason T. Dennett
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101-3147
Tel: (206) 621-1158/Fax: (206) 682-2992
jdennett@tousley.com

**BRESKIN JOHNSON & TOWNSEND PLLC**
Brendan Donckers (WSBA # 39406)
600 Stewart Street, Suite 901
Seattle, WA 98101
Telephone: (206) 652-8660
Fax: (206) 652-8290
bdonckers@bjtlegal.com

*Interim Plaintiffs' Liaison Counsel*

**WHATLEY KALLAS, LLP**
Alan M. Mansfield (admitted *pro hac vice*)
16870 W. Bernardo Drive, Suite 400
San Diego, CA 92127
Tele: (619) 308-5034
amansfield@whatleykallas.com

**GEORGE FELDMAN MCDONALD, PLLC**
Rebecca A. Peterson (admitted *pro hac vice*)
1650 West 82nd Street, Suite 880
Bloomington, MN 55431
Tele: (612) 778-9595
rpeterson@4-justice.com

**RUSHING MCCARL LLP**
Ryan McCarl (admitted *pro hac vice*)
John Rushing (admitted *pro hac vice*)
2219 Main St. No.144
Santa Monica, CA 90405
Tele: (310) 896-5082
info@rushingmccarl.com

*Interim Plaintiffs' Lead Counsel*

24

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**DOYLE APC**
William J. Doyle *(admitted *pro hac vice*)
Chris W. Cantrell *
550 West B St, 4th Floor
San Diego, CA 92101
Tele: (619) 736-0000/ Fax: (619) 736-1111
bill@doyleapc.com
chris@doyleapc.com

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson (admitted *pro hac vice*)
David A. Goodwin (admitted *pro hac vice*)
Mary M. Nikolai (admitted *pro hac vice*)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tele: (612) 333-8844
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
mnikolai@gustafsongluek.com

**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman (WSBA #29096)
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9320
Fax: (888) 421-4173
lfeldman@4-justice.com
eservice@4-justice.com

*Interim Plaintiffs' Executive Committee*


I certify that this memorandum contains 8,217 words, in compliance with the Local Civil Rules.

25

OPPOSITION TO MOTION TO DISMISS AMENDED CONSOL.
CLASS ACTION COMPLAINT
NO. 2:24-cv-00191-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992